**2026-1725**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

**CELLPORT SYSTEMS INC., CYBERCAR, INC.,**

*Plaintiffs–Appellants,*

v.

**HARMAN INTERNATIONAL INDUSTRIES INC., HARMAN BECKER AUTOMOTIVE SYSTEMS GMBH,**

*Defendants–Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS IN CASE NO. 4:22-CV-00808-SDJ, JUDGE SEAN D. JORDAN

## APPELLANTS' CORRECTED OPENING BRIEF

Michael J. Lennon
Pablo D. Hendler
POTOMAC LAW GROUP, PLLC
1177 Avenue of the Americas, 5th Floor
New York, NY 10036
(646) 519-7477
mlennonpotomaclaw.com
phendler@potomaclaw.com

June 22, 2026

*Attorneys for Plaintiffs-Appellants*
*Cellport Systems Inc., CyberCar, Inc.*

## CERTIFICATE OF INTEREST

Counsel for Appellants Cellport Systems Inc. and CyberCar, Inc. certifies the following:

1. **Represented Entities.** Fed. Cir. R. 47.4(a)(1). Provide the full names of all entities represented by undersigned counsel in this case:

Cellport Systems Inc.
CyberCar, Inc.

2. **Real party in Interest.** Fed. Cir. R. 47.4(a)(2). Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None/Non-Applicable.

3. **Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

Cellport Systems, Inc. – None
CyberCar, Inc. – Cellport Systems, Inc.

4. **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

Gregy L. Ewing, Potomac Law Group
Gregory L. Ewing, Dickinson Wright PLLC
Deron R. Dacus, The Dacus Firm, PC

5. **Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

No.

6. **Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None/Not Applicable.

Dated: June 22, 2026

*/s/ Michael J. Lennon*
Michael J. Lennon

## TABLE OF CONTENTS

CERTIFICATE OF INTEREST ..... i
TABLE OF CONTENTS ..... iii
TABLE OF AUTHORITIES ..... v
STATEMENT OF RELATED CASES ..... 1
JURISDICTIONAL STATEMENT ..... 1
STATEMENT OF THE ISSUES ..... 1
STATEMENT OF THE CASE ..... 2
A. The Cellport-Harman License Agreement and District Court Complaint ..... 3
B. The Cellport-Samsung Settlement and Patent License Agreement ..... 4
C. Samsung's Acquisition of the Harman Defendants and Cellport's Pre-Litigation Attempts to Resolve This Dispute ..... 10
D. Defendants' Motion to Dismiss, and the District Court's Summary Judgment Order ..... 12
SUMMARY OF THE ARGUMENT ..... 14
A. HBAS GmbH Is Subject to Personal Jurisdiction in the District Court ..... 14
B. The SPLA Does Not Release Either the Complaint's State-Law Claims or Its Infringement Claims ..... 14
C. The SPLA Was Unenforceable in the District Court ..... 15
STANDARD OF REVIEW ..... 16
A. Summary Judgment ..... 16
B. Contract Interpretation ..... 16
C. Personal Jurisdiction ..... 17
ARGUMENT ..... 18
A. HBAS GmbH Is Subject To Personal Jurisdiction ..... 18
1. HBAS GmbH Has the Necessary "Minimum Contacts" for Personal Jurisdiction ..... 18
2. HBAS GmbH Agreed to Waive Personal Jurisdiction in the C-HLA ..... 21
B. The District Court's Interpretation of the SPLA Release Is a Manifest Error of Law ..... 23

1. The District Court's Misapplications of Colorado Law ..........................23
2. The SPLA Does Not Release The Complaint's State-Law Claims .........25
3. The SPLA Does Not Release The Complaint's Patent Infringement Claims ..........................................................................29
C. Samsung and Defendants Breached the SPLA Terms and Cellport's Release Was Unenforceable in The District Court ........................................35
CONCLUSION AND STATEMENT OF RELIEF SOUGHT ................................42
CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS ...44
ADDENDUM ..................................................................................................45
Dkt. 40, Order Converting Defendant's Motion to Dismiss to Motion for Summary Judgment .......................................................................Appx15
Dkt. 44, Memorandum, Opinion, and Order .............................................Appx20

## TABLE OF AUTHORITIES

**CASES**

*Alexsam, Inc. v. Aetna, Inc.*, 119 F.4th 27 (Fed. Cir. 2024) ....................................31

*Allstate Ins. Co. v. Huizar*, 52 P.3d 816 (Colo. 2002)...................................... 17, 24

*Amoco Oil Co. v. Ervin*, 908 P.2d 493 (Colo. 1995)........................................ 17, 41

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..........................................16

*Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 127 F. App'x 493 (Fed. Cir. 2005).........29

*Augustine Medical v. Progressive Dynamics*, 194 F.3d 1367 (Fed. Cir. 1999) .......31

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012 (Fed. Cir. 2009)...........................................................................................................18

*Baseload Energy v. Roberts,* 619 F.3d 1357 (Fed. Cir. 2010).................................33

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994)...........................................................................................................18

*Cellport Sys., Inc. v. Peiker Acustic GMBH & Co. KG*, 762 F.3d 1016 (10th Cir. 2014).....................................................................................................26

*City of Golden v. Parker*, 138 P.3d 285 (Colo. 2006) ...................................... 17, 41

*Cook Inc. v. Endologix, Inc.*, Case No. 1:09-cv-01248-TWP-DKL, 2012 WL 2682749 (S.D. Ind. Jul. 6, 2012)......................................................................26

*DigiTech Image Techs. LLC v. LG Elecs., Inc.*, Civ. No. 15-34-SLR, 2015 WL 6697263 (D. Del. Nov. 3, 2015)................................................................26

*Diversified Dynamics Corp. v. Wagner Spray Tech Corp.*, 106 Fed. App'x 29 (Fed. Cir. 2004) ...............................................................................................25

*Dream Finders Homes LLC v. Weyerhaeuser NR Co.*, 2021 COA 143 (Colo. App. 2021)....................................................................................................38

*Duplan Corp. v. Deering Milliken, Inc.*, 444 F. Supp. 648 (D.S.C. 1977) ..............31

*E-470 Pub. Highway Auth. v. Jagow*, 30 P.3d 798 (Colo. App. 2001)............ 17, 25

*Eli Lilly & Co. v. Emisphere Technologies, Inc.*, 408 F. Supp. 2d 668 (S.D. Ind. 2006) ....................................................................................................27

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317 (Fed. Cir. 2020)...........................................................................................................16

*Henry v. A. B. Dick Co.*, 224 U.S. 1 (1912) ..........................................................27

*Howmedica Osteonics v. Wright Med. Tech*, 540 F.3d 1337 (Fed. Cir. 2008). 33, 34, 35

*Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523 (2017) ...................31

*In re Qualcomm Litig*., Case No.: 3:17-cv-108-GPC-MDD, 2018 WL 6062352 (S.D. Cal. Nov. 20, 2018)...................................................................26

*In re Toyota Hybrid Brake Litig.*, 2021 WL 2805455 (E.D. Tex. Jul. 6, 2021).......21

*Ingham Reg'l Med. Ctr., Mclaren N. Mich., Bay Reg'l Med. Ctr., Lakewood Health Sys., Gifford Med. Ctr., Inc. v. United States*, 874 F.3d 1341 (Fed. Cir. 2017).........................................................................................................42

*Intel Corp. v. U.S. Intern. Trade Com'n*, 946 F.2d 821 (Fed. Cir. 1991) .................33

*Kannuu Pty Ltd. v. Samsung Electronics Co., Ltd.*, Appeal No. 21-1638 (Fed. Cir. 2021)..........................................................................................................16

*Kenall Mfg. Co. v. Cooper Lighting, LLC*, 338 F. Supp. 3d 841 (N.D. Ill. 2018)....................................................................................................... 27, 41

*Lee v. Grandcor Medical Systems, Inc.,* 702 F. Supp. 252 (D. Colo. 1988)...........41

*Macom Tech. Solutions Holdings, Inc. v. Infineon Techs. AG*, 881 F.3d 1323 (Fed. Cir. 2018) ..........................................................................................31

*McAuliffe v. Vail Corp.*, 69 F.4th 1130 (10th Cir. 2023) ..........................................17

*Moland v. Indus. Claim Appeals Office*, 111 P.3d 507 (Colo. App. 2004) .............17

*Pepcol v. Denver Union Corporation*, 687 P.2d 1310 (Colo. 1984)................. 17, 25

*Roberts v. Adams*, 47 P.3d 690 (Colo.App.2001)....................................................25

*Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341 (Fed. Cir. 1997)...................32

*Shaw and Polymers, Inc. v. E. I. Dupont*, 126 Vt. 206 (Vt. 1966)...........................41

*Sulca v. Allstate Ins. Co.*, 77 P.3d 897 (Colo.App.2003) .........................................25

*Sun Studs, Inc. v. ATA Equip. Leasing, Inc.*, 872 F.2d 978 (Fed. Cir. 1989)............42

*Tex. Soil Recycling, Inc. v. Intercargo Ins. Co*., 273 F.3d 644 (5th Cir. 2001)........16

*Town of Alma v. AZCO Construction, Inc*., 10 P.3d 1256 (Colo. 2000) .................38

*Union Rural Elec. Ass'n, Inc. v. Pub. Utilities Comm'n*, 661 P.2d 247 (Colo. 1983).........................................................................................................17

*Unova, Inc. v. Acer Inc.*, 363 F.3d 1278 (Fed. Cir. 2004)................................ 16, 33

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ..........................18

*Xilinx, Inc. v. Papst Licensing GmbH & Co.*, 848 F.3d 1346 (Fed. Cir. 2017) .......18

**OTHER AUTHORITIES**

Restatement (Second) of Contracts § 237 (Am. Law Inst. 1981)............................42

**RULES**

Fed. R. Civ. P. 56(a) ..........................................................................................22

## STATEMENT OF RELATED CASES

There are no appeals in or from the district court action that have previously been before this Court or any other appellate court, and no known cases pending in this Court or any other tribunal that will directly affect or be directly affected by this Court's decision in this case.

## JURISDICTIONAL STATEMENT

This appeal arises from a decision of the U.S. District Court for the Eastern District of Texas. The district court had jurisdiction under 28 U.S.C. §§ 1331, 1332, 1338 and 1367. The district court converted Defendants-Appellees' Rule 12(b)(6) motion to dismiss to a motion for summary judgment pursuant to F.R.C.P. Rule 12(d). The district court granted summary judgment and entered a final judgment on March 28, 2024. Plaintiffs filed a timely Notice of Appeal from the Order and Judgment on April 27, 2024. The appeal was docketed in this Court on April 22, 2026. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1295(a)(1).

## STATEMENT OF THE ISSUES

1. Whether the district court correctly granted summary judgment dismissing Plaintiffs-Appellants' claims asserted against Defendant-Appellee Harman Becker Automotive Systems GmbH ("HBAS GmbH") for lack of personal jurisdiction, and specifically because "HBAS does not have the requisite minimum contacts with

Texas for this Court to exercise jurisdiction over it," Appx20, Appx41—notwithstanding HBAS GmbH's direct contact with Texas through its parent, HII Inc., and, in addition, its explicit contractual waiver of all jurisdictional objections in the district court.

2. Whether the district court correctly granted summary judgment dismissing Plaintiffs-Appellants' claims asserted in this lawsuit against Defendant-Appellee Harman International Industries Inc. ("HII Inc.") because a release in an unrelated infringement litigation Settlement and Patent License Agreement (the "SPLA") is, according to the district court's interpretation, applicable and "embraces any claim—patent infringement or otherwise—that relates to the patents in issue" and "bars suit for any claim relating to the Licensed Patents, irrespective of whether [HII Inc.] or its Affiliates make [SPLA] Licensed Products," Appx37-38—notwithstanding the contract terms as a whole, which define in specific license and other terms the post settlement products authorized by the agreement.

## STATEMENT OF THE CASE

Plaintiffs-Appellants are appealing the district court's Order of December 11, 2023 converting Defendants-Appellees' motion to dismiss to a motion for summary judgment, Dkt. #40 ("[T]he Court will convert Defendants' motion to dismiss to a motion for summary judgment, specifically on the issue of the applicability of the SPLA to this case") and its subsequent Memorandum Opinion and Order, Dkt. #44,

and Final Judgment, Dkt. #45, entered March 28, 2024, subsequently granting summary judgment to Defendants-Appellees and dismissing Plaintiffs-Appellants' contract-related and patent infringement claims based on its interpretation of a release term in an unrelated litigation Settlement and Patent License Agreement ("SPLA"). Appx15; Appx20; Appx43.

### A. The Cellport-Harman License Agreement and District Court Complaint

Plaintiffs' Complaint was filed on September 21, 2022 and asserts two distinct groups of legal claims. The first group is contract term-related and based on defendants' breach of an April 2004 Cellport-Harman License Agreement (the "C-HLA") entered into by plaintiff Cellport Systems Inc. ("Cellport") and defendant HBAS GmbH. Appx44. The C-HLA authorized HBAS GmbH to manufacture, sell and distribute certain smartphone adaptors for automotive vehicles that allow hands-free use incorporating Cellport voice and data communications technology and related Cellport patents and patent applications. Appx166 (License Agreement), e.g., ¶¶ 82-86.

More specifically, the first group of claims allege HBAS GmbH's, and HII Inc.'s, breach of promises in the C-HLA that HBAS GmbH would pay Cellport royalties for the use of Cellport's patents by HBAS GmbH and its affiliates; keep complete and accurate books and records of the sale, distribution and delivery of licensed products; provide complete and accurate royalty statements to Cellport;

immediately correct incorrect royalty statements and pay the royalties due, with interest; allow Cellport to access HBAS GmbH's and its affiliates' books and records to verify its royalty statements; and not to use any unlicensed Cellport intellectual property. Appx44 (Complaint), ¶¶ 146-149, ¶¶ 162-214 and Counts One through Four, at ¶¶ 238-274.

The second group of claims allege defendants' infringement of four Cellport patents by Harman products that are outside the scope of the C-HLA's license. Appx44 (Complaint), Counts Five through Nine, at ¶¶ 275-418.[1]

**B. The Cellport-Samsung Settlement and Patent License Agreement**

Long after the parties entered into the C-HLA, the breach of which is the subject of Counts One through Four of Cellport's Complaint, Cellport and certain Samsung affiliates entered into a different, unrelated agreement, the Cellport-Samsung SPLA. It is the SPLA that contains the release that the district court

[1] The Complaint's patent infringement claims allege infringement of four SPLA Second Licensed Patents: U.S. Patent No. 6,430,164 (the "'164 patent") by Harman uConnect head units and Harman Telematics Application Gateway Aftermarket Products embedded with Harman Ignite Service Delivery Platform software; U.S. Patent No. 7,366,892 (the `892 patent) by Harman's Telematics Control Unit and Digital Cockpit platforms, and Harman uConnect head units and Telematics Application Gateway Aftermarket Product Spark, Smart and TAG devices embedded with Harman's SHIELD software; and U.S. Patent Nos. 6,341,218 (the `218 patent") and 6,377,825 (the "`825 patent") by Harman's BMW COMBOX and BMW HUH head units. The first two, the `164 and `892 patents, are not C-HLA Licensed Patents.

improperly construed and applied to dismiss the present action. The SPLA relates to an earlier patent infringement lawsuit Cellport brought in January of 2013 against Samsung Electronics Co., Ltd. ("SEC Ltd.") and its affiliate, Samsung Telecommunications America, LLC ("STA LLC").

In that earlier lawsuit Cellport alleged that Samsung "Galaxy S II" and "other cell phones" that perform network channel selection functions and automatically switch between WiFi and cellular data network interfaces infringed its U.S. Patent No. 6,122,514 issued September 19, 2000 for "Communications Channel Selection" (the "'514 patent"). Appx749, ¶ A.1.a.

In January of 2014, Cellport and Samsung agreed to settlement and patent license terms. The scope of those terms, and their applicability to this lawsuit, are the primary issues on this appeal. Cellport's Samsung infringement lawsuit was unrelated to the C-HLA or any activity of defendants. Indeed, HBAS GmbH and HII Inc. did not become affiliated with Samsung, specifically SEC Ltd., until years later in March of 2017. And, neither the '514 patent nor the earlier-accused Samsung products are at issue in the present litigation.

The SPLA both settled the `514 patent infringement claims and licensed Cellport's other patents, which were divided into two discrete groups: the "First Licensed Patents" including the `514 patent and several related patents, and the "Second Licensed Patents" including Cellport's other patents (together the SPLA

"Licensed Patents"). Its Recitals summarize the intent and purpose of the agreement:

> WHEREAS, Cellport . . . has accused Samsung of infringing one or more of the First Licensed Patents;
>
> WHEREAS, on November 20, 2013, the Parties filed a stipulation to dismiss, without prejudice, [Cellport's lawsuit] (the "Litigation"), and wish to avoid further litigation and, . . . Samsung wishes to obtain a license and release for any and all past, present, and future actions of Samsung and its Affiliates (defined below) with respect to the First Licensed Patents and Second Licensed Patents, and to stipulate to a dismissal of the Litigation with prejudice, and Cellport is willing to grant such a license and release, and to so stipulate, under the terms hereof.

Appx694, Recitals at 1.

The SPLA licensed Samsung and its Affiliates (existing or future) to practice the First Licensed Patents in "any product, service, or system" (the "First Licensed Products"). Appx693 (SPLA), ¶¶ 3, 6(a). The First Licensed Patents and First Licensed Products are not at issue in the district court litigation.

Pertinent to the issues on this appeal, the SPLA separately licensed Samsung and its Affiliates (existing or future) to practice the Second Licensed Patents, but only in a "mobile phone handset" or "handheld mobile terminal" that are "primarily used to receive wireless voice and data communications," and in any "service for use with" the licensed handsets or handheld terminals. In addition, this second license is restricted to a "mobile phone handset" or "other handheld mobile terminal" (and service for use with either) that are "made, branded, sold, or distributed by or

for Samsung" (the "Second Licensed Products"). Appx693 (SPLA), ¶¶ 3, 6(b). "Samsung," as used in the second license grant, is limited specifically to the two Samsung parties to the SPLA: SEC Ltd. and STA LLC.[2] Appx693, p. 1. Stated differently, although Samsung Affiliates are licensed, the SPLA does not license the products of Samsung Affiliates. Appx698, ¶ 6(b) ("[Cellport] grants to Samsung Electronics Co., Ltd. and Samsung Telecommunications America, LLC, *and each of their Affiliates* . . . made, branded, sold, or distributed by or for *Samsung* (the 'Second Licensed Products')" (emphasis added)).

The SPLA's "License" also includes a Cellport covenant promising not to "hereafter" assert claims against third parties "that would have the same or substantially similar effect" as Cellport asserting the Licensed Patents against Samsung or any of its Affiliates, describing as an example, filing claims against "any carrier, importer, retailer, distributor, or end user of Licensed Products to the extent such carrier's, importer's, retailer's, distributor's, or end user's activities relate to the Licensed Products." In this covenant Cellport also agreed not to "list, name, or otherwise identify any of the Licensed Products as an accused product," and "to the extent already identified as an accused product(s)," to "expressly disclaim and

---

[2] At the time of the settlement, STA LLC was a wholly-owned subsidiary of SEC Ltd. In January of 2015 SEC Ltd. merged STA LLC into Samsung Electronics of America Inc. ("SEA Inc."), and SEA Inc. became the successor in interest to the business and assets of STA LLC, including the SPLA. Appx45, ¶ 28.

exclude . . . any and all Licensed Products from any action and/or lawsuit." Appx698, ¶ 6(c).

The SPLA also includes an additional Cellport covenant, "[s]ubject to" a Samsung payment to Cellport, not to sue Samsung or any of its Affiliates "or any carrier, importer, retailer, distributor, or end user of Licensed Products," but only "to the extent" their "activities relate to the Licensed Products in connection with the Licensed Patents." Appx700, ¶ 8.

Finally, in reciprocal releases, and central to this appeal, Samsung and Cellport released (and promised not to sue) each other and their respective Affiliates from "any and all," "now existing or later acquired," "claims, actions, causes of action, suits, damages, injuries, duties, rights, obligations, liabilities, adjustments, responsibilities, judgments, trespasses and demands," that "were made or could have been made or may be made in the future" by Cellport or Samsung "relating to the Licensed Patents." Appx699, ¶¶ 7(a), 7(b), 7(c). To be clear, the four patents asserted in the infringement Counts in the present action are SPLA Second Licensed Patents, but only two are licensed to HBAS GmbH by the C-HLA. Also, none of the SPLA Second Licensed Products (specifically, mobile phone handsets and handheld mobile terminals) are products at issue in the district court lawsuit (specifically, automotive TCUs, head units, and telematics software and services).

The SPLA also includes an agreement to mutually dismiss Cellport's

infringement litigation with prejudice; as the Recitals explain, earlier "the Parties filed a stipulation to dismiss, without prejudice." And the SPLA includes reciprocal Cellport and Samsung representations, by Cellport that Samsung and Samsung Affiliate products, "as they are presently (and heretofore have been) configured," do not infringe the Second Licensed Patents or "any anticipated claim" in a patent application that Cellport "owns or has the right to assignment," and by Samsung that "Samsung and its Affiliates do not make or sell electronic control units for automotive telematic systems." Appx701, ¶11; Appx703, ¶ 19.

Cellport and Samsung also agreed to a January 23, 2014 Cellport "side letter" to confirm (for SEC Ltd., STA LLC and SEA Inc.) that Cellport licensed the SPLA's First and Second Licensed Patents to SEC Ltd and STA LLC, that SEC Ltd and STA LLC were "not infringing the Second Licensed Patents," and, therefore, that Cellport had "no intention of asserting" the Second Licensed Patents against Samsung."[3] The term "Samsung" in the side letter is, similar to the SPLA, defined only as SEC Ltd. and STA LLC. Samsung's in-house IP litigation counsel, Mr. Jong K Choi, negotiated and agreed to all of the SPLA's terms and the SPLA side letter. Appx748 (Pls.' Summ. J Evid.) at ¶¶ A.1.a – A.1.l; Appx789; Appx1021, ¶ 22; Appx1162 at 1.

[3] In the side letter the SPLA First Licensed Patents are referred to as the "Licensed Patents" and the SPLA Second Licensed Patents are referred to as Cellport's "Other Licensed Patents."

### C. Samsung's Acquisition of the Harman Defendants and Cellport's Pre-Litigation Attempts to Resolve This Dispute

HII Inc. and HBAS GmbH were acquired in March of 2017 by SEC Ltd. and at that time became its wholly-owned subsidiaries. Both companies are Tier 1 suppliers of automotive telematics control units ("TCUs"), among other related products, to major vehicle OEMs, including BMW. Appx44 (Complaint) at ¶¶ 22-24, 31, 74-76, 82-96, 113-117, 152-161, 228-236; Appx748 (Pls.' Summ. J Evid.) at ¶¶ B.1.a – B.1.l.

Cellport engaged in extensive correspondence with HII Inc. and HBAS GmbH regarding its C-HLA issues before filing its Complaint. The correspondence began in 2016, prior to Samsung's acquisition of defendants. Later, after multiple attempts by Cellport to dialogue with defendants regarding the C-HLA's license terms, defendants initially argued that HII Inc. were licensed by the SPLA. Appx44 (Complaint), ¶¶ 215-225; Appx1236, May 30, 2019 Letter from Matthew Prebeg, Cellport counsel, to HII Inc. in-house counsel, at 1-2:

> You've explained that Harman International Industries, Incorporated owns Harman Becker Automotive Systems GMBH, and that Samsung Electronics Co., Ltd. now owns. Harman International. For that reason, your initial review of the 2013 Samsung Agreement leads you to believe Harman Becker may be licensed to the Cellport patent portfolio, and in that case would not owe royalties to Cellport under the terms of the 2004 License Agreement between Harman Becker and Cellport (the "2004 Harman Agreement") with respect to the Harman products described in my December 4, 2018 and March 27, 2019 letters to Harman . . . .

> The 2013 Samsung Agreement applied only to "Licensed Products," as defined in the agreement itself . . . Any Cellport patents listed in the 2013 Samsung Agreement were Licensed Patents only to the extent of Licensed Products.
>
> The 2004 Harman Agreement does not apply to mobile phone handsets or other handheld mobile terminals, tablets, or portable PCs. It applies to systems and components of systems installed in vehicles that allow handheld mobile handsets/terminals to function with vehicle resources. As a consequence, the 2013 Samsung Agreement has no applicability to the 2004 Harman Agreement.

Defendants first mentioned the SPLA and its release a year and a half later, in December of 2020, asserting that "Section 7(c) releases Samsung and its Affiliates from any claims relating to the Licensed Patents."[4] Although shortly afterwards defendants claimed they discussed the SPLA and Cellport's correspondence regarding that agreement with Samsung, HII and HBAS GmbH continued, for more than three years to submit C-HLA royalty reports, and pay royalties to Cellport for other Harman products not in dispute, even during the district court litigation. Appx44 (Complaint), ¶¶ 74-78 and 215-227; Appx535-603 (Defs.' Mot. to Dismiss, Exs. 7-10; Appx1234-1245.

[4] SPLA paragraph 7(c) states that "Samsung and its Affiliates certainly benefit from the provisions of this agreement."

### D. Defendants' Motion to Dismiss, and the District Court's Summary Judgment Order

Defendants' response to plaintiffs' Complaint was to move to dismiss under F.R.C.P. 12, asserting that SPLA paragraph 7(b) released and barred its claims; defendants did not assert the SPLA licenses as a defense. The motion also moved to dismiss Cellport's claims against HBAS GmbH for lack of personal jurisdiction.[5] Defendants' Motion to Dismiss, Dkt. #23, §§ A.1 and B. The court subsequently converted the motion to a motion for summary judgment pursuant to F.R.A.P. Rule 12(d) and ordered the parties to submit additional summary judgment evidence, without additional briefing "at this time." Appx15.

Responsive to the court's order, plaintiffs and defendants submitted additional evidence to the court. Appx748; Appx768; Appx1019; Appx1024-1230 (Decl. of Greg Ewing Exs 1-34); Appx791; Appx794; Appx801; Appx804; Appx809; Appx 813.

As an example, plaintiffs submitted contemporaneous documents, and declaration testimony, "as evidence that the only Cellport claims settled by the SPLA relate to claims for patent infringement by Samsung products; that the SPLA does not cover other legal claims; and that the scope of the licenses, release, and covenants

[5] Defendants' motion to dismiss also asserted statute of limitations defenses and moved, in the alternative, to transfer the litigation to the District of Colorado under 28 U.S.C. § 1404(a).

of the SPLA does not include the claims and products at issue in this lawsuit."

Plaintiffs' documentary evidence included correspondence, and SPLA and side letter drafts exchanged during the SPLA negotiations between Cellport and Samsung (e.g. the correspondence of Samsung's in-house IP litigation counsel, Mr. Jung Choi, explicitly agreeing to, among other terms, the SPLA's restricted license for the Second Licensed Patents and Samsung's paragraph 19 representation, incorporating it into his draft SPLA in response to Cellport's request. Appx758 (Pls.' Summ. J Evid.) at ¶ A.1.j.; Appx1142 (Cellport email sent December 30, 2013 to Jong K. Choi) at 1-2; Appx759 at ¶ A.1.k, Jong K Choi email to Matthew Prebeg of January 3, 2014, p. 1 ("Matt, Per our call, I'm attaching what I believe may be our final, *which includes the representation Cellport is requesting at para. 19*.") (emphasis added). Plaintiffs' evidence also included declaration testimony and documents regarding Cellport's and Samsung's confirmation of their understanding with each other regarding Cellport's and Samsung's rights and the rights of Samsung Affiliates under the SPLA terms post-settlement. *See, e.g.,* Appx748 (Pls.' Summ. J Evid.) at ¶¶ A.1.a.- A.1.; Appx768, e.g., Declaration of Andrew Quartner ("[I]t was the clear understanding of [Cellport, SEC Ltd. and STA LLC] that Cellport's only agreement with Samsung was that it would not assert the First or Second Licensed Patents against products that were licensed in [SPLA] section 6 or did not infringe.").

The court then granted summary judgment, without further submissions or

briefing by the parties. Appx31 ("[T]he Court will only consider whether the SPLA precludes Cellport's claims against [HII Inc.]") and at Appx41 ("[HBAS GmbH] does not have the requisite minimum contacts with Texas for this Court to exercise jurisdiction over it."). The court's dismissal of Cellport's claims asserted against HBAS GmbH for lack of personal jurisdiction was without prejudice. Appx42.

## SUMMARY OF THE ARGUMENT

### A. HBAS GmbH Is Subject to Personal Jurisdiction in the District Court

HBAS GmbH is subject to personal jurisdiction in the district court. HBAS GmbH, acting in collaboration with HII Inc. and other Harman affiliates, purposefully placed its accused products in the stream of commerce through Harman's own distribution network, and through the distribution networks of its customers. Defendants never disputed the Complaint's factual jurisdictional allegations or plaintiffs' opposition evidence, and only responded that HBAS GmbH itself is not directly engaged in any business activity in Texas. Moreover, it previously agreed in the C-HLA to "irrevocably submit to the jurisdiction (subject matter and personal) and venue of the U.S. District Courts" for "all actions, suits or proceedings arising in connection with" the License Agreement.

### B. The SPLA Does Not Release Either the Complaint's State-Law Claims or Its Infringement Claims

None of the Counts of plaintiffs' Complaint are released. The district court improperly interpreted the language of the SPLA's release, in isolation, focusing

exclusively on the language "relating to," and failed to give any effect to the release's limitation of its scope to the "Licensed Patents" or the SPLA's license restrictions to specific products and uses, dismissing them as not relevant. Properly applying Colorado law, the district court's release interpretation should have considered and harmonized all the SPLA terms with those of the release. It did not, and its interpretation is an error of law.

### C. The SPLA Was Unenforceable in the District Court

Contrary to the district court's interpretation of SPLA paragraph 19, the representations of Cellport and Samsung are in fact "representations as to future conduct." They are literally applicable by the SPLA's definition of "Affiliates" to defendants. And they define specific products of Samsung and its Affiliates that "do not infringe any of the Second Licensed Patents" and can be made and sold without post-settlement infringement liability, as long as Samsung and its Affiliates (existing or later-acquired) "do not make or sell electronic control units for automotive telematics systems," as represented in the SPLA by Samsung.

HII Inc. and HBAS GmbH have never disputed that they make and sell "electronic control units for automotive telematics systems." When Samsung acquired defendants, it accordingly breached its representation, as well as the SPLA's implied duty of good faith and fair dealing. As did defendants. As a consequence of Samsung's and defendants' breach, Cellport was fully released from

its obligations under the terms of the SPLA, and the SPLA's release was unenforceable in the district court.

## STANDARD OF REVIEW

### A. Summary Judgment

This Court reviews a grant of summary judgment applying the law of the regional circuit. The Fifth Circuit reviews summary judgment de novo. *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1324–25 (Fed. Cir. 2020); *Tex. Soil Recycling, Inc. v. Intercargo Ins. Co.*, 273 F.3d 644, 648 (5th Cir. 2001). Summary judgment is only appropriate when, drawing all justifiable inferences in the nonmovant's favor, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 255 (1986).

### B. Contract Interpretation

Contract interpretation is reviewed by this Court under state law. *Kannuu Pty Ltd. v. Samsung Electronics Co., Ltd.*, Appeal No. 21-1638 (Fed. Cir. 2021); *Unova, Inc. v. Acer Inc.*, 363 F.3d 1278 (Fed. Cir. 2004).

Interpretation of the SPLA is governed by Colorado law. Appx702, ¶ 15. Colorado law requires a court to determine and give effect to the intent of the parties as determined from the contract's language, reading each provision in context with other provisions in the agreement and *giving effect to all provisions*. *McAuliffe v.*

*Vail Corp.*, 69 F.4th 1130, 1144 (10th Cir. 2023); *Moland v. Indus. Claim Appeals Office*, 111 P.3d 507, 510 (Colo. App. 2004); *Union Rural Elec. Ass'n, Inc. v. Pub. Utilities Comm'n*, 661 P.2d 247, 251 (Colo. 1983). Moreover, the court must "determine the meaning of a contract 'by examination of the entire instrument, and not by viewing clauses or phrases in isolation.'" *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002). The contract is to be "interpreted in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless." *Pepcol v. Denver Union Corporation*, 687 P.2d 1310, 1313-14 (Colo. 1984).

It is also "a basic principle of contract interpretation" under Colorado law "that a more specific provision controls the effect of general provisions," and a contract "is not to be interpreted in a vacuum." *E-470 Pub. Highway Auth. v. Jagow*, 30 P.3d 798, 801 (Colo. App. 2001), *aff'd*, 49 P.3d 1151 (Colo. 2002).

Under Colorado law, every contract contains an implied duty of good faith and fair dealing. A violation of the duty of good faith and fair dealing gives rise to a claim for breach of contract. *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006); *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995).

### C. Personal Jurisdiction

Personal jurisdiction is a question of law that this Court also reviews de novo.

*Xilinx, Inc. v. Papst Licensing GmbH & Co.*, 848 F.3d 1346, 1352 (Fed. Cir. 2017);

In cases where the parties have not conducted discovery, a plaintiff need only to make a prima facie showing that defendant is subject to personal jurisdiction, and pleadings and affidavits are to be construed in the light most favorable to plaintiff. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009).

## ARGUMENT

### A. HBAS GmbH Is Subject To Personal Jurisdiction

#### 1. HBAS GmbH Has the Necessary "Minimum Contacts" for Personal Jurisdiction

The district court erred as a matter of law in ruling that "HBAS does not have the requisite minimum contacts with Texas for this Court to exercise jurisdiction over it." Appx20 at 12, 22. The undisputed facts say otherwise.

The minimum contacts test is satisfied if a defendant "'delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state.'" *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980)). The existence of an established distribution channel into the forum is a significant factor when evaluating a stream of commerce theory. *See id.* at 1565 n.15. That is exactly the case here. Harman products are distributed into the stream of commerce through the distribution networks of HII Inc. and its affiliates, and through the distribution networks of HII Inc. and HBAS

GmbH customers.

HII Inc. and HBAS GmbH have not denied that, as plaintiffs' district court Complaint specifically alleges, HII Inc. "maintains a place of business" within Texas, "is registered to do business" in Texas, and "does business" in Texas, "directly and/or through intermediaries, including through affiliated companies of HII Inc. and Samsung." Nor have they denied that HII Inc. "offers its products and/or services *and the products and services of HBAS GmbH*, *including those described in this Complaint, to customers and potential customers located in the State of Texas* . . . .") (emphasis added). Appx47, ¶ 13. And neither has denied the Complaint's other jurisdictional allegations, e.g., Appx44 (Complaint) at ¶ 22 ("Harman's [HII's and HBAS's] products and services are made, used and sold in the United States and abroad."); ¶¶ 30-31 ("Samsung and Harman have collaborated to manufacture, promote and sell . . . to Harman's automotive industry OEM customers and their suppliers . . . "). *See also* Appx44 (Complaint), ¶ 114 and fn.15; ¶¶ 228-236 (discussing contracts awarded to defendants for systems intended for use in vehicles sold in the United States, including the state of Texas). Or plaintiffs' evidence opposing defendants' motion to dismiss, e.g., U.S. customs, federal court and other records indicating that an affiliate of HII Inc., "Harman Automotive El Paso – JZ" of El Paso, Texas, directly imports HBAS GmbH products into Texas, and Harman corporate "Fact Sheets" that identify numerous "Key" Harman customers, including

BMW and other OEMs, whose products are sold throughout the United States, and in Texas. Appx708-747 (Mot. to Dismiss Opp. Exs. 1-6); Appx28 at 9 ["[O]ne importation record shows that HBAS has imported some goods into Texas . . . ."]; Appx744 ("Plaintiffs . . . Harman Becker Automotive Systems, Inc., Harman International Industries, Inc., Harman Becker Automotive Systems Franklin, Harman Becker Automotive Systems Queretero, Harman Automotive El Paso – JZ, . . . are affiliated entities.").

For its part, HBAS GmbH has not denied that it directly applies for and manages U.S. Federal Communications Commission certification of its products—including automotive telematics control units and head units—for distribution and in-vehicle use by automotive OEMs and their customers throughout the entire United States, including Texas. Appx44 (Complaint), ¶¶ 5, 31, 82-120; Appx716-743 (Mot. to Dismiss Opp. Exs 3-5); Appx748 (Pls.' Summ. J Evid.) at ¶¶ B.1.a – B.1.l.; Appx1019, ¶¶ 23-36; Appx1164-1230 (Ewing Decl. Exs. 21-34).

The district court, however, improperly relied on the "Kolb" Declaration, which HBAS GmbH submitted to dispute that it engages in business activity in Texas. Appx20 (Mem. Op. and Order) at 8-9, 11. But that Declaration carefully qualifies its statements, limiting them exclusively to the direct activities of HBAS GmbH, asserting only that "HBAS Germany has not" engaged in the Complaint's alleged activity. Appx436, e.g., at ¶ 4 ("*HBAS Germany has not* conducted business

in Texas . . . .") (emphasis added). The Declaration notably does not address whether, as alleged in plaintiffs' Complaint, HII Inc. or HBAS GmbH "through intermediaries, including through affiliated companies of HII Inc. and Samsung," offer or distribute HBAS GmbH products and services to customers and potential customers located in the United States, including Texas. Appx47, ¶ 13.

The HBAS GmbH Kolb Declaration is insufficient to rebut the undisputed factual jurisdictional allegations of plaintiffs' Complaint and plaintiffs' opposition evidence that HBAS GmbH and its affiliates, including HII Inc., make purposeful use of their own and their customers' distribution systems in order to distribute Harman products into the stream of commerce, with the expectation that they will be purchased by consumers in the United States, including Texas. *See In re Toyota Hybrid Brake Litig.*, 2021 WL 2805455 (E.D. Tex. Jul. 6, 2021).

### 2. HBAS GmbH Agreed to Waive Personal Jurisdiction in the C-HLA

HBAS GmbH is also subject to personal jurisdiction in the district court because in the C-HLA, it contractually waived any objections it otherwise may have had. The C-HLA states that any lawsuit filed by Cellport or HBAS GMBH "arising under" the C-HLA "must be brought by Cellport or HBAS" in Colorado, *but* qualifies that requirement by stating that "if such lawsuit [is] brought by Cellport" and "is based on or alleges activities of HBAS that are outside of the scope of this Agreement," it "shall not be considered a lawsuit arising under" that Agreement—

i.e., one that must be brought in Colorado. Appx180, ¶ 10.3.

The C-HLA further states that for any action that arises "in connection with" the C-HLA, "[t]he Parties irrevocably submit to the jurisdiction (subject matter and personal) and venue of the U.S. District Courts . . . and waive any objection based on lack of subject matter or personal jurisdiction, or forum non-conveniens or any other objection to venue." Appx180, ¶ 10.3.

The district court Complaint alleges claims that arise in connection with the C-HLA. Appx44 (Complaint), ¶¶ 215-227, 241-251 and 261 (HBAS GmbH's failure to comply with the C-HLA terms). The Complaint also "alleges activities of HBAS that are outside" the scope of the C-HLA. Appx44 (Complaint), ¶¶ 275-418 (Counts Five through Nine for patent infringement by HII and HBAS GmbH). As one example of the latter, the Complaint alleges infringement of Cellport's `164 and `892 SPLA Licensed Patents in Counts Five and Six. The `164 and `892 patents are not C-HLA Licensed Patents. It also alleges infringement by Harman "uConnect" head units, which are not C-HLA Licensed Products. Appx44 (Complaint), ¶¶ 276 and 303 (the `164 and `892 patents are not licensed by the C-HLA) and ¶¶ 162, 173-174 (Harman uConnect head units are not C-HLA Licensed Products).

Prior to commencement of this lawsuit, HII Inc.'s and HBAS GmbH's in-house counsel admitted that its accused conduct falls outside the scope of the C-HLA. Appx603 ("[I]t is clear the UConnect products fall outside the scope of the

Harman License.”).

For its part, the district court’s summary judgment Order ignores the C-HLA’s forum election and waiver provisions, Appx25-30 at 6-11 (“Cellport’s theory of specific jurisdiction over HBAS fails.”), although the issue was raised twice by plaintiffs in their opposition briefing to the court, *see* Plaintiffs’ Opposition to Defendants’ Motion to Dismiss, Dkt. 34, § E.2. (“Venue In This District is Proper Under The Forum Election Clause”) and Plaintiffs’ Surreply to Defendants’ Motion to Dismiss, Dkt. 39, § D.1. (“[HBAS GmbH] Agreed to the Jurisdiction of This Court in the License Agreement”).

The district court’s dismissal of plaintiffs’ claims against HBAS GmbH for lack of personal jurisdiction is erroneous for this additional reason.

### B. The District Court’s Interpretation of the SPLA Release Is a Manifest Error of Law

#### 1. The District Court’s Misapplications of Colorado Law

The district court’s interpretation of the SPLA’s release is that the wording “relating to the Licensed Patents,” under Colorado law, “embraces any claim—patent infringement or otherwise—that relates to the patents in issue.”). Appx36-37 at 17-18. In applying that interpretation, the court ignored the modifying language “the Licensed Patents” and/or replaced it with “the [C-HLA] License Agreement.” That interpretation is demonstrably overly broad, and erroneous.

The district court incorrectly focused on interpreting only the words “relating

to" in the release, excluding from that interpretation the release's explicit limitation to "the Licensed Patents." Appx36 ("'Relate to' is a broad term meaning 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.' (citations omitted). And Colorado courts have repeatedly interpreted contract terms like 'relating' or 'relate to' as encompassing all issues surrounding the underlying subject matter."). The "underlying subject matter" of the SPLA, however, is not just the Cellport patents. It is a settlement of Cellport's patent infringement lawsuit, and a forward-looking patent licensing agreement, relating to certain Samsung mobile phones that infringe, or may infringe, the SPLA's Licensed Patents.

The district court's first SPLA interpretation error was ignoring the language of the release itself restricting its scope to "the Licensed Patents." Colorado law required the court to consider the meaning and effect of that phrase within the release. Limiting the effect of the release language essentially to the wording "relating to" was a manifest error of law. *See, e.g., Allstate* , 52 P.3d at 819 ("[T]he meaning of a contract must be determined by examination of the entire instrument, and not by viewing clauses or phrases in isolation.").

The court's second error was interpreting the SPLA's release without consideration of its license and other terms. Colorado law also required the court to consider *all the terms* of the SPLA when interpreting the release, and to harmonize

those terms with the release, so that none are rendered meaningless. *Pepcol*, 687 P.2d at 1313-14; *Roberts v. Adams*, 47 P.3d 690, 694 (Colo.App.2001)] (courts should seek to give effect to all provisions so that none will be rendered meaningless); *Sulca v. Allstate Ins. Co.*, 77 P.3d 897, 899 (Colo.App.2003) (holding that any construction that would render any clause or provision unnecessary, contradictory, or insignificant should be avoided).

Under Colorado law, more specific contract provisions, such as the SPLA's product and use-specific license, covenants and representations, control the effect of a more general provision, such as the SPLA's release. *See E-470 Pub. Highway Auth.* , 30 P.3d at 801 (Colo. App. 2001), *aff'd*, 49 P.3d 1151 (Colo. 2002).

**2. The SPLA Does Not Release The Complaint's State-Law Claims**

A claim or action "relates to" a patent only if the claim or action is for infringement of the patent. *See Diversified Dynamics Corp. v. Wagner Spray Tech Corp.*, 106 Fed. App'x 29, 33 (Fed. Cir. 2004) ("The technology at issue for purposes of performing the infringement analysis . . . is solely claimed in the [Diversified] patent. The action itself therefore "relates to" the [Diversified] patent because that patent gives Diversified the limited monopoly right to bring this [patent infringement] cause of action.").

Claims or actions that are contract related do not "relate to" patents. *See Cellport Sys., Inc. v. Peiker Acustic GMBH & Co. KG*, 762 F.3d 1016, 1023 (10th

Cir. 2014). ("[P]eiker owes Cellport royalties on [the products] because both products fall within the meaning of [the terms of the License Agreement].") (applying Colorado law); *In re Qualcomm Litig.*, Case No.: 3:17-cv-108-GPC-MDD, 2018 WL 6062352 at *6 (S.D. Cal. Nov. 20, 2018) ("Qualcomm's breach of contract claim [for nonpayment of royalties] is just that: a claim based on contract terms and contract law and not based on patent infringement."); *DigiTech Image Techs. LLC v. LG Elecs., Inc.*, Civ. No. 15-34-SLR, 2015 WL 6697263 at *4 (D. Del. Nov. 3, 2015)] ("[LG's] contention that the Digitech/LG Settlement Agreement 'relates to in any way ... the Patents,' thus releasing all 'claims' Digitech may have against 'any' RPX Member or RPX Licensee (such as LG), is improper . . ."); *Cook Inc. v. Endologix, Inc.*, Case No. 1:09-cv-01248-TWP-DKL,2012 WL 2682749 at *6 (S.D. Ind. Jul. 6, 2012) ("In short, the two lawsuits are not meaningfully related.").

In this case, plaintiffs' state-law claims do not relate to the SPLA or its Licensed Patents. They relate specifically to the License Agreement in dispute—the C-HLA—and its terms, and are based on Harman's breach of the terms of the C-HLA. Although the C-HLA is a patent license agreement and grants rights (a promise not to sue for infringement) to its Licensed Patents, the state-law claims do not "relate to" the C-HLA's Licensed Patents. They relate to the contract-terms for the license granted for those C-HLA patents governing the use of those patents.

Appx166 (C-HLA), Appx44 (Complaint), e.g., ¶ 241 ("... HBAS GmbH breached, and repeatedly breached, at least paragraphs 2.1 ("The License"), 2.2 ("Limitations on License"), 3.1 ("Royalty"), 3.3 ("Records of Royalties Due; Reports"), 3.4 ("Audit Right"), 8.4 ("Rights And Obligations Upon Termination"), and paragraph 10.13 ("Further Assurances") of the License Agreement."), ¶ 256 (". . . without properly compensating Cellport by paying the royalties required by the License Agreement for all Licensed Products."), ¶ 268 (". . . induced HBAS GmbH not to perform its contractual obligations to Cellport under the License Agreement."), and ¶ 271 (". . . Harman's breach of the terms of License Agreement . . . ."). *See, e.g.*, *Henry v. A. B. Dick Co*., 224 U.S. 1 (1912) ("[T]he patentee may waive the tort and sue upon the broken contract . . . ."); *Kenall Mfg. Co. v. Cooper Lighting, LLC*, 338 F. Supp. 3d 841, 846 (N.D. Ill. 2018) ("Cooper's obligation to pay certain sums as royalties at particular times is a creature of contract . . . .."); *Eli Lilly & Co. v. Emisphere Technologies, Inc.*, 408 F. Supp. 2d 668, 690-91 (S.D. Ind. 2006) ("When Lilly ventured beyond [the contract] limits . . . [it] also breached the contract that gave it the limited license in the first place.").

Although the district court's summary judgment Order itself acknowledges as much, Appx21; Appx35, it nevertheless improperly conflates Cellport's state-law, C-HLA term-based, contract-law claims with the SPLA's reference to patents that are also in issue in the district court litigation. Appx35-36 ("The Licensed Patents to

which the C-HLA refers are listed in the SPLA and contemplated in the release . . . Thus, each of Cellport's state-law claims is grounded in Harman's purported breach of some duty related to the patents expressly covered in the SPLA's release.").

Plaintiffs' state-law claims do allege that Harman practices the C-HLA Licensed Patents in products "that are not [C-HLA] Licensed Products."[6] But the Complaint's state-law claims are not claims for breach of any term of the SPLA. They, in contrast, are based only on HII Inc's and HBAS GmbH's contractual obligations imposed by the C-HLA. Appx166 (C-HLA), Appx44 (Complaint), ¶¶ 61-63, 150-151, 249-250, e.g. ¶ 151 (". . . HBAS GmbH promised in paragraph 2.2 of the License Agreement not to use any Cellport Intellectual Property other than the Licensed Patents and Licensed Software. . . ."), ¶ 249 (". . . even though HBAS GmbH explicitly agreed to design, manufacture, cause to be manufactured, sell, distribute and deliver only Licensed Products practicing the Licensed Patents."), and ¶ 250 (". . . that HBAS GmbH specifically promised Harman would not use in its products.").

Plaintiffs' district court Complaint pleads state-law causes of action based on the activities of HII Inc. and HBAS GmbH relating to the terms of the Cellport-HBAS GmbH C-HLA. Cellport's state law claims, accordingly, do not "relate to"

[6] The Cellport patents that are SPLA Second Licensed Patents are the `164, `892, `218 and `825 patents. Only the `218 and `825 patents are C-HLA Licensed Patents.

the SPLA's Licensed Patents.

### 3. The SPLA Does Not Release The Complaint's Patent Infringement Claims

The district court improperly dismissed the SPLA's license granting rights in the Second Licensed Patents and its product and use limitations as irrelevant to interpretation of the SPLA release. Appx20 (Mem. Op. and Order) at 17, n.5 ("Whether an item is a Licensed Product is relevant to the license granted in the SPLA, but not to the release . . ."), at 18-19 ("[T]he release bars suit for any claim relating to the Licensed Patents, irrespective of whether Samsung or its Affiliates make Licensed Products. Thus, the release is broader than the license, reinforcing Samsung's and its Affiliates' abilities to use the Licensed Patents without any fear of future liability."), at 19 and n.6 (". . . a mere license would have required the Court to undertake an intensive factual analysis into the allegedly infringing items . . ."), at 22, n.7 (". . . the Court need not consider whether the covenant not to sue would also preclude Cellport's claims").

In effect, the district court's interpretation "as encompassing all issues surrounding the underlying subject matter" of the SPLA not only improperly ignores its underlying subject matter (settlement of the Samsung infringement lawsuit and licensing the SPLA's Licensed Patents), worse, it reads out the modifier "Licensed" in the release's reference to "the Licensed Patents." *See Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 127 F. App'x 493 (Fed. Cir. 2005) ("Additionally, use of the past

tense 'LICENSED' in term 'LICENSED PATENTS' even more strongly suggests that [licensor] had already acquired rights in these patents by its LICENSOR'S AGREEMENTS. Otherwise, the agreement with Aspex would have referred to the subject patents, either then-owned or future-acquired, generically as 'PATENTS'").

Importantly, the district court's interpretation also ignores the parties' confirmatory statement in the SPLA Recitals regarding their intent, that "Cellport is willing to grant [Samsung and its Affiliates] such a license and release," and to "stipulate" to the dismissal of its infringement Complaint according to all "the terms" of the SPLA. *Compare*, in contrast, the district court's quoted reference to the SPLA Recitals. Appx33-34 ("[S]ee generally (Dkt. #26-1 at 2) ('Samsung wishes to obtain a license and release for any and all past, present, and future actions of Samsung and its Affiliates . . . with respect to the [Licensed Patents] . . . , *and Cellport is willing to grant such a license and release.*") (emphasis added).

Under Colorado law all of the SPLA's terms and their restrictions and limitations are, in fact, relevant, and the district court's interpretation improperly renders them entirely superfluous. The district court's interpretation of Cellport's release improperly rewrites the terms of the SPLA by, in effect, reading out the explicit limitations of its product- and use-specific license and other terms as not relevant and of no effect. Those restrictions and limitations should have been given effect by the district court when interpreting the release. *See* § B.1., supra. *See also*

*Augustine Medical v. Progressive Dynamics*, 194 F.3d 1367, 1370-71 (Fed. Cir. 1999) ("We must determine whether the language as drafted by Augustine and Progressive functions as a bar to any future claims of Augustine for patent infringement occurring after the Settlement Agreement, related to those goods that were included in the Settlement Agreement.").

The SPLA's term limitations are in and of themselves an explicit reservation to Cellport of the right to enforce the SPLA Second Licensed Patents against HII Inc. and HBAS GmbH for infringement by any other products—those that are not Second Licensed Products. It is fundamentally implausible that Samsung actually believed a license under the second SPLA license was required if the release discharged any and all claims. *See, e.g.*, *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523, 1533-35 (2017) ("A computer developer could, for instance, license a manufacturer to make its patented devices and sell them only for non-commercial use by individuals.."); *Alexsam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 37-38 (Fed. Cir. 2024) ("[T]he scope of the asserted claims is broader than the scope of the license granted . . . ."); *Macom Tech. Solutions Holdings, Inc. v. Infineon Techs. AG*, 881 F.3d 1323, 1328-30 (Fed. Cir. 2018) ("[W]e do not suggest that MACOM is free to operate outside the Field of Use."); *Duplan Corp. v. Deering Milliken, Inc.*, 444 F. Supp. 648, 670-671 (D.S.C. 1977) ("[T]he use rights were effectively reserved and [licensors] had the right to license the use of the machines separately from their

manufacture and sale. . . ."). The limitations describe the only infringing products that HII Inc. and HBAS GmbH are authorized to make and sell post-settlement without liability. Appx698-700, ¶ 6(b) ("'Second Licensed Products'"), ¶ 6(c) ("Licensed Products"), and ¶ 8 ("Licensed Products."). *See, e.g., Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 345 (Fed. Cir. 1997) (a "license grants full protection against a claim of future infringement" and a waiver of "the right to sue for past damages for past infringement . . . would require a release, not a license . . . .").

It is, to say the least, illogical, and an internally inconsistent interpretation of the SPLA, that Cellport would, in the same agreement, both specifically restrict the license and other terms relating to the Second Licensed Patents and at the same time grant unrestricted rights to Samsung in a release of all claims relating to the same Licensed Patents. Or for that matter that even Samsung itself would invest the time and resources to do the same. Samsung obviously completely understood the release did not provide freedom from all future liability. Samsung's agreement to the restricted terms of the SPLA's license for the Second Licensed Patents belies defendants' assertion that its release completely releases any and all claims relating to those patents. It is simply an incredulous proposition that Samsung believed it had to accept a specific product and use license for those patents to make its post-settlement mobile phone handsets and mobile terminals, and at the same time

Cellport had already agreed the SPLA's release terms provided complete protection for any and all possible future liability relating to the same patents. *See, e.g., Baseload Energy v. Roberts,* 619 F.3d 1357, 1363-64 (Fed. Cir. 2010) ("Most importantly, the parties could not possibly have intended to release any and all patent infringement claims, because the Settlement Agreement granted . . . an option to acquire a nonexclusive license . . . The license provision would be unnecessary if all infringement claims under the [patent] were released."); *Howmedica Osteonics v. Wright Med. Tech*, 540 F.3d 1337, 1350 (Fed. Cir. 2008) ("Given the structure of the agreements it is on its face unlikely that the parties would exclude the [patent] from the cross-licensing provisions but effectively grant rights in the [patent] with regard to existing products by virtue of the release provision."); *Unova, Inc.*, 363 F.3d at 1282-83 ("Our interpretation of the release provision is consistent with — indeed, confirmed by — the structure of the settlement agreement as a whole . . . It would be rather unusual for Unova to release Hewlett-Packard from liability for acts of infringement that occurred before it became Compaq's parent, but to reserve the right to sue Hewlett-Packard for identical acts of infringement that occurred after it became Compaq's parent. Nowhere does the settlement agreement express Unova's and Compaq's intent to make such an arrangement, and our reading of the release provision as not releasing Compaq's future parents avoids any such inconsistency."); *Intel Corp. v. U.S. Intern. Trade Com'n*, 946 F.2d 821, 828 (Fed. Cir. 1991) ("[T]he

ALJ's interpretation is consistent with other provisions of the agreement . . . For consistency of the agreement as a whole, the words "Sanyo . . . products" as used in paragraph 3.5 are properly construed to cover only Sanyo designed and manufactured products and to exclude parts designed by others.”).

Most telling is the fact that the district court’s summary judgment Order never points to any language, or any term of the SPLA, that explains, or even suggests, why Cellport would do so. The district court’s Order instead reads a factually unsupported, hypothetical reason into the SPLA and its terms: “Samsung may have wanted to include a forward-looking release in addition to obtaining a license.” Appx37-38 at 18-19, n.6. Equally telling is HII Inc.’s and HBAS GmbH’s continuing submission of C-HLA royalty reports, and payment of royalties to Cellport, for Harman licensed products not in dispute, for more than three years after their acquisition by Samsung, even during the district court litigation. Appx1244.

This case is closely similar in facts to the *Howmedica Osteonics Corp. v. Wright Medical Technology, Inc.* case. Similar to *Howmedica*, the structure of the SPLA confirms that the SPLA was not intended to release “any and all” claims relating to the SPLA’s Licensed Patents. That structure includes the license and other settlement terms, and Cellport’s, side letter, in addition to the release, that restrict and limit the rights granted to Samsung to practice the Second Licensed Patents, and confirm those restrictions and limitations, by specifically defining the products that

are free of liability post-settlement. Appx698, ¶ 6(b) ("mobile phone handsets" and "handheld mobile terminals" that are "primarily used to receive wireless voice and data communications," and any "service for use with" the licensed handsets or handheld terminals, that are "made, branded, sold, or distributed by or for Samsung") and Appx703, ¶ 19 (". . . [the products of Samsung and its Affiliates] as they are presently (and heretofore have been) configured" and "electronic control units for automotive telematic systems."); Appx789-790 at 1 (". . . mobile phone handsets or other handheld mobile terminals, as indicated by agreement.").

As the Court in *Howmedica* concluded, it is also unlikely here, given the structure of the SPLA, that Cellport would so restrict the license under the SPLA's Second Licensed Patents, limit the scope of Cellport's non-infringement representation for those patents in its reciprocal paragraph 19 representation, and then, in the very same agreement, grant unlimited rights in those patents by virtue of the release provision.

### C. Samsung and Defendants Breached the SPLA Terms and Cellport's Release Was Unenforceable in The District Court

The district court interpreted SPLA paragraph 19 as "present tense" Cellport and Samsung "representations" that have no future effect. Thus, according to the court, "[e]ven assuming arguendo that, years later, Harman has made ECUs, Harman (and Samsung, for that matter) did not represent in paragraph 19 of the SPLA that they would never make ECUs. Instead, Samsung merely confirmed that, when the

SPLA went into effect in 2013, Samsung and its Affiliates did not make or sell such items. This is plainly not a future representation, which the parties demonstrated elsewhere they were fully capable of making—see, e.g., the release provision." Appx40 at 21 ("On its face, paragraph 19 reflects present-tense representations by Cellport itself, as well as Samsung, not representations as to future conduct . . . .").

But Samsung did represent in paragraph 19 of the SPLA that they and Samsung Affiliates would not make such "ECUs" post-settlement. Indeed, in contrast to the district court's ruling, Samsung's in-house IP litigation counsel, Mr. Jung Choi, explicitly agreed to Samsung's representation, and incorporated it into the SPLA, to confirm for Cellport that, with respect to Cellport's SPLA paragraph 19's non-infringement representation, post-settlement, the SPLA terms do not license or release the making and selling of "electronic control units for automotive telematics systems" by Samsung or any of its Affiliates. Mr. Choi also agreed that Cellport's side letter statements that it "has no intention of asserting its [Second Licensed Patents] against Samsung, either directly or indirectly, for any products or services" are not applicable if Samsung or any of its Affiliates makes or sells such electronic control units. Cellport was concerned about future Samsung Affiliates because those Affiliates and their products were unknown and might infringe. Appx748 (Pls.' Summ. J Evid.) at ¶¶ A.1.h. - A.1.k., e.g., A.1.j. (". . . Regarding the changes Samsung made to the [side] letter, and also concerning Samsung's proposed

paragraph 19 in the license agreement, Cellport is not fully aware of all of Samsung's or its Affiliates' products."); Appx772 at ¶17 ("Thus in section 19 of the Settlement Agreement, Cellport confirmed that Samsung did not make any products which would infringe the Second Licensed Patents, and similarly Samsung confirmed that it did not make or sell electronic control units for automotive telematic systems, which was the precise area of concern for Cellport."); Appx789-790 at 1; Appx694, Recitals; Appx703, ¶ 19. The term "Affiliate" explicitly applies by its definition not only to "existing" but also to "future" Samsung. Affiliates. Appx695, ¶ 3.

The district court's interpretation of Samsung's paragraph 19 representation is inexplicably completely inconsistent with the SPLA's definition of the term "Affiliates." Appx33. ("And although Harman was acquired after the parties signed the SPLA, the agreement explicitly states that later-acquired corporations are "Affiliates" for purposes of the agreement. Thus, the SPLA applies to Harman."). The definition of Affiliates literally applies paragraph 19's Samsung representation that "Samsung and its Affiliates do not make or sell electronic control units for automotive telematics systems" forward, to Samsung's post-settlement, future Affiliate acquisitions, including HII Inc. and HBAS GmbH. And both Cellport and Samsung obviously agreed that the representations included future Affiliates. They both agreed to the definition. The district court's summary judgment Order, again inexplicably, improperly rewrites that agreement to exclude its application to

"future" Affiliates, and their pertinent conduct and products described in the representation.

The SPLA's paragraph 19 representations do in fact relate to future, post-settlement conduct of Cellport and Samsung. They define products of Samsung and its Affiliates that "do not infringe any of the Second Licensed Patents" and can be made and sold without post-settlement infringement liability, if they are not Second Licensed Products, as long as Samsung and its Affiliates (existing or later-acquired) "do not make or sell electronic control units for automotive telematics systems." Appx703, ¶ 19.[7]

For their part, defendants also conveniently ignore, depending on their objective, the SPLA's definition of Affiliates and the applicability of Samsung's paragraph 19 representation to later-acquired Affiliates. Appx693, ¶ 19.[8] *Compare*

---

[7] Representations are common contract terms among others that parties to an agreement incorporate to allocate future risks. *See, e.g., Town of Alma v. AZCO Construction, Inc*., 10 P.3d 1256 (Colo. 2000) ("Contract law is intended to enforce the expectancy interests created by the parties' promises so that they can allocate risks and costs during their bargaining."); *Dream Finders Homes LLC v. Weyerhaeuser NR Co.*, 2021 COA 143 (Colo. App. 2021).

[8] SPLA paragraph 19 provides that "Cellport represents that the products made, sold, used and/or imported by Samsung and its Affiliates, as they are presently (and have heretofore been) configured, do not infringe any of the Second Licensed Patents, nor are they within the scope of any anticipated claim in any patent application, which Cellport owns or has the right to assignment. Samsung represents that Samsung and its Affiliates do not make or sell electronic control units for automotive telematic systems."

Appx800, ¶ 16 ("Neither HIII nor HBAS Germany was an Affiliate on the Effective Date of the SPLA (November 13, 2013) or when the agreement was signed in 2014 . . . HIII or HBAS Germany making or selling of 'electronic control units for automotive telematic systems,' since becoming Affiliates (Dkt. 34 at 8-9) does not breach Paragraph 19 or render it inaccurate at the time made.") with JA796-797, ¶¶ 7-9 ("The SPLA applies to future Affiliates by the definition in [SPLA] Paragraph 3 . . . .").

HII Inc. and HBAS GmbH have never disputed that they make and sell "electronic control units for automotive telematics systems" since their acquisition by Samsung. Or that since their acquisition defendants and Samsung have collaborated to make and sell such systems. Nor could they. As evidenced by the C-HLA, their business includes the making and selling of automotive telematics systems. Appx44 (Complaint), ¶¶ 82-112 ("BMW COMBOX" TCU), ¶¶ 115-120 ("BMW Headunit High Head Units" that incorporate the COMBOX), and ¶¶ 198-203 ("Harman Spark, Smart, and Telematics Application Gateway (TAG)" TCUs); Appx748 (Pls.' Summ. J Evid.), ¶¶ B.1.a – B.1.l., e.g., ¶¶ B.1.c. (". . . the Telematics Control Unit (TCU)."), B.1.d ("The [Samsung telematics] platform"), and B.1.g (". . . the world's first commercialized 5G TCU (Telematics Control Unit).").

Nor could defendants claim their TCUs are SPLA Second Licensed Products, which are restricted to either a "mobile phone handset" or "handheld mobile

terminal," and furthermore, one that is "made, branded, sold, or distributed by or for Samsung." Harman products are not licensed under the Second Licensed Patents. Appx698, ¶ 6(b) ("[Cellport] grants to Samsung Electronics Co., Ltd. and Samsung Telecommunications America, LLC, *and each of their Affiliates* . . . made, branded, sold, or distributed by or for *Samsung* (the "Second Licensed Products") (emphasis added).); Appx802, ¶ 7 ("HIII and HBAS Germany are not carriers, importers, retailers, distributors, or end users for Samsung in relation to the "BMW COMBOX," the "BMW HUH head units," the "uConnect head units," the "SHIELD software products," or the "Ignite Service Delivery Platform software and services products." Samsung is not involved in those products other than in its role as the parent company of Harman.").

Samsung's SPLA paragraph 19 representation is applicable by definition to "existing" and "future" Affiliates. As are the SPLA's license terms for the Second Licensed Patents. The representation is an explicit agreement of Samsung that its future Affiliates will not "make or sell electronic control units for automotive telematics systems" post-settlement. Even accepting the district court's interpretation of Samsung's representation, the representation implies a duty of good faith and fair dealing not to make or sell unlicensed products, and in particular the described electronic control units, post-settlement. Samsung explicitly accepted the restricted product and use terms of the SPLA's license and Cellport and Samsung

representations for the Second Licensed Patents and the rights that those terms reserved exclusively to Cellport post-settlement. And when Samsung acquired defendants, Samsung, and defendants, breached Samsung's paragraph 19 representation as well as their duty of good faith and fair dealing. *See Kenall Mfg. Co.*, 338 F. Supp. 3d at 846, 848-851 ("[A] provision restricts license scope when it reserves for the licensor the right to make a certain category of sales, thereby obligating the licensee *not* to make such sales."); *Eli Lilly & Co.*, 408 F. Supp. 2d at 690-91 ("[Lilly's work] was outside the scope of the agreed Field . . . and violated [the] License Agreement."); *Shaw and Polymers, Inc. v. E. I. Dupont*, 126 Vt. 206, 209-10 (Vt. 1966) ("Following the principle adopted in Justice Holmes' opinion in *Manners v. Mancuso*, 1920, 252 U.S. 317, 64 L.Ed. 590 and *Harper Bros. v. Klaw* (D.C.) 232 Fed. 609, 613, we think there is corollary application in a restricted license of patent rights to the effect that the licensee will not invade the ungranted part of the patent to the detriment of the estate reserved by the licensor."). *See also Lee v. Grandcor Medical Systems, Inc.,* 702 F. Supp. 252 (D. Colo. 1988) ("A third-party beneficiary must accept a contract's burdens along with its benefits."); *City of Golden*, 138 P.3d at 292 ("Under Colorado law, every contract contains an implied duty of good faith and fair dealing . . . A violation of the duty of good faith and fair dealing gives rise to a claim for breach of contract."); *Amoco*, 908 P.2d at 498 (same).

The result of that breach is that the SPLA, including its release, became inapplicable and unenforceable by HII Inc. and HBAS GmbH as a defense to Cellport's Complaint in the district court litigation. *See* Restatement (Second) of Contracts § 237 (Am. Law Inst. 1981); *Ingham Reg'l Med. Ctr., Mclaren N. Mich., Bay Reg'l Med. Ctr., Lakewood Health Sys., Gifford Med. Ctr., Inc. v. United States*, 874 F.3d 1341, 1346-47 (Fed. Cir. 2017) ("We find that the Release does not bar Ingham's breach of contract claim . . . [H]ere, the release the Government relies on is in the very same contract it is accused of breaching."); *Sun Studs, Inc. v. ATA Equip. Leasing, Inc.*, 872 F.2d 978, 992-93 (Fed. Cir. 1989) ("The court erred in holding that performance by [plaintiff] was required after, and despite, the breach by [defendant]. . . .").

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

The district court's dismissal of the claims of Plaintiffs' Complaint asserted against defendant HBAS GmbH for lack of personal jurisdiction should be reversed.

The district court's dismissal of the claims of Plaintiffs' Complaint asserted against defendant HII Inc. as barred by the release of SPLA paragraph 7(b) should also be reversed.

Dated: June 22, 2026 Respectfully submitted,

*/s/ Michael J Lennon*
Michael J. Lennon
Pablo D. Hendler

POTOMAC LAW GROUP, PLLC
1177 Avenue of the Americas, 5th Floor
New York, NY 10036
(646) 519-7477
mlennonpotomaclaw.com
phendler@potomaclaw.com

*Attorneys for Plaintiffs-Appellants Cellport Systems Inc., CyberCar, Inc*.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

1. This motion complies with the type volume limitation of Federal Rule of Appellate Procedure 32(a) or Federal Circuit Rule 28.1. This brief contains 10,010 words excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Circuit Rule 28.1 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14 point font.

Dated: July 15, 2026

*/s/ Michael J. Lennon*
Michael J. Lennon

**ADDENDUM**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| CELLPORT SYSTEMS, INC., ET AL. | § | |
| | § | |
| v. | § | CIVIL NO. 4:22-CV-808-SDJ |
| | § | |
| HARMAN INTERNATIONAL INDUSTRIES INC., ET AL. | § | |
| | § | |

# ORDER

Before the Court is Defendants Harman International Industries Inc. ("Harman") and Harman Becker Automotive Systems GmbH's ("HBAS") motion to dismiss. (Dkt. #23). Having reviewed the parties' briefs, the Court **ORDERS** that Defendants' motion to dismiss be converted to a motion for summary judgment.

## I. Background

Plaintiffs Cellport Systems, Inc. and CyberCar, Inc.[1] (collectively, "Cellport") bring this suit against Defendants for both state law claims and patent infringement claims. These claims all stem from Defendants' alleged use of Cellport's patented intellectual property.

In March of 2017, Defendants were acquired by non-party Samsung Electronics Company Ltd. ("Samsung"). Prior to this acquisition, Samsung and Cellport entered into a Settlement and Patent License Agreement ("SPLA"). The SPLA contains, inter alia, a license agreement, a release from liability, and a covenant not to sue. Importantly, the SPLA applies not only to Samsung, but also to its "affiliates," defined as "any person, corporation, partnership, trust or other entity

[1] CyberCar is a wholly owned subsidiary of Cellport.

that, now or in the future, directly or indirectly, legally or beneficially, owns, is owned by, is under common ownership with or is under direct or indirect control of the Party[2] or the Party's owner or ultimate parent." (Dkt. #25-1 ¶ 3).

Defendants argue that Cellport's claims are barred by the SPLA and should therefore be dismissed. They also argue that the claims are barred by the applicable statutes of limitations and that the Court does not have personal jurisdiction over HBAS. Defendants move in the alternative to transfer the case to the District of Colorado.

Upon receipt of Defendants' motion to dismiss, the Court stayed the case's deadlines, reasoning that "the viability of the asserted patent infringement claims depends on the applicability of [the SPLA] to this case." (Dkt. #28). The Court now considers Defendants' motion to dismiss.

## II. Intersection of Motion to Dismiss and Motion for Summary Judgment

To survive a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege facts sufficient to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In performing its analysis, the Court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiffs. *Id.* However, the Court's consideration is limited to the contents of the pleadings, which include the complaint and any document attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

[2] The term "party" includes Samsung.

Additionally, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *see also Meyers v. Textron, Inc.*, 540 F.App'x 408, 409 (5th Cir. 2013) (per curiam) ("[A] district court may take into account documents incorporated into the complaint by reference or integral to the claim." (citation omitted)).

In order to consider matters outside the pleadings, the motion to dismiss must be converted to a motion for summary judgment, in accordance with Federal Rule of Civil Procedure 12(d). *See Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004); *Broussard v. Energy Cranes L.L.C.*, No. CV 09-778, 2009 WL 10694588, at *2 (S.D. Tex. June 1, 2009). Conversion requires that "the parties [be] provided with reasonable notice and an opportunity to present argument opposing the judgment." *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 435 (5th Cir. 2000).

## III. Analysis

In their briefs, the parties contentiously debate whether the SPLA bars Cellport's suit. However, the Court is unable to consider the SPLA at this time.

As explained above, a court's review of a motion to dismiss is limited. Defendants contend that the SPLA may be considered part of the pleadings under the exception for documents attached to a motion to dismiss. "[F]or a document to be incorporated into the pleadings under this exception, it must (1) be attached to a defendant's motion to dismiss, (2) be referred to in the plaintiff's complaint, and (3) be central to the plaintiff's claims." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R.

645, 662 (N.D. Tex. 2011). Here, the first two elements are met, as Defendants attached the SPLA to their motion to dismiss and the complaint refers to the SPLA, albeit obliquely. The third element, however, is not met, and thus the Court cannot consider the SPLA on this motion to dismiss.

Although the Fifth Circuit has not articulated a test for determining whether a document is "central" to a claim, district courts within the circuit have held that this element is met when the document is "necessary to establish an element of one of the plaintiff's claims." *Id.*; *see also 306 Sec. Partners, LLC v. Hammond*, No. 3:21-CV-3004, 2022 WL 3159274, at *2–*3 (N.D. Tex. Aug. 8, 2022); *Dawes v. City of Dallas*, No. 3:17-CV-1424, 2020 WL 3603090, at *2 (N.D. Tex. July 2, 2020); *QSL Waco, Inc. v. Lube Holdings, Inc.*, No. 4:14CV591, 2017 WL 3405039, at *3 (E.D. Tex. July 10, 2017), *report and recommendation adopted*, 2017 WL 3394606 (E.D. Tex. Aug. 8, 2017).

Here, the SPLA is not necessary to establish any element of any of Cellport's claims. In fact, quite the opposite: the claims may fail because of it. *See Scanlan v. Tex. A&M Univ.* 343 F.3d 533, 537 (5th Cir. 2003) (finding that a district court erred by going outside of the complaint and considering evidence that was "much more central to the [defendant's] defenses"). Thus, the Court cannot consider the SPLA on this motion to dismiss.

Nonetheless, the Court finds it proper to consider the SPLA at this early stage, as it appears that the viability of Cellport's claims depends on the applicability of the SPLA to this case. Thus, pursuant to Federal Rule of Civil Procedure 12(d), the Court

will convert Defendants' motion to dismiss to a motion for summary judgment, specifically on the issue of the applicability of the SPLA to this case.

### IV. CONCLUSION

It is therefore **ORDERED** that Defendants' motion to dismiss, (Dkt. #23), is hereby converted to a motion for summary judgment pursuant to Rule 12(d).

It is further **ORDERED** that the parties shall submit any additional summary judgment evidence concerning the SPLA's applicability and enforceability by no later than **January 12, 2024**. No additional briefing is permitted at this time.

The Court also notes that, upon the Court's ruling on the motion for summary judgment, Defendants may refile a motion to dismiss on non-SPLA grounds and may move to transfer.

**So ORDERED and SIGNED this 11th day of December, 2023.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| CELLPORT SYSTEMS, INC., ET AL. | § | |
| | § | |
| v. | § | CIVIL NO. 4:22-CV-808-SDJ |
| | § | |
| HARMAN INTERNATIONAL INDUSTRIES INC., ET AL. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants Harman International Industries Inc. (Harman) and Harman Becker Automotive Systems GmbH's (HBAS) motion to dismiss. (Dkt. #23). Central to Defendants' motion is the Settlement and Patent License Agreement (SPLA) between Plaintiff Cellport Systems, Inc. (Cellport) and non-parties Samsung Electronics Company, Ltd. (SEC)—Defendants' parent company—and Samsung Telecommunications America, LLC (collectively, Samsung). (Dkt. #25-1). However, because the Court's review of a motion to dismiss is limited to the contents of the pleadings—which did not include the SPLA—the Court converted the motion to dismiss to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d). As required by Rule 12(d), the Court gave the parties a reasonable opportunity to present all material pertinent to the motion. (Dkt. #40 at 5). Having considered the motion and the briefing, the supplemental evidence, and the applicable law, the Court concludes that (1) it lacks personal jurisdiction over HBAS and (2) Harman is entitled to summary judgment because the SPLA bars Plaintiffs' claims.

## I. Background

Cellport is a wireless communications and telematics systems developer responsible for the development of the "automotive industry's first universal, hands-free, in-vehicle wireless voice and data communications and telematics system." (Dkt. #1 ¶ 18–19).[1] Cellport is the owner of several patents, including those numbered 6,430,164 ('164 patent); 7,366,892 ('892 patent); 6,341,218 ('218 patent); and 6,377,825 ('825 patent).

Harman and its wholly owned subsidiary, HBAS, manufacture automotive communications, telematics, and infotainment systems. In 2004, HBAS—a German corporation with a principal place of business in Germany—entered into a licensing agreement with Cellport (C-HLA), whereby Cellport granted HBAS and its affiliates licenses to use certain patents related to the technology described above. In March of 2017, Defendants were acquired by non-party SEC.

Cellport alleges that Defendants misused its intellectual property, thereby infringing its patents and violating the C-HLA. It asserts nine different counts against Defendants. Counts One through Four allege various state-law claims, including breach of contract, breach of the duty of good faith and fair dealing, tortious interference with contract, and unjust enrichment. Counts Five through Nine allege that Defendants infringed the '164, '892, '218, and '825 patents.

Defendants move to dismiss all claims, arguing that the SPLA—a 2013 settlement agreement between Samsung and Cellport—precludes Cellport's claims.

---

[1] Plaintiff CyberCar, Inc. is a wholly owned subsidiary of Cellport. The Court will refer to Cellport and CyberCar collectively as "Cellport" or "Plaintiffs."

(Dkt. #23). Defendants also assert that the Court does not have personal jurisdiction over HBAS. In the alternative to dismissal, Defendants request that the Court transfer the case to Colorado pursuant to the C-HLA's forum selection clause.

Because the Court found that the "viability of Cellport's claims depends on the applicability of the SPLA to this case," the Court converted Defendants' motion to dismiss to a motion for summary judgment pursuant to Rule 12(d). (Dkt. #40). The Court now considers whether (1) the Court has personal jurisdiction over HBAS and (2) whether Plaintiffs' claims are barred by the SPLA such that Defendants are entitled to summary judgment.

## II. Legal Standards

### A. Personal Jurisdiction

A party may move to dismiss an action for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). This defense is premised on the fact that the Court's jurisdiction over a defendant is constrained by due process. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). To pursue a lawsuit against a defendant, a plaintiff must establish that the defendant maintains adequate contacts with the forum state such that haling it to the State to defend itself would neither be "[un]reasonable" nor offend "traditional notions of fair play and substantial justice." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358, 141 S.Ct. 1017, 209 L.Ed.2d 225 (2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

Although the burden rests with the plaintiff to establish the core elements of personal jurisdiction, the plaintiff can satisfy that burden at the pleading stage by

simply presenting a prima facie case for jurisdiction. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). "Allegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by [a] defendant's affidavits." *Int'l Truck & Engine Corp. v. Quintana*, 259 F.Supp.2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282 n.13 (5th Cir. 1982)).

**B. Motion for Summary Judgment**

Because the Court converted Defendants' motion to dismiss to a motion for summary judgment pursuant to Rule 12(d), the summary judgment standard applies here. *See Allen v. Hays*, 812 F.App'x 185, 189 (5th Cir. 2020) (explaining that the Rule 56 summary judgment standard applies to conversions to Rule 12(b)(6) motions). "Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd ex rel. Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). If the moving party presents a motion for summary judgment that is properly supported by evidence, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

Because Federal Rule of Civil Procedure 56 requires that there be no "genuine issue of *material* fact" to succeed on a motion for summary judgment, "the mere existence of *some* alleged factual dispute" is insufficient to defeat a motion for

summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (first emphasis omitted). A fact is "material" when, under the relevant substantive law, its resolution might govern the outcome of the suit. *Id.* at 248. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 477 (citing *Anderson*, 477 U.S. at 248).

Courts consider the evidence in the light most favorable to the nonmovant, but the nonmovant may not rely on mere allegations in the pleading; rather, the nonmovant must respond to the motion for summary judgment by providing particular facts showing that there is a genuine issue for trial. *Int'l Ass'n of Machinists & Aerospace Workers v. Compania Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir. 2000). If, when considering the entire record, no rational jury could find for the nonmoving party, the movant is entitled to summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

## III. Discussion

Defendants assert that the SPLA precludes all claims against them and that the Court does not have personal jurisdiction over HBAS. Because "[p]ersonal jurisdiction . . . is an essential element of the jurisdiction of [the Court], without which the [C]ourt is powerless to proceed to an adjudication," the Court must determine whether it has personal jurisdiction over HBAS before deciding whether the SPLA bars Cellport's claims. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 231–32 (5th Cir. 2012) (cleaned up).

**A. The Court Lacks Personal Jurisdiction Over HBAS.**

Personal jurisdiction over a defendant can be established under two general theories—either general jurisdiction, which refers to the Court's "all-purpose" jurisdiction over defendants that are essentially at home in the forum state; or specific jurisdiction, which refers to "case-linked" jurisdiction arising from a defendant's activities directed toward the forum state. The Court has neither general nor specific jurisdiction over HBAS.

General jurisdiction exists when the defendant's contacts with the forum state are "so continuous and systematic as to render [the defendant] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014) (cleaned up). In general, "a corporation's 'home' falls in two paradigmatic places: (1) the state of incorporation and (2) the state where it has its principal place of business." *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 337 (5th Cir. 2020).

Cellport acknowledges that HBAS is a German corporation with a principal place of business in Germany. (Dkt. #1 ¶ 8). Nonetheless, Cellport asserts that this Court has general jurisdiction over HBAS because HBAS purportedly has conducted "substantial business in the State of Texas and this judicial district, including regularly doing or soliciting business in Texas, and/or engaging in persistent conduct and/or deriving substantial revenue from goods and services provided to customers in Texas." (Dkt. #1 ¶ 15). Because Cellport's broad allegation "merely amount[s] to [a] vague and overgeneralized assertion[] of contacts that give[s] no indication as to the extent, duration or frequency of [HBAS's] contacts," the Court does not have

general personal jurisdiction over HBAS. *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 102 (5th Cir. 2018) (cleaned up).

"Specific jurisdiction arises when the defendant's contacts with the forum 'arise from, or are directly related to, the cause of action.'" *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002) (citation omitted). The Court evaluates specific jurisdiction using a "three-step" procedure. *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021). First, the plaintiff must demonstrate that the defendant has minimum contacts with the forum state—meaning that the defendant purposefully directed its activities at the forum state and availed itself of the privilege of doing business in the State. *Id.* Second, the plaintiff must demonstrate that the causes of action asserted against the defendant arose from the defendant's contacts with the forum state. *Id.* And third, after the plaintiff establishes the first two requirements, the burden then shifts to the defendant to prove that maintaining a lawsuit in the forum state would be either "unfair" or "unreasonable." *Id.*

To establish minimum contacts, Cellport must show that HBAS "purposefully availed [itself] of the benefits and protections of [Texas] such that [it] should reasonably anticipate being haled into court there." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (cleaned up). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* at 193–94 (quoting *Burger King Corp.*, 471 U.S. at 475).

Cellport hinges its minimum contacts argument on the "stream of commerce" theory. "That doctrine recognizes that a defendant may purposely avail itself of the protection of a state's laws—and thereby will subject itself to personal jurisdiction—'by sending its goods rather than its agents' into the forum." *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 778 (5th Cir. 2018) (quoting *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011)). To succeed under this theory, a plaintiff "need only show that [the defendant] delivered the product that injured [it] 'into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state.'" *Id.* at 779 (quoting *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013)); *see also Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006) ("This court has consistently held that 'mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce.'" (citation omitted)).

Cellport's theory of specific jurisdiction over HBAS fails. In its complaint, Cellport identifies a number of products that it alleges have made their way to Texas, which it argues demonstrates the "offering and sale of Harman products by . . . HBAS in the United States." (Dkt. #34 at 30). However, HBAS's declarant, Christian Kolb, confirms that "[HBAS] has not conducted business in Texas, and has not solicited business in Texas, or derived revenue from products provided in Texas," and that it has not "designed, manufactured, sold, or offered for sale any accused product in

Texas or done any business relevant to the Complaint allegations in Texas." (Dkt. #23-1 ¶ 4). Kolb further attests that HBAS has not "transferred or shipped [the accused products] in or to Texas[,] [n]or has [HBAS] sold any of these products to any entity located in the United States or shipped any of these products to any customer location in the United States." (Dkt. #23-1 ¶ 6). Kolb also states that HBAS has not performed any of the alleged misconduct in Texas. (Dkt. #23-1 ¶¶ 8–10).

As Cellport acknowledges, Kolb's declaration directly contradicts its allegations. "[W]hen unsubstantiated allegations are controverted by affidavit or declaration, the affidavit or declaration trumps the allegations." *In re Norplant Contraceptive Prods. Liab. Litig.*, 899 F.Supp. 315, 317 (E.D. Tex. 1995); *see also Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 831 (5th Cir. 1986) ("[T]he allegations of the complaint are taken as true except as controverted by the defendant's affidavits."). Cellport points to importation records and activities of HBAS's affiliates to show that Kolb's declaration is false and that HBAS has purposefully availed itself of Texas's benefits. However, as Defendants correctly note, the evidence Cellport proffers is unrelated to the accused products, unrelated to HBAS, and/or unrelated to Texas.

First, while one importation record shows that HBAS has imported some goods into Texas, it does not show that HBAS imported the accused products. (Dkt. #34-1). Thus, the second prong of the personal jurisdiction analysis is not met because these products are not the bases of Cellport's claims. *See Admar Int'l, Inc.*, 18 F.4th at 786.

Second, much of the remaining evidence Cellport proffers does not relate to HBAS specifically. For example, Cellport points to another importation record demonstrating that HBAS's affiliate—not HBAS itself—imported products to Texas. Indeed, throughout its briefing, Cellport heavily relies on the fact that entities associated with HBAS placed the accused products into the stream of commerce. (Dkt. #34-2); *see* (Dkt. #39 at 12) ("HBAS has placed its accused products in the stream of commerce, *through its affiliates*, including [Harman], and the distribution systems of *third parties*, and those products, while flowing down the commercial stream, have ended up in Texas, the location of [Harman], its parent company and American affiliate." (emphasis added)).

The problem with haling HBAS into court in Texas based on the alleged actions of its parent company, Harman, or any other affiliate is that, "[g]enerally, 'the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated.'" *Diece-Lisa Indus., Inc. v. Disney Enters., Inc.*, 943 F.3d 239, 251 (5th Cir. 2019) (quoting *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004)). As the Fifth Circuit has explained, this "presumption of institutional independence" can be rebutted "by 'clear evidence,' which requires a showing of 'something beyond' the mere existence of a corporate relationship between a resident and nonresident entity." *Id*. (quoting *Freudensprung*, 379 F.3d at 346).

Cellport does not even attempt to make such a showing. It fails to allege any facts demonstrating an alter-ego relationship between HBAS and Harman or any other affiliate. Instead, this case aligns with cases in which courts have found a "passive parent-subsidiary relationship" that is "insufficient to support jurisdiction." *In re DePuy Orthopaedics*, 888 F.3d at 780; *see also Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 339 (5th Cir. 1999) (observing that "the mere fact that a corporate relationship exists is not sufficient to warrant the assertion of jurisdiction over a related corporate entity" and finding that plaintiff had "failed to carry the burden of establishing a prima facie showing of sufficient control to establish an alter-ego or agency relationship" between the entities). Thus, the fact that Harman and other HBAS affiliates import products or have other ties to Texas is insufficient to impute personal jurisdiction over HBAS.

In sum, the Court finds that Cellport has failed to offer sufficient evidence to contradict Kolb's declaration, and thus his declaration is accepted as true. Unable to show that HBAS placed accused products in the stream of commerce knowing they would end up in Texas, Cellport relies on the activities of HBAS's affiliates. But, as explained above, a mere affiliation with a corporation that has interacted with Texas is insufficient to establish that the Court has personal jurisdiction. Therefore, the Court finds that it does not have personal jurisdiction over HBAS.[2]

---

[2] Cellport also argues that HBAS's interactions with the Federal Communications Commission (FCC) regarding the approval of its products and the fact that vehicles that use "Harman products" are distributed "throughout the United States, including Texas," establish personal jurisdiction over HBAS. (Dkt. #39 at 12–13). Both arguments fail. First, HBAS's communications with the FCC have nothing to do with Texas. This argument is an irrelevant tributary to Cellport's flawed stream-of-commerce theory. Second, the exhibits

**B. The SPLA Precludes Plaintiffs' Claims.**

Defendants also argue that the release in the SPLA bars Cellport's claims against them. Since the Court determined that it does not have personal jurisdiction over HBAS—and thus has no power to adjudicate the merits of Cellport's claims against it—the Court will only consider whether the SPLA precludes Cellport's claims against Harman.

Before considering the language of the instrument, the Court must first determine which state's laws apply. The SPLA designates Colorado as the choice-of-law state. (Dkt. #25-1 ¶ 15). "Where parties have contractually agreed to a choice-of-law provision, Texas choice-of-law rules favor enforcement of these provisions, unless the provision violates a fundamental public policy of Texas." *See Mission Specialty Pharmacy, LLC v. OptumRx, Inc.*, 154 F.Supp.3d 453, 458 (W.D. Tex. 2015) (cleaned up). The Court finds that the choice-of-law provision here does not violate any fundamental Texas public policy. Thus, the Court will interpret the SPLA pursuant to Colorado law.

Under Colorado law, contract interpretation is a question of law for the Court. *French v. Centura Health Corp.*, 509 P.3d 443, 449 (Colo. 2022). As particularly

---

Cellport proffers to show that HBAS products are found in cars that might be sold in Texas refer to neither HBAS *nor* Texas. Instead, as Cellport acknowledges, these exhibits identify "Harman customers" and "Harman products." (Dkt. #39 at 12–13). But, as explained above, the Court cannot exercise jurisdiction over HBAS for the activities of third parties. *Carmona*, 924 F.3d at 193–94 (explaining that a defendant cannot be "haled into a jurisdiction" as a result of the "unilateral activity of another party or a third person"). Further, these exhibits do not controvert Kolb's attestation that HBAS "has not conducted business in Texas, and has not solicited business in Texas, or derived revenue from products provided in Texas," and that it has not "designed, manufactured, sold, or offered for sale any accused product in Texas or done any business relevant to the Complaint allegations in Texas." (Dkt. #23-1 ¶ 4).

relevant here, Colorado defines a release as "the relinquishment of a claim to the party against whom such claim was enforceable. . . . Once a claim is released, the release bars the injured party from seeking further recovery." *CMCB Enters., Inc. v. Ferguson*, 114 P.3d 90, 96 (Colo. App. 2005). And like other contracts, Colorado law requires courts to examine the parties' intent to determine the scope of a release. *See French*, 509 P.3d at 449 ("In interpreting a contract, our primary goal is to give effect to the parties' intent."); *CMCB Enters.*, 114 P.3d at 96 ("A court is to construe a release to effectuate the manifest intention of the parties."). "[I]ntent is primarily determined from the language of the instrument itself." *French*, 509 P.3d at 449. So long as the language is unambiguous, the contract is deemed to express the parties' intent and must be enforced according to its terms. *Id.*; *see also CMCB Enters.*, 114 P.3d at 96 ("[C]onstruction [of a release] rests on good sense and plain understanding of the words used."). "The mere fact that the parties disagree as to the proper interpretation of a contract does not itself establish an ambiguity in the contract." *French*, 509 P.3d at 449.

As an initial matter, the Court finds that the SPLA is unambiguous. Although the parties dispute whether the SPLA applies to Harman and whether Cellport's claims here are contemplated by its terms, neither party asserts that the terms are unclear. Therefore, the Court will interpret the SPLA according to its plain language. *Id.*

In relevant part, the release reads:

> Cellport, on behalf of itself and its Affiliates, for themselves and their successors and assigns, hereby irrevocably, fully, finally releases,

> forever discharges, and covenants not to sue [Samsung] and each of [its] Affiliates . . . from any and all claims, actions, causes of action, suits, damages, injuries, duties, rights, obligations, liabilities, adjustments, responsibilities, judgments, trespasses and demands (collectively), whatsoever, in law or in equity, whether known or unknown, suspected or unsuspected to exist, now existing or later acquired, which were made or could have been made or may be made in the future by Cellport relating to the Licensed Patents.

(Dkt. #25-1 ¶ 7(b)).

Recall that the SPLA went into effect in 2013—prior to SEC's acquisition of Defendants. However, the language here applies to both Samsung (including SEC) and Samsung's Affiliates—defined as "any person, corporation, partnership, trust or other entity that, now or in the future, directly or indirectly, legally or beneficially, owns, is owned by, is under common ownership with or is under direct or indirect control of the Party or the Party's owner or ultimate parent." (Dkt. #25-1 ¶ 3). "Party" includes either Samsung or Cellport. (Dkt. #25-1 at 2). Neither party disputes that Harman was acquired by SEC in 2017. Therefore, Harman is "owned" by SEC. And although Harman was acquired *after* the parties signed the SPLA, the agreement explicitly states that later-acquired corporations are "Affiliates" for purposes of the agreement. Thus, the SPLA applies to Harman. *See Oyster Optics, LLC v. Infinera Corp.*, 843 F.App'x. 298, 300 (Fed. Cir. 2021) (noting that the language "now or in future" in a settlement agreement made the timing of the subsidiary's acquisition immaterial).

Having found that the SPLA applies to Harman, the Court turns to the terms of the release. As Cellport correctly notes, "licenses of patent rights are generally interpreted as prospective, and releases for infringement as retroactive, absent clear

language demonstrating a contrary intent." (Dkt. #34 at 11) (citing *Oyster Optics*, 843 F.App'x at 302). However, the plain language here *does* demonstrate a contrary intent: the release states that it applies to "now existing or *later acquired*" claims, which "were made or could have been made or *may be made in the future*." (Dkt. #25-1 ¶ 7(b)) (emphasis added). By its terms, the release rejects the general rule and embraces a forward-looking discharge of liability. *Cf. Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1371 (Fed. Cir. 1999) ("The phrase 'may have' is necessarily future-oriented. In the context of the Settlement Agreement, it implies a *future possibility* of [the plaintiff] having a claim."); *see generally* (Dkt. #25-1 at 2) ("Samsung wishes to obtain a license and release for any and all past, present, and *future actions* of Samsung and its Affiliates . . . with respect to the [Licensed Patents] . . ., and Cellport is willing to grant such a license and release." (emphasis added)).

Next, the Court must determine whether the release covers Cellport's claims against Harman. Through the SPLA, Cellport released "any and all claims . . . whether known or unknown, suspected or unsuspected to exist, . . . relating to the Licensed Patents." (Dkt. #25-1 ¶ 7(b)). "Licensed Patents" means both "First Licensed Patents"[3] and "Second Licensed Patents." (Dkt. #25-1 ¶ 2). "Second Licensed Patents" include the '164 patent, the '892 patent, the '218 patent, and the '825 patent—the patents Harman allegedly infringed. (Dkt. #25-1 at 14); *see* (Dkt. #1 at 78–119). These claims certainly "relate to" the Licensed Patents, and thus they were released.

[3] First Licensed Patents are not in issue here.

Counts One through Four are premised on state law. In Count One, Cellport asserts that Harman breached the C-HLA, particularly by allegedly failing to comply with its obligation to pay royalties for Licensed Products made under the Licensed Patents, as those terms are used in the C-HLA. Count Two asserts a claim for breach of the duty of good faith and fair dealing against Harman, and is another claim focused on Harman's alleged "fail[ure] to pay the royalties specified in the [C-HLA] for all Licensed Products practicing the Licensed Patents" and for "using, without authorization, unlicensed Cellport Intellectual Property in Harman products." (Dkt. #1 ¶ 261). Count Three asserts a tortious-interference-with-contract claim premised on Harman's alleged obstruction of HBAS's compliance with the C-HLA. And Count Four asserts an unjust-enrichment claim arising from Harman's purported "unlicensed and unauthorized use and conversion of Cellport's Licensed Patents and Cellport Intellectual Property." (Dkt. #1 ¶ 271).

Harman argues that all of Cellport's state-law claims asserted in Counts One through Four are grounded in Harman's use of the Licensed Patents under the SPLA. (Dkt. #23 at 10 n.2); (Dkt. #38 at 5). In the C-HLA, Cellport granted HBAS and its affiliates a license "under the Licensed Patents" (listed in Schedule A of the document) to make certain Licensed Products in exchange for royalties. (Dkt. #1-2 ¶¶ 2.1, 3.1). The Licensed Patents to which the C-HLA refers are listed in the SPLA and contemplated in the release.[4] And it is Harman's alleged failure to comply with

[4] Schedule A of the C-HLA includes two European Patents that are not listed in the SPLA. Cellport does not allege that Harman breached its duties with respect to these patents.

its obligation to pay royalties and its alleged misuse of the Licensed Patents that underly all of Cellport's state-law claims. Thus, each of Cellport's state-law claims is grounded in Harman's purported breach of some duty related to the patents expressly covered in the SPLA's release.

Cellport does not dispute that its state-law claims directly relate to the patents listed in the SPLA. Instead, it argues that such relation does not matter here because the SPLA only covers claims for patent infringement and does not encompass its state-law claims. (Dkt. #34 at 12).[5] The plain language of the SPLA refutes Cellport's position. The release is not cabined to just claims of patent infringement, but instead covers "any and all claims . . . *relating to* the Licensed Patents." (Dkt. #25-1 ¶ 7(b)) (emphasis added). "Relate to" is a broad term meaning "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (quoting BLACK'S LAW DICTIONARY 1158 (5th ed.1979)). And Colorado courts have repeatedly interpreted contract terms like "relating" or "relate to" as encompassing all issues surrounding the underlying subject matter. *See, e.g.*, *City & Cnty. of Denver v. Dist. Ct.*, 939 P.2d 1353, 1366 (Colo. 1997) (giving broad definition to the phrase "relating to" in an arbitration agreement). The Court

[5] Cellport also argues that Harman's products at issue in this suit are not "Licensed Products" under the SPLA and thus are not released. However, the release itself makes no reference to Licensed *Products*—only to Licensed *Patents*. Whether an item is a Licensed Product is relevant to the license granted in the SPLA, but not to the release. For this same reason, Cellport's assertion that "[t]he only claims that are discharged and released by the SPLA are claims for . . . infringement by Samsung products as they were configured at the time of or prior to settlement," (Dkt. #34 at 13), also fails.

concludes that, under Colorado law, this wording embraces any claim—patent infringement or otherwise—that relates to the patents in issue. As explained above, the state-law claims are related to the patents.

Cellport also argues that the state-law claims are not released by the SPLA because they "relate to Harman products defined narratively in the C-HLA; they are not based on the 'infringement' of a claim of the Licensed Patents." (Dkt. #39 at 6). Again, however, the plain language of the release makes clear that it is not limited to infringement claims. Thus, it is immaterial whether the state-law claims are based on the "infringement" of a Licensed Patent. It is enough that the claims are related to the patents. Cellport does not dispute that they are.

Based on the foregoing, the Court concludes that, according to the plain language of the SPLA, (1) Harman is an "Affiliate," such that it is covered by the SPLA; (2) the release applies to claims arising after the SPLA's inception; and (3) all of Cellport's claims relate to the Licensed Patents and were thus released.

Cellport argues that this reading is impermissible because, if true, it renders the SPLA's license provision meaningless. *See* (Dkt. #34 at 13–14). Not so. Cellport fails to recognize that licenses and releases serve two distinct purposes. *See Oyster Optics*, 843 F.App'x at 302–03 (rejecting a similar contention that the court's reading rendered "the release provision superfluous" because "the release is broader than the license and does other work in the agreement"). The SPLA's license provision grants Samsung and its Affiliates the explicit right to use the Licensed Patents to create Licensed Products. By contrast, the release bars suit for any claim relating to the

Licensed Patents, irrespective of whether Samsung or its Affiliates make Licensed Products. Thus, the release is broader than the license, reinforcing Samsung's and its Affiliates' abilities to use the Licensed Patents without any fear of future liability.[6]

Cellport essentially asks the Court to rewrite and narrow the release's explicit terms. As Colorado law recognizes, this Court has no such power. *See, e.g.*, *Fox v. I-10, Ltd.*, 957 P.2d 1018, 1022 (Colo. 1998) ("The court's duty is to interpret and enforce contracts as written between the parties, not to rewrite or restructure them."); *Yamin v. Levine*, 120 Colo. 35, 38, 206 P.2d 596, 597 (1949) ("If the contract clearly expresses the intentions of the parties, it must be construed as written . . ."); *Gertner v. Limon Nat'l Bank*, 82 Colo. 13, 41, 257 P. 247, 257 (1927) (stating that "[c]ourts do not make contracts for parties" and "do not open their doors to those that are suffering merely from their own bad bargains"). Consistent with these principles, the Court will enforce, rather than revise, the SPLA's plain language. *See CMCB Enters.*, 114 P.3d at 96 ("[C]onstruction [of a release] rests on good sense and plain understanding of the words used.").

In a final bid to evade the SPLA's unequivocal language, Cellport argues that Harman is equitably estopped from relying on the SPLA because it is in breach of what it contends is a material representation found in the SPLA. (Dkt. #34 at 14–15). Cellport references paragraph 19 of the SPLA, which provides as follows:

> Cellport represents that the products made, sold, used and/or imported by Samsung and its Affiliates, as they are presently (and have heretofore

---

[6] This litigation is a prime example of why Samsung may have wanted to include a forward-looking release in addition to obtaining a license. Whereas the release bars suit, a mere license would have required the Court to undertake an intensive factual analysis into the allegedly infringing items and the circumstances of their creation.

> been) configured, do not infringe any of the Second Licensed Patents, nor are they within the scope of any anticipated claim in any patent application, which Cellport owns or has the right to assignment. Samsung represents that Samsung and its Affiliates do not make or sell electronic control units for automotive telematic systems.

(Dkt. #25-1 ¶ 19).

Cellport argues that this language created an express warranty, which Harman has violated by making electronic control units (ECUs). It points to Colorado's Uniform Commercial Code (UCC), which states that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." COLO. REV. STAT. § 4-2-313(1)(a). According to Cellport, Harman's violation prevents it from using the SPLA to defend against Cellport's claims. This argument fails for at least three reasons.

*First*, Cellport's reliance on the UCC is misplaced. The UCC typically applies only to the sale of goods, and the specific provisions invoked by Cellport make clear that the general rule applies here. *See* COLO. REV. STAT. § 4-2-313(1)(a) (discussing express warranties created in the sale of goods); *id.* § 4-2-102(1) (confirming that, "[u]nless the context otherwise requires," Colorado's UCC provisions apply only to "transactions in goods"). The SPLA is not a "transaction[] in goods," it is a settlement and patent license agreement. The UCC has no application to such an agreement. *Lamle v. Mattel, Inc.*, 394 F.3d 1355, 1359 n.2 (Fed. Cir. 2005) (holding that UCC did not apply to patent license); *Novamedix, Ltd. v. NDM Acquisition Corp.*, 166 F.3d

1177, 1182–83 (Fed. Cir. 1999) (holding that UCC did not apply to settlement agreement from patent infringement suit).

*Second*, Harman has not violated paragraph 19 of the SPLA, Cellport has misread it. On its face, paragraph 19 reflects present-tense representations by Cellport itself, as well as Samsung, not representations as to future conduct. In paragraph 19, Cellport specifically represents that, at the time the SPLA was executed, Samsung and its Affiliates' products, "as they are presently (and have heretofore been) configured," "do not infringe" any of Cellport's referenced patents. (Dkt. #25-1 ¶ 19). Samsung, in turn, made a reciprocal, present-tense representation that "Samsung and its Affiliates do not make or sell electronic control units for automotive telematic systems." (Dkt. #25-1 ¶ 19). Even assuming *arguendo* that, years later, Harman has made ECUs, Harman (and Samsung, for that matter) did not represent in paragraph 19 of the SPLA that they would never make ECUs. Instead, Samsung merely confirmed that, when the SPLA went into effect in 2013, Samsung and its Affiliates did not make or sell such items. This is plainly not a future representation, which the parties demonstrated elsewhere they were fully capable of making—see, e.g., the release provision. Again, Cellport's argument attempts to change the SPLA's language, transforming Samsung's present-tense representation in paragraph 19 into a promise of future conduct. For the reasons already stated, the Court will not rewrite the SPLA's terms.

*Third*, the SPLA explicitly identifies mutual representations and warranties elsewhere, and that provision includes no prohibition on the making or selling of

ECUs. *See* (Dkt. #25-1 ¶ 13). For these reasons, the Court finds that Harman is not equitably estopped from relying on the SPLA.

* * *

In sum, the Court concludes that HBAS does not have the requisite minimum contacts with Texas for this Court to exercise jurisdiction over it. Therefore, the Court will dismiss all claims against HBAS. Cellport's remaining patent infringement and state-law claims against Harman were released by Cellport in the SPLA and are thus barred. *See CMCB Enters.*, 114 P.3d at 96 ("Once a claim is released, the release bars the injured party from seeking further recovery"); *see also CIC Prop. Owners v. Marsh USA Inc.*, 460 F.3d 670, 673 (5th Cir. 2006) (affirming the district court's grant of summary judgment after concluding that a release barred the claims at issue); *Smith v. Amedisys Inc.*, 298 F.3d 434, 445–46 (5th Cir. 2002) (same); *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 936–37 (5th Cir. 1994) (same); *Foremost Cnty. Mut. Ins. Co. v. Home Indem. Co.*, 897 F.2d 754, 761 n.11 (5th Cir. 1990) (noting that a release "eliminates any liability"); *Nat'l Am. Ins. Co. v. Melancon*, No. Civ.A. 98-1273, 1999 WL 600372, at *3 (E.D. La. Aug. 9, 1999) (noting that a release destroys a cause of action).[7] Therefore, the Court finds that Harman is entitled to summary judgment.

[7] Harman alternatively relies on the SPLA's covenant-not-to-sue provision. However, because the release fully resolves this case, the Court need not consider whether the covenant not to sue would also preclude Cellport's claims.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that it does not have personal jurisdiction over HBAS. The Court also finds that Harman is entitled to summary judgment.

Therefore, it is **ORDERED** that Defendants' Motion to Dismiss, (Dkt. #23), which the Court converted to a motion for summary judgment, (Dkt. #40), is **GRANTED**. Plaintiffs' claims against HBAS are **DISMISSED** for lack of personal jurisdiction. Plaintiffs' remaining claims against Harman are **DISMISSED with prejudice**.

**So ORDERED and SIGNED this 28th day of March, 2024.**



SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE