No. 26-01725

IN THE

# United States Court of Appeals for the Federal Circuit

CELLPORT SYSTEMS, INC. and
CYBERCAR, INC.

*Plaintiffs-Appellants,*

v.

HARMAN INTERNATIONAL INDUSTRIES INC. and
HARMAN BECKER AUTOMOTIVE SYSTEMS GMBH

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of Texas
Case No. 4:22-CV-00808 (District Judge Sean D. Jordan)

**BRIEF FOR DEFENDANTS-APPELLEES**

JESSICA L. ELLSWORTH
SEAN MAROTTA
STEVEN HIGGINS
HOGAN LOVELLS CADWALADER US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
jessica.ellsworth@hlc.com

*Counsel for Defendants-Appellees*

August 4, 2026

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 26-1725-GK

**Short Case Caption** Cellport Systems, Inc. v. Harman International Industries

**Filing Party/Entity** Harman International Industries Inc. and Harman Becker Automotive Systems GmbH

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/07/2026

Signature: /s/ Jessica L. Ellsworth

Name: Jessica L. Ellsworth

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Harman International Industries Inc. | | Samsung Electronics Co., Ltd. |
| Harman Becker Automotive Systems GmbH | | Harman Holding GmbH & Co. KG; Harman International Industries, Inc.; Samsung Electronics Co., Ltd. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Melissa R. Smith, Gilliam & Smith, LLP | Melody D. Hansen, BakerHostetler | |
| Derek M. Freitas, Frost Brown Todd LLP | | |
| James T. Underwood, Gillam & Smith, LLP | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

Page


CERTIFICATE OF INTEREST .......... i

TABLE OF AUTHORITIES .......... vi

STATEMENT OF RELATED CASES .......... 1

JURISDICTIONAL STATEMENT .......... 2

INTRODUCTION .......... 2

STATEMENT OF THE ISSUES .......... 4

STATEMENT OF THE CASE .......... 4

A. Harman Signs A License Agreement With Cellport .......... 4

B. Samsung Signs A Broad Settlement Agreement With Cellport And Then Purchases Harman .......... 5

C. Cellport Sues Harman .......... 8

SUMMARY OF ARGUMENT .......... 11

STANDARD OF REVIEW .......... 13

ARGUMENT .......... 14

I. THE DISTRICT COURT LACKED PERSONAL JURISDICTION OVER HBAS GERMANY .......... 14

A. The Texas courts lacked personal jurisdiction over HBAS Germany on Cellport’s claims .......... 15

B. HBAS Germany did not consent to personal jurisdiction in Texas .......... 24

II. THE SPLA’S RELEASE PRECLUDES PLAINTIFFS’ CLAIMS .......... 29

**TABLE OF CONTENTS—Continued**

Page

A. The plain text of the SPLA's release provision bars Cellport's claims ....... 29

B. Cellport's contrary arguments cannot overcome the text, structure, and purpose of the SPLA's release ....... 33

CONCLUSION ....... 45

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

Page(s)

**CASES:**

*Ad Two, Inc. v. City & Cnty. of Denver ex rel. Manager of Aviation*,
9 P.3d 373 (Colo. 2000) .......... 44

*AFTG-TG, LLC v. Nuvoton Tech. Corp.*,
689 F.3d 1358 (Fed. Cir. 2012) .......... 17-20

*Alexander Dawson, Inc. v. Sage Creek Canyon Co.*,
546 P.2d 969 (Colo. App. 1976) .......... 29

*AlexSam, Inc. v. Aetna, Inc.*,
119 F.4th 27 (Fed. Cir. 2024) .......... 41

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 13

*Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*,
127 F. App'x 493 (Fed. Cir. 2005) .......... 41

*Atlantic Marine Constr. Co. v. United States Dist. Court for the W. Dist. of Tex.*,
571 U.S. 49 (2013) .......... 28

*Atlantic Richfield Co. v. Christian*,
590 U.S. 1 (2020) .......... 40

*Atmel Corp. v. Vitesse Semiconductor Corp.*,
30 P.3d 789 (Colo. App. 2001) .......... 28

*Augustine Med., Inc. v. Progressive Dynamics, Inc.*,
194 F.3d 1367 (Fed. Cir. 1999) .......... 30, 41, 42

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
566 F.3d 1012 (Fed. Cir. 2009) .......... 14

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
552 F.3d 1324 (Fed. Cir. 2008) .......... 15, 16, 20

Page(s)

*Baseload Energy, Inc. v. Roberts*,
619 F.3d 1357 (Fed. Cir. 2010) ....................................................................41

*Bator v. Mines Dev., Inc.*,
513 P.2d 220 (Colo. App. 1973)....................................................................44

*Bellard v. Gautreaux*,
675 F.3d 454 (5th Cir. 2012) ........................................................................13

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
21 F.3d 1558 (Fed. Cir. 1994) ..................................................................17, 18

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) ........................................................................21

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,
*San Francisco Cnty.*,
582 U.S. 255 (2017)........................................................................................16

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)..........................................................................15, 16, 23

*Burkhart v. Burkhart*,
No. 21CA1657, 2023 WL 12057228
(Colo. App. Feb. 23, 2023) ............................................................................26

*Celgard, LLC v. SK Innovation Co.*,
792 F.3d 1373 (Fed. Cir. 2015) ..........................................................17, 23, 24

*Cellport Sys., Inc. v. Peiker Acustic GmbH & Co. KG*,
762 F.3d 1016 (10th Cir. 2014) ....................................................................38

*City & Cnty. of Denver v. District Ct. In & For City &*
*Cnty. of Denver*,
939 P.2d 1353 (Colo. 1997)............................................................................31

*CMCB Enters., Inc. v. Ferguson*,
114 P.3d 90 (Colo. App. 2005)......................................................................29

Page(s)

*Companion Prop. & Cas. Ins. Co. v. Palermo*,
723 F.3d 557 (5th Cir. 2013) ........ 15

*Cook Inc. v. Endologix, Inc.*,
No. 1:09-CV-01248, 2012 WL 2682749
(S.D. Ind. July 6, 2012) ........ 38

*Crocs, Inc. v. Effervescent, Inc.*,
119 F.4th 1 (Fed. Cir. 2024) ........ 13

*Cyprus Amax Minerals Co. v. Lexington Ins. Co.*,
74 P.3d 294 (Colo. 2003) ........ 36

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ........ 15

*Digitech Image Techs. LLC v. LG Elecs., Inc.*,
No. 1:15-CV-00034, 2015 WL 6697263 (D. Del. Nov. 3, 2015) ........ 38

*Diversified Dynamics Corp. v. Wagner Spray Tech Corp.*,
106 F. App'x 29 (Fed. Cir. 2004) ........ 38

*Duplan Corp. v. Deering Milliken, Inc.*,
444 F. Supp. 648 (D.S.C. 1977) ........ 41

*E-470 Pub. Highway Auth. v. Jagow*,
30 P.3d 798 (Colo. App. 2001) ........ 37

*Eli Lilly & Co. v. Emisphere Techs., Inc.*,
408 F. Supp. 2d 668 (S.D. Ind. 2006) ........ 39

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
955 F.3d 1317 (Fed. Cir. 2020) ........ 13

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) ........ 16, 17

*Fox v. I 10, Ltd.*,
957 P.2d 1018 (Colo. 1998) ........ 34, 35

## TABLE OF AUTHORITIES—Continued

Page(s)

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
582 F.3d 1288 (Fed. Cir. 2009) ....................................................................24

*Graham v. Igou*,
505 P.2d 19 (Colo. App. 1973)......................................................................35

*Hanson v. Denckla*,
357 U.S. 235 (1958)...............................................................................16, 20, 23

*Henry v. A.B. Dick Co.*,
224 U.S. 1 (1912).............................................................................................39

*Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*,
540 F.3d 1337 (Fed. Cir. 2008) ....................................................................41

*Impression Prods., Inc. v. Lexmark Int'l, Inc.*,
581 U.S. 360 (2017).........................................................................................41

*In re Chinese Manufactured Drywall Prods. Liab. Litig.*,
742 F.3d 576 (5th Cir. 2014) .........................................................................14

*In re K.M.S.*,
569 P.3d 1215 (Colo. 2025)...........................................................................40

*In re Qualcomm Litig.*,
No. 3:17-CV-00108, 2018 WL 6062352
(S.D. Cal. Nov. 20, 2018) .............................................................................38

*Inamed Corp. v. Kuzmak*,
249 F.3d 1356 (Fed. Cir. 2001) ....................................................................16

*Intel Corp. v. United States Int'l Trade Comm'n*,
946 F.2d 821 (Fed. Cir. 1991) .......................................................................41

*International Shoe Co. v. Washington*,
326 U.S. 310 (1945).........................................................................................16

*Kaiser v. Bowlen*,
455 F.3d 1197 (10th Cir. 2006) ...............................................................42, 43

## TABLE OF AUTHORITIES—Continued

Page(s)

*Keiland Constr., LLC v. Weeks Marine, Inc.*,
109 F.4th 406 (5th Cir. 2024) .......... 14

*Kenall Mfg. Co. v. Cooper Lighting, LLC*,
338 F. Supp. 3d 841 (N.D. Ill. 2018) .......... 39

*Klun v. Klun*,
442 P.3d 88 (Colo. 2019) .......... 31

*Kovac v. Farmers Ins. Exch.*,
401 P.3d 112 (Colo. 2017) .......... 29

*Macom Tech. Sols. Holdings, Inc. v. Infineon Techs. AG*,
881 F.3d 1323 (Fed. Cir. 2018) .......... 41

*Malone v. Stanley Black & Decker, Inc.*,
965 F.3d 499 (6th Cir. 2020) .......... 23

*Mapes v. City Council of City of Walsenburg*,
151 P.3d 574 (Colo. App. 2006) .......... 26

*McLaney v. El Paso Cnty.*,
828 F. Supp. 3d 1124 (D. Colo. 2026) .......... 27

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992) .......... 31

*Narco Avionics, Inc. v. Sportsman's Mkt., Inc.*,
792 F. Supp. 398 (E.D. Pa. 1992) .......... 20

*New World Int'l, Inc. v. Ford Glob. Techs., LLC*,
859 F.3d 1032 (Fed. Cir. 2017) .......... 15, 16

*Nova Grp./Tutor-Saliba v. United States*,
87 F.4th 1375 (Fed. Cir. 2023) .......... 13, 14

*Novosteel SA v. United States*,
284 F.3d 1261 (Fed. Cir. 2002) .......... 24

Page(s)

*Oyster Optics, LLC v. Infinera Corp.*,
843 F. App'x 298 (Fed. Cir. 2021) .....36

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
253 F.3d 865 (5th Cir. 2001) .....21

*Panduit Corp. v. HellermannTyton Corp.*,
451 F.3d 819 (Fed. Cir. 2006) .....14

*Pepcol Mfg. Co. v. Denver Union Corp.*,
687 P.2d 1310 (Colo. 1984) .....28, 37, 40

*Perez v. Pan Am. Life Ins. Co.*,
70 F.3d 1268 (5th Cir. 1995) .....25

*Peters Broad. Eng'g, Inc. v. 24 Capital, LLC*,
40 F.4th 432 (6th Cir. 2022) .....22

*Pugin v. Garland*,
599 U.S. 600 (2023) .....40

*Radio Sys. Corp. v. Accession, Inc.*,
638 F.3d 785 (Fed. Cir. 2011) .....20

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
148 F.3d 1355 (Fed. Cir. 1998) .....23

*Reporthost LLC v. Spectora, Inc.*,
No. 1:24-CV-01813, 2026 WL 2128463
(D. Colo. July 23, 2026) .....27

*Roberts v. Adams*,
47 P.3d 690 (Colo. App. 2001) .....26, 37

*Rodriguez Polanco v. Baltazar*,
No. 26-CV-02490, 2026 WL 2052069 (D. Colo. July 16, 2026) .....27

*Rogers v. Westerman Farm Co.*,
29 P.3d 887 (Colo. 2001) .....26

**TABLE OF AUTHORITIES—Continued**

Page(s)

*Schering Corp. v. Roussel-UCLAF SA*,
104 F.3d 341 (Fed. Cir. 1997) ....................................................................41

*Shaw v. Sargent Sch. Dist. No. RE-33-J ex rel. Bd. of Educ.*,
21 P.3d 446 (Colo. App. 2001)....................................................................26

*Silent Drive, Inc. v. Strong Indus., Inc.*,
326 F.3d 1194 (Fed. Cir. 2003) ..................................................................14

*SMB Advertising v. City of Boulder*,
591 P.3d 474 (Colo. App. 2026)..................................................................40

*SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*,
841 F.3d 827 (10th Cir. 2016) ....................................................................34

*Stauffer v. Brooks Bros. Grp.*,
758 F.3d 1314 (Fed. Cir. 2014) ..........................................................24, 25

*Sulca v. Allstate Ins. Co.*,
77 P.3d 897 (Colo. App. 2003)....................................................................37

*Sweats Fashions, Inc. v. Pannill Knitting Co.*,
833 F.2d 1560 (Fed. Cir. 1987) ..................................................................23

*Unova, Inc. v. Acer Inc.*,
363 F.3d 1278 (Fed. Cir. 2004) ..................................................................41

*USI Props. E., Inc. v. Simpson*,
938 P.2d 168 (Colo. 1997)..........................................................................34

*Valeant Pharms. N. Am. LLC v. Mylan Pharms. Inc.*,
978 F.3d 1374 (Fed. Cir. 2020) ..................................................................25

*Walden v. Fiore*,
571 U.S. 277 (2014)....................................................................................16

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980)....................................................................................17

## TABLE OF AUTHORITIES—Continued

Page(s)

**STATUTES:**

28 U.S.C. § 1295(a)(1) .......... 2

28 U.S.C. § 1331 .......... 2

28 U.S.C. § 1332 .......... 2

28 U.S.C. § 1338 .......... 2

28 U.S.C. § 1367 .......... 2

**RULES:**

Fed. R. Civ. P. 4(k)(1) .......... 15

Fed. R. Civ. P. 12(d) .......... 9

Fed. R. Civ. P. 56(a) .......... 13

Fed. R. Civ. P. 56(d) .......... 22

**OTHER AUTHORITIES:**

Black's Law Dictionary (5th ed. 1979) .......... 31

Black's Law Dictionary (12th ed. 2024) .......... 31

U.S. District Court, District of Colorado, *District Court Locations*, https://perma.cc/XT3W-V7FV (last visited Aug. 4, 2026) .......... 27

*Webster's Third New International Dictionary* (3d ed. 1986) .......... 31

## STATEMENT OF RELATED CASES

Defendants-Appellees Harman International Industries, Inc. and Harman Becker Automotive Systems GmbH are not aware of any case pending within the meaning of Rule 47.5 that will directly affect, or could be affected by, this Court's decision.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331, 1332, 1338, and 1367. The district court entered final judgment on March 28, 2024, Appx43, and Plaintiffs timely appealed on April 27, 2024, Appx1231. This Court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## INTRODUCTION

This appeal simply requires the Court to interpret a settlement agreement to mean exactly what it says. Cellport Systems, Inc. and CyberCar, Inc. (collectively, Cellport) in 2014 entered into a settlement agreement with Samsung Electronics Co. and Samsung Telecommunications America, LLC (collectively, Samsung). In the agreement, Cellport and Samsung sought to comprehensively and definitively resolve their disputes concerning patents that Cellport alleged Samsung had infringed. To that end, Cellport granted Samsung and its affiliates—past, present, and future—a license to certain Cellport patents, two covenants not to sue, and a broad release of all claims, including future claims, "relating to the Licensed Patents." Appx699 (¶ 7(b)).

Cellport then apparently had buyer's remorse. It sued two of Samsung's affiliates—Defendants-Appellees Harman International Industries, Inc. (Harman International) and Harman Becker Automotive Systems GmbH (HBAS Germany)—

Harman International's German subsidiary—for claims relating to the Licensed Patents.

Cellport's suit had an immediate threshold problem: There was no reason a Texas district court would have personal jurisdiction over HBAS Germany, a German company headquartered in Germany that did no business in Texas. HBAS Germany submitted evidence that it does not conduct or solicit business in Texas, derive revenue from products provided in Texas, or ship the accused products to Texas. All Cellport offered in response was reference to intermittent shipments into Texas lacking any connection to the products at issue and generalized communications with the Federal Communications Commission (FCC) in Washington, D.C. But due process requires far more than unrelated contacts, and the district court was right to dismiss HBAS Germany for lack of personal jurisdiction.

Cellport's merits arguments fared no better. Its claims relate directly to patents covered by its settlement agreement with Samsung and thus fall within the agreement's broad release. Cellport nonetheless asks this Court to rewrite its agreement by importing limitations the parties never included. Colorado law—which the parties agree applies here—does not allow Cellport to blue-pencil its agreements, as the district court correctly recognized.

This Court should affirm.

## STATEMENT OF THE ISSUES

1. Whether the district court correctly held as a matter of law that it lacked personal jurisdiction over HBAS Germany where HBAS Germany submitted evidence that it did not conduct business in Texas and Cellport identified no Texas contacts by HBAS Germany that its claims arose out of or related to.

2. Whether the district court correctly held as a matter of law that the Cellport-Samsung Settlement and Patent License Agreement bars Cellport's patent and state-law claims through its release of "any and all claims" against Samsung and its affiliates, including Harman, relating to the licensed patents.

## STATEMENT OF THE CASE

### A. Harman Signs A License Agreement With Cellport.

Harman International and its subsidiary, HBAS Germany, are market leaders in automotive, smart audio, and connected technology. Appx806. Cellport operates in the field of wireless communications and telematic systems. Appx48 (¶ 18). Cellport patented a "universal system for [hands-free] use of portable wireless telephones and other mobile devices in vehicular and other applications." Appx167.

In 2004, HBAS Germany—a German corporation with its headquarters in Karlsbad, Germany—entered a license agreement with Cellport: the Cellport-Harman License Agreement, which the parties have referred to as the C-HLA. Appx46 (¶ 8); Appx50 (¶ 25); Appx167. The C-HLA licensed HBAS Germany to

use Cellport's patents for automotive hands-free mobile phone technology. Appx171-172 (¶¶ 3.3-3.4); Appx185; Appx169-170 (¶ 2.1); Appx184.

The C-HLA also specified where disputes arising under the agreement must be filed. Appx180 (¶ 10.3). The C-HLA provided that "[a]ny lawsuit arising under this Agreement must be brought by Cellport or HBAS in the United States District Court for the District of Colorado" or, if that court "refuses jurisdiction," the "District Court for the Twelfth Judicial, Boulder Colorado District." *Id.* And both parties "irrevocably submit[ted] to the jurisdiction (subject matter and personal) and venue of the U.S. District Courts and the Boulder County Courts" for suits "arising in connection with" the C-HLA. *Id.*

Under the C-HLA, Harman supplied technology to Audi for its use of hands-free mobile phone adapters and paid Cellport royalties for those Audi adapters. Appx59-62 (¶¶ 74, 62-63, 77-78). Harman also supplies BMW with different automotive technology. *See* Appx112-114. But because Harman believes those products fall outside the scope of the patents licensed under the C-HLA, Harman has not paid royalties on them. *Cf.* Appx463-508 (court order rejecting similar claim).

### B. Samsung Signs A Broad Settlement Agreement With Cellport And Then Purchases Harman.

Separately, in 2014, Cellport and Samsung settled a patent-infringement suit that Cellport had brought involving technology Samsung used in its Samsung Galaxy S II and other cell phones; they entered into an agreement the parties have

called the Settlement and Patent License Agreement, or SPLA. Appx1048-1054; Appx694. But the SPLA did more than settle just that case. Samsung and Cellport also sought to "avoid further litigation" between them, and so they endeavored to head off "any and all past, present, and future actions." Appx694.

The SPLA did so in three ways. First, the SPLA granted Samsung and its affiliates a "license" to two groups of patents—"First Licensed Patents" and "Second Licensed Patents." Appx694-695. Samsung and its affiliates were entitled to use those patents to create "Licensed Products." Appx698 (¶ 6(b)). Samsung and its affiliates could use First Licensed Patents in "any product, service, or system," *id.* (¶ 6(a)), and they could use Second Licensed Patents in "mobile phone handset[s]" and "other handheld mobile terminal[s]" that are "primarily used to receive wireless voice and/or data communications" and related services, *id*. (¶ 6(b)). Cellport represented that the First Licensed Patents and Second Licensed Patents, which the SPLA refers to together as "Licensed Patents" were "all [the] patents and patent applications" that Cellport owns or controls. Appx695 (¶ 2).

Second, Cellport and Samsung mutually released claims against each other and their affiliates "relating to the Licensed Patents." Appx699 (¶¶ 7(a), 7(b)). The releases extend to "any and all claims, actions, causes of action, suits, damages, injuries, duties, rights, obligations, liabilities, adjustments, responsibilities, judgments, trespasses and demands (collectively), whatsoever, in law or in equity."

*Id.* And the releases apply regardless of whether a claim was "known or unknown" or whether it existed at the time of the agreement or was acquired "in the future." *Id.*; *see also id.* (¶ 7(d)).

Third and finally, Cellport agreed to two distinct covenants not to sue. Cellport agreed not to "bring" claims "against any person, Third Party, or entity . . . that would have the same or substantially similar effect" as suing "Samsung or any of its Affiliates under the Licensed Patents." Appx698 (¶ 6(c)). That covenant is designed to prevent Samsung from having to "indemnif[y]" other entities for their use of Licensed Products. *Id.* To that end, the covenant extends to claims against any "carrier, importer, retailer, distributor, or end user of Licensed Products" to the extent their "activities relate to the Licensed Products." *Id.*

Cellport "additionally covenant[ed]" not to "sue, maintain suit, fund or otherwise participate in any suit or claim against Samsung or any of its Affiliates or any carrier, importer, retailer, distributor, or end user of Licensed Products to the extent such carrier's, importer's, retailer's, distributor's, or end user's activities relate to the Licensed Products in connection with the Licensed Patents." Appx700 (¶ 8). Cellport extended that covenant to "future successor(s), assign(s), interest holder(s), licensee(s) or owner(s) of The Licensed Patents." *Id.* (¶ 9). Together, the three interrelated provisions—the license, the releases, and the covenants not to sue—served the agreement's objective of preventing "any and all past, present, and

future actions" between Samsung and its affiliates on the one hand and Cellport on the other. Appx694.

To that end, the SPLA defines "Affiliates" as "any" entity that "directly or indirectly, legally or beneficially, owns, is owned by, is under common ownership with or is under direct or indirect control" of a party or its parent company. Appx695 (¶ 3). The definition is also not temporally limited: Entities that became Samsung or Cellport affiliates "in the future" qualify as affiliates covered by the SPLA. *Id.*

Samsung purchased Harman in 2017, and Harman became a "wholly owned subsidiary of Samsung." Appx810; *see also* Appx860, 862. Thus, under the SPLA, Harman became Samsung's affiliate.

### C. Cellport Sues Harman.

In 2022, Cellport sued Harman in the Eastern District of Texas for breaching the C-HLA and for patent infringement. Appx164. Cellport's C-HLA claims center on automobile technology Harman supplied to BMW and for which Cellport believes it is entitled to royalties under the C-HLA. Cellport's patent-infringement claims, meanwhile, allege that other Harman automotive technology infringes four Cellport patents. Appx121, 128, 147, 154, 161.

Harman moved to dismiss. Appx15. Harman argued, among other things, that Cellport's claims were barred by the SPLA and that the district court did not have personal jurisdiction over HBAS Germany. Appx16. Harman alternatively

requested that the case be transferred to the District of Colorado under the C-HLA's forum-selection clause. *Id.*

Cellport responded that HBAS Germany was subject to personal jurisdiction in Texas because certain unidentified products had been imported into Texas, HBAS Germany had certain communications with the Federal Communications Commission, and because Harman International conducted business in Texas. Appx27-29. Later, in a sur-reply, Cellport also argued that HBAS Germany had consented to personal jurisdiction in Texas in the C-HLA. *See* Dist. Ct. ECF No. 39 at 9. On the merits, Cellport argued that the SPLA should not be construed to bar its claims because the release extended only to patent infringement claims involving the licensed products listed in the SPLA's separate license provision. Appx36-38.

The district court converted Harman's motion to dismiss into a summary-judgment motion under Federal Rule of Civil Procedure 12(d) and permitted the parties to submit evidence. Appx15. The court then granted Harman's motion, dismissing Cellport's claims against HBAS Germany for lack of personal jurisdiction and Cellport's claims against Harman International on the merits. Appx20-42.

The district court first concluded that it lacked personal jurisdiction over HBAS Germany. Appx25. As relevant here, the district court held it did not have specific personal jurisdiction over HBAS Germany because Cellport was "[u]nable

to show that HBAS placed accused products in the stream of commerce knowing they would end up in Texas."  Appx30.  In doing so, it addressed the arguments Cellport timely made in its response brief—that HBAS Germany was subject to personal jurisdiction in Texas because it shipped some unidentified products into the State and because its parent company did business in Texas.  *Compare* Dist. Ct. ECF No. 34 at 25-26 (initial opposition), *with* Appx27-30.  The court concluded that the unidentified shipments were "unrelated" to the case, Appx28, and that Cellport had alleged no more than a "passive parent-subsidiary relationship" which is "insufficient to support jurisdiction," Appx30 (citations omitted).  The court did not address Cellport's consent argument, presumably because Cellport first asserted it in its sur-reply.

On the merits, the district court held that Cellport's "patent infringement and state-law claims against Harman were released by Cellport in the SPLA and are thus barred."  Appx41 (citations omitted).  The court initially observed both Cellport's patent-infringement and C-HLA claims involved patents covered by the SPLA. Appx34-35.  The court concluded that those claims "relate[d] to the patents listed in the SPLA" and were therefore barred by the "unequivocal language" of the SPLA's release.  Appx36, 38.  And the court rejected Cellport's contrary reading as an improper attempt to "rewrite and narrow the release's explicit terms."  Appx38.

Cellport's appeal followed.  Appx1231.

## SUMMARY OF ARGUMENT

This case is about limits—constitutional limits on where a foreign company may be sued, and contractual limits on claims a party has released. Cellport asks this Court to disregard both. It seeks to litigate in Texas against a German company with no Texas contacts related to this dispute, and to revive claims it released in a settlement agreement designed to end patent-related litigation. The district court correctly refused.

*First*, the district court lacked personal jurisdiction over HBAS Germany. Specific personal jurisdiction requires more than a foreign defendant's attenuated or unrelated contacts with the forum; the defendant instead must purposefully direct relevant conduct toward the forum, and the plaintiff's claims must arise out of or relate to that conduct. But Cellport identified no accused products shipped to Texas, no continuous Texas distribution channel for those products, and no Texas conduct giving rise to its claims. Cellport's evidence showed, at most, isolated shipments of unidentified goods to the State and communications with the FCC. Those contacts do not establish purposeful availment, and they do not connect HBAS Germany to Texas on Cellport's claims.

Moreover, Cellport cannot impute the Texas contacts of affiliates of HBAS Germany to HBAS Germany itself without showing HBAS controls the affiliates or piercing the corporate veil. And Cellport's reliance on the forum-selection clause in

the C-HLA is waived. It also impermissibly tortures the clause's text to contend that in agreeing all suits between Cellport and Harman should be heard in Colorado, Harman somehow also consented to personal jurisdiction in any district court in the United States.

*Second*, Cellport's claims are barred by the SPLA's release. Courts enforce an unambiguous release according to its plain terms. The release here is broad: Cellport released Samsung and its affiliates from "any and all claims" that were made, could have been made, or may be made in the future "relating to the Licensed Patents." Harman is a Samsung affiliate, and Cellport's claims all relate to patents covered by the SPLA. Cellport's patent-infringement claims assert infringement of four Second Licensed Patents, while its C-HLA claims seek royalties for Harman's alleged use of certain Second Licensed Patents. Every claim Cellport asserts relates to the Licensed Patents, and so the release bars them.

Cellport's contrary arguments do not overcome the release's plain text. Cellport cannot narrow the plain language of the SPLA's release by importing limitations from the separate license provision in that agreement. Nor can Cellport avoid the release simply by labeling its C-HLA claims as contract-related. The C-HLA claims seek royalties for Harman's alleged use of patents covered by the SPLA. The C-HLA claims therefore still relate to the licensed patents, whatever label Cellport attaches to them. And finally, Cellport cannot equitably estop Harman from

invoking the release by asserting that Harman breached the SPLA. Cellport's theory depends on recasting Samsung's present-tense representation about what Samsung and its affiliates "do not make or sell" into a perpetual promise restricting future business activity. The representation says what was true when it was made; the representation does not impose a forward-looking covenant that would strip Harman of the release.

The Court should affirm.

## STANDARD OF REVIEW

This Court reviews a grant of summary judgment applying the law of the regional circuit. *Crocs, Inc. v. Effervescent, Inc.*, 119 F.4th 1, 4 (Fed. Cir. 2024). The Fifth Circuit reviews a "district court's ruling on a motion for summary judgment *de novo* and appl[ies] the same legal standards as the district court." *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1324-25 (Fed. Cir. 2020) (citing *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012)). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" after drawing all justifiable inferences in the nonmovant's favor. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The issues presented here—personal jurisdiction and contract interpretation—are questions of law reviewed *de novo*. *Nova Grp./Tutor-Saliba v. United States*, 87

F.4th 1375, 1379 (Fed. Cir. 2023) ("Contract interpretation is a question of law, which we review de novo."); *Keiland Constr., LLC v. Weeks Marine, Inc.*, 109 F.4th 406, 415 (5th Cir. 2024) (same); *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009) ("Personal jurisdiction is a question of law that we review de novo."); *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 584 (5th Cir. 2014) (same).

This Court applies Federal Circuit law to questions of personal jurisdiction on Cellport's patent claims and Fifth Circuit law to questions of personal jurisdiction on Cellport's non-patent claims. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003). Finally, the Court applies state law to contract-interpretation questions, and the SPLA here states that Colorado law governs its interpretation. *See Panduit Corp. v. HellermannTyton Corp.*, 451 F.3d 819, 825 (Fed. Cir. 2006); Appx702 (¶ 15).

## ARGUMENT

### I. THE DISTRICT COURT LACKED PERSONAL JURISDICTION OVER HBAS GERMANY.

The district court correctly dismissed HBAS Germany for lack of personal jurisdiction. Cellport identified no Texas conduct by HBAS Germany giving rise to, or relating to, Cellport's claims in this case. Cellport instead attempts to (1) manufacture personal jurisdiction from HBAS Germany's isolated Texas contacts, which are unrelated to the accused products; (2) impute the Texas-based

conduct of separate corporate entities to HBAS Germany; and (3) belatedly misread a forum-selection clause that points exclusively to Colorado courts. None of those efforts add up to personal jurisdiction over HBAS Germany in Texas.

### A. The Texas courts lacked personal jurisdiction over HBAS Germany on Cellport's claims.

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over" defendants. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citation omitted); *see* Fed. R. Civ. P. 4(k)(1). "Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum State's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008) (citation omitted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-476 (1985). But "[b]ecause Texas's long-arm statute extends to the limits of federal constitutional due process," here those two inquiries collapse into whether the exercise of jurisdiction over HBAS Germany would be consistent with due process. *New World Int'l, Inc. v. Ford Glob. Techs., LLC*, 859 F.3d 1032, 1037 (Fed. Cir. 2017) (quoting *Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013)).

Due process requires that a defendant "have certain minimum contacts" with the forum State "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*,

326 U.S. 310, 316 (1945) (internal quotation marks omitted); *New World*, 859 F.3d at 1037. As would be expected of a test that safeguards the defendant's rights, this inquiry's "primary focus . . . is the defendant's relationship to the forum State." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (citations omitted).

For specific personal jurisdiction, due process requires that the defendant take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). That is, the defendant must deliberately "reach[] out beyond" its home and into the forum State. *Walden v. Fiore*, 571 U.S. 277, 285 (2014); *see also Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001). That requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Avocent Huntsville*, 552 F.3d at 1329 (quoting *Burger King*, 471 U.S. at 475).

But purposeful availment is insufficient by itself; there also must be a link between the claims and the defendant's forum contacts. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358, 365 (2021). Put another way, the plaintiff's claims must "arise out of or relate to" the defendant's contacts with the forum State. *Id.* at 359; *Inamed*, 249 F.3d at 1360. As the Supreme Court has explained, "the

phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Ford Motor Co.*, 592 U.S. at 362.

Cellport contends that HBAS Germany is subject to specific personal jurisdiction in Texas under a "stream of commerce" theory.[1] Opening Br. 18-21. To establish specific personal jurisdiction using a stream of commerce theory, a plaintiff must show that a foreign corporation "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980)). While the precise "requirements of the stream-of-commerce theory of jurisdiction remain unsettled" in this Court, *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1381 (Fed. Cir. 2015), two principles are clear: The defendant's own shipments into the forum State must be more than "isolated" and "sporadic," and the products shipped into the forum State must—at a minimum—relate to the case. *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1365 (Fed. Cir. 2012); *see also Celgard*, 792 F.3d at 1382 (holding that personal jurisdiction was improper where there was "no evidence establishing that [the products at issue] actually enter[ed] the forum state").

---

[1] Cellport contended below that Texas could exercise general personal jurisdiction over HBAS Germany. Dist. Ct. ECF No. 34 at 23. The district court rejected that argument, Appx25-26, and Cellport abandons it on appeal.

This Court's decision in *AFTG-TG, LLC v. Nuvoton Technology Corporation* illustrates the point. The plaintiff there alleged that, "at most, one of the defendants made isolated shipments" into the forum State but could not show that its patent claims "ar[o]se out of" those shipments or that the forum was part of the defendant's "continuous, established distribution channel." *AFTG-TG*, 689 F.3d at 1365. This Court therefore determined that the case was not "a close call": "The paltry allegations in the complaint [could not] support the exercise of personal jurisdiction." *Id.*

In reaching that conclusion, *AFTG-TG* contrasted the facts before it with *Beverly Hills Fan Company*. The defendant in *Beverly Hills Fan* had extensive forum contacts directly tied to the plaintiff's claims. It was "undisputed that at least fifty-two [of the relevant products] were present" in the forum State. 21 F.3d at 1564. The plaintiff also submitted evidence that someone had "purchased one of the accused" products in the forum state. *Id.* at 1560. And the evidence showed that the defendant maintained an "ongoing," "intentional" "commercial relationship" with a company that operated "six retail outlets" in the forum, some of which sold the accused products. *Id.* at 1560, 1564. On those facts, this Court held that personal jurisdiction was proper.

The facts here are much closer to *AFTG-TG* than *Beverly Hills Fan*. Harman submitted a declaration from Christian Kolb, a senior director, confirming that

HBAS Germany "has not conducted business in Texas, and has not solicited business in Texas, or derived revenue from products provided in Texas," and that it has not "designed, manufactured, sold, or offered for sale any accused product in Texas or done any business relevant to the Complaint allegations in Texas." Appx437 (¶ 4). Kolb further swore that HBAS Germany has not "transferred or shipped [the accused products] in or to Texas[;] [n]or has [HBAS Germany] sold any of these products to any entity located in the United States or shipped any of these products to any customer location in the United States." Appx437 (¶ 6). Far from demonstrating the sort of "extensive" forum contacts present in *Beverly Hills Fan*, Kolb's declaration establishes that HBAS Germany has no Texas contacts connected to Cellport's claims at all. *See AFTG-TG*, 689 F.3d at 1365.

Cellport attempts to rebut Kolb's declaration with two categories of evidence: (1) importation records and (2) HBAS Germany's communications with the Federal Communications Commission. Opening Br. 19-21. Neither moves the needle.

Start with the importation records. Those records do not suggest that HBAS Germany imported the accused products into Texas. *See* Appx708-713. Nor do the import records show that the imported goods were intended to reach Texas consumers—as opposed to being transshipped elsewhere—or that they formed part of a "continuous, established distribution channel" that HBAS Germany has in Texas. *AFTG-TG*, 689 F.3d at 1365; *see also* Appx708-713. At most, the records

show "isolated shipments" of unidentified goods into Texas. *AFTG-TG*, 689 F.3d at 1365.

HBAS Germany's communications with the Federal Communications Commission likewise are insufficient to support personal jurisdiction in Texas. Appx716-743. They show only that HBAS Germany communicated with a federal regulatory agency in Washington, D.C. Those communications had nothing to do with Texas; indeed, the word "Texas" appears nowhere in them. Appx716-743. Nor do they suggest that HBAS Germany imported the accused products into Texas. Simply put, the FCC communications come nowhere close to establishing "some act by which [HBAS Germany] purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Hanson*, 357 U.S. at 253; *see also Narco Avionics, Inc. v. Sportsman's Mkt., Inc.*, 792 F. Supp. 398, 405 (E.D. Pa. 1992) (rejecting the proposition that communications with the FCC are "activities purposefully directed toward" the forum State). As this Court has explained, a defendant's communications with a federal agency or third party outside the forum State is not a contact with the forum State—even if they concern a party located in the forum State. *See Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 791-792 (Fed. Cir. 2011) (patent holder's communications with the Patent and Trademark Office in Virginia were not a contact with the declaratory-judgment plaintiff in Tennessee); *Avocent Huntsville*, 552 F.3d at 1334 n.3 (patent holder's

communications with Amazon.com in Washington were not a contact with the declaratory-judgment plaintiff in Alabama).

Cellport cannot bridge the gap through its conclusory allegations in its complaint. *See* Opening Br. 19-21. Cellport contends, for instance, that Harman International "offers its products and/or services and the products and services of HBAS [Germany], including those described in this Complaint, to customers and potential customers located in the State of Texas." *Id.* at 19 (quoting Appx47 (¶ 13)). Cellport likewise alleges that HBAS Germany has authorized sellers and customers and regularly does and solicits business in Texas. Appx47-48 (¶¶ 14-15).

But Cellport cannot establish personal jurisdiction by simply parroting the legal standard in its complaint; a district court does not have to "credit conclusory allegations" of personal jurisdiction, "even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001); *see also Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352-53 (Fed. Cir. 2021) (a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (citation omitted). Cellport's complaint, for instance, offers no locations in Texas where HBAS Germany or its affiliates allegedly sell the accused products. Nor does the complaint allege there are any authorized sellers or customers in the State, or even identify any specific instance in which the accused products have entered Texas. It simply asserts—without factual

support—that the accused products have entered Texas. Appx47 (¶ 13). That is not enough.

The allegations in Cellport's complaint are contradicted by Kolb's declaration. Focusing on a snippet, Cellport accuses Kolb of artfully omitting whether HBAS Germany uses intermediaries to ship the accused products into Texas. Opening Br. 20-21 (focusing on the words "HBAS Germany has not conducted business in Texas") (emphasis omitted) (quoting Appx437 (¶ 4)). But two paragraphs later, Kolb states that "HBAS Germany [has not] sold any of th[o]se products to any entity located in the United States." Appx437 (¶ 6). And one paragraph after that, Kolb explains that "HBAS Germany has not authorized any sellers or sales for th[o]se products in Texas." Appx438 (¶ 7).

Cellport's jurisdictional allegations are therefore not, as it contends (at 21), "undisputed"; they are directly contradicted by Kolb's declaration. And when allegations are controverted by a declaration, the declaration trumps the allegations—especially at summary judgment.[2] *See Peters Broad. Eng'g, Inc. v. 24 Capital, LLC*, 40 F.4th 432, 442 (6th Cir. 2022) (where defendants supported motion to dismiss for lack of personal jurisdiction with evidence, the "burden . . . shifts back

[2] Cellport never sought jurisdictional discovery, including never seeking to depose Kolb, nor did it invoke Federal Rule of Civil Procedure 56(d) to request that the district court delay ruling on summary judgment pending discovery. *See* Dist. Ct. ECF Nos. 41, 43 (Cellport submitting additional summary judgment evidence).

to [the plaintiff], who must 'by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction' ") (quoting *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020)); *see also Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed. Cir. 1987) ("Where a movant has supported its motion with affidavits or other evidence which, unopposed, would establish its right to judgment, the non-movant may not rest upon general denials in its pleadings or otherwise, but must proffer countering evidence sufficient to create a genuine factual dispute.").

More fundamentally, even if Cellport's allegations showed that HBAS Germany's affiliates sold the accused products in Texas, the "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Celgard*, 792 F.3d at 1380 (quoting *Hanson*, 357 U.S. at 253-254); *see also Burger King*, 471 U.S. at 475 ("unilateral activity of another party or a third person" cannot constitute purposeful availment). This Court years ago rejected theories of personal jurisdiction that "would subject a defendant to nationwide personal jurisdiction if it decides to do business with a company that does business nationwide." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998).

For "the contacts of a third-party [to] be imputed to the defendant," a plaintiff must demonstrate either that "the defendant exercises control over the activities of

the third-party" or that the third-party is the defendant's "alter ego." *Celgard*, 792 F.3d at 1379 (citations omitted). Here, as the district court observed below, "Cellport does not even attempt to make such a showing." Appx30. Cellport identifies no facts or even allegations that HBAS Germany exercises control over Harman International—HBAS Germany's corporate parent—and its affiliates, and Cellport does not contend that Harman International and its affiliates are HBAS Germany's alter ego. This Court should therefore, like the district court, decline to "impute personal jurisdiction over HBAS" Germany based on Harman International and its affiliates' Texas activities. Appx30.

### B. HBAS Germany did not consent to personal jurisdiction in Texas.

Cellport's reliance on the C-HLA forum-selection clause (at 21-23) fares no better. Cellport appears to contend that, by agreeing that claims arising under the C-HLA must be brought in Colorado, HBAS Germany somehow consented to personal jurisdiction in every federal district court. Opening Br. 21-23.

For starters, Cellport's argument is waived. Arguments "not properly raised before the district court are waived on appeal." *Stauffer v. Brooks Bros. Grp.*, 758 F.3d 1314, 1322 (Fed. Cir. 2014); *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1295-96 (Fed. Cir. 2009). That includes arguments raised for the first time in a district court reply brief. *Stauffer*, 758 F.3d at 1322; *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002).

Cellport here waited until its sur-reply on Harman's motion to dismiss to argue that HBAS Germany consented in the C-HLA to personal jurisdiction in the Eastern District of Texas. Cellport's initial opposition said nothing about consent to personal jurisdiction. *Compare* Dist. Ct. ECF No. 39 at 9 (sur-reply), *with* Dist. Ct. ECF No. 34 at 23-27 (initial opposition). Cellport's consent argument is therefore waived; it cannot sandbag HBAS Germany with a brand-new theory of personal jurisdiction. *See Stauffer*, 758 F.3d at 1322.

Cellport cites a portion of its response brief to Harman's motion to dismiss to try to show preservation. *See* Opening Br. 23 (citing Dist. Ct. ECF No. 34 at 28-29). But that section argued that *venue*, not personal jurisdiction, was proper in Texas under the C-HLA. *See* Dist. Ct. ECF No. 34 at 28-29. Venue and personal jurisdiction are not the same. *Valeant Pharms. N. Am. LLC v. Mylan Pharms. Inc.*, 978 F.3d 1374, 1384 (Fed. Cir. 2020) ("[W]e would be remiss to treat venue and personal jurisdiction as the same inquiry."); *Perez v. Pan Am. Life Ins. Co.*, 70 F.3d 1268 (5th Cir. 1995) (per curiam) ("[T]he question of personal jurisdiction has nothing to do with venue.") (citation omitted). And in any event, Cellport nowhere in that section contended that HBAS Germany waived or otherwise consented to jurisdiction in the Eastern District of Texas.

Cellport's consent argument also fails on the merits. As Cellport recognizes (at 24-25), contract "language should be construed as a whole, and specific phrases

or terms should not be interpreted in isolation." *Rogers v. Westerman Farm Co.*, 29 P.3d 887, 898 (Colo. 2001) (collecting cases), *as modified on denial of reh'g* (Aug. 27, 2001). Courts therefore "should seek to give effect to all provisions so that none will be rendered meaningless." *Mapes v. City Council of City of Walsenburg*, 151 P.3d 574, 577 (Colo. App. 2006) (citing *Roberts v. Adams*, 47 P.3d 690, 694 (Colo. App. 2001)). And courts should not "pick and choose certain isolated phrases out of the Agreement to piece together an awkward meaning, one which is ill-fitted to the plain text." *Burkhart v. Burkhart*, No. 21CA1657, 2023 WL 12057228, at *5 (Colo. App. Feb. 23, 2023); *see also Shaw v. Sargent Sch. Dist. No. RE-33-J ex rel. Bd. of Educ.*, 21 P.3d 446, 449 (Colo. App. 2001) ("We will not torture words and phrases to create an ambiguity. Rather, we will consider the language used in light of the whole document . . . to ensure a harmonious and sensible result.") (citations omitted).

Yet that is precisely what Cellport does. Cellport lifts the phrase "[t]he Parties irrevocably submit to the jurisdiction (subject matter and personal) and venue of the U.S. District Courts" out of context and construes it as broad-based consent to personal jurisdiction in every federal district court. Opening Br. 22 (quoting Appx180 ¶ 10.3). But the forum-selection clause, read as a whole, refutes Cellport's maximalist interpretation. The clause first defines venue for suits arising under the agreement: "Any lawsuit arising under this Agreement must be brought by Cellport

or HBAS in the United States District Court for the District of Colorado," but "if such court refuses jurisdiction the action shall be remanded to the District Court for the Twelfth Judicial, Boulder Colorado District." Appx180 (¶ 10.3). The forum-selection clause then seeks to ensure that the parties cannot escape a Colorado venue by arguing that personal jurisdiction, subject-matter jurisdiction, or venue is improper: "The Parties irrevocably submit to the jurisdiction (subject matter and personal) and venue of the U.S. District Courts and the Boulder County Courts for all actions, suits, or proceedings arising in connection with this Agreement, and waive any objection based on lack of subject matter or personal jurisdiction, or forum non-conveniens or any other objection to venue." *Id.*

Placing the phrase in its proper context, then, the forum-selection clause's reference to the "U.S. District Courts" most-naturally refers to district courts *in Colorado*.[3] After all, the sentence just before the one that Cellport puts all its weight on unambiguously required all suits to be brought in Colorado; it would be strange if the agreement's next sentence negated that requirement by requiring the parties to

---

[3] The District of Colorado sits in Denver, Colorado Springs, Grand Junction, and Durango. *See* U.S. District Court, District of Colorado, *District Court Locations*, https://perma.cc/XT3W-V7FV (last visited August 4, 2026). And decisions from the District of Colorado often refer to "courts in this district." *See, e.g.*, *Reporthost LLC v. Spectora, Inc.*, No. 1:24-CV-01813, 2026 WL 2128463, at *1 n.1 (D. Colo. July 23, 2026); *Rodriguez Polanco v. Baltazar*, No. 26-CV-02490, 2026 WL 2052069, at *1 (D. Colo. July 16, 2026) (same); *McLaney v. El Paso Cnty.*, 828 F. Supp. 3d 1124, 1139 (D. Colo. 2026) (same).

consent to personal jurisdiction in any district court in the United States and forbid the parties from arguing that venue was improper. That is particularly true because, in the federal courts, a forum-selection clause like the one in the C-HLA is enforced by a motion to transfer venue. *See Atlantic Marine Constr. Co. v. United States Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 60-61 (2013). Yet the consent provision requires the parties to "waive . . . any . . . objection to venue," Appx180 (¶ 10.3), meaning that—under Cellport's view—the C-HLA contains a forum-selection clause that neither Harman nor Cellport can enforce in federal court. Put differently, because the venue-selection provision unambiguously required Cellport to sue in Colorado, it makes little sense for the consent-to-jurisdiction-and-venue provision to allow Cellport to breach that obligation and sue in Texas instead.

Unsurprisingly, the Colorado courts refuse to read contracts in the bizarre way that Cellport proposes. Cellport's construction would make the forum-selection clause's designation of the Colorado courts pointless, contrary to Colorado's settled rule that a court interpreting a contract must "give effect to all provisions so that none will be rendered meaningless." *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313 (Colo. 1984). And Cellport's view makes the forum-selection clause inherently contradictory, contrary to Colorado courts' admonition that "a contract should never be interpreted to yield an absurd result." *Atmel Corp. v. Vitesse Semiconductor Corp.*, 30 P.3d 789, 793 (Colo. App. 2001), *abrogated on*

*other grounds by Ingold v. AIMCO/Bluffs, LLC Apartments*, 159 P.3d 116, 124 (Colo. 2007). This Court should decline to adopt Cellport's blinkered view and instead hold that the forum-selection clause's reference to U.S. District Courts speaks only to the Colorado district courts.[4]

## II. THE SPLA'S RELEASE PRECLUDES PLAINTIFFS' CLAIMS.

### A. The plain text of the SPLA's release provision bars Cellport's claims.

On the merits, Cellport's claims against Harman are barred by the SPLA's release of Samsung and its past, present, and future affiliates. "Under Colorado law, a settlement agreement is a contract and must generally be construed and enforced like any other contract." *Kovac v. Farmers Ins. Exch.*, 401 P.3d 112, 116 (Colo. 2017) (citation omitted). Colorado cases define a release as "the relinquishment of a claim to the party against whom such claim was enforceable," and make clear that "[o]nce a claim is released, the release bars the injured party from seeking further recovery." *CMCB Enters., Inc. v. Ferguson*, 114 P.3d 90, 96 (Colo. App. 2005).

Cellport no longer disputes that Harman is protected by the SPLA's release. *See* Opening Br. 37-38 (agreeing that Harman is a Samsung affiliate encompassed

---

[4] To the extent the reference to "U.S. District Court*s*" in the forum-selection clause could instead have used "U.S. District Court" to refer back to the U.S. District Court for the District of Colorado, it would amount at most to a scrivener's error that Colorado law directs be reformed to reflect the parties' agreement to a Colorado forum. *See, e.g.*, *Alexander Dawson, Inc. v. Sage Creek Canyon Co.*, 546 P.2d 969, 971 (Colo. App. 1976).

by the SPLA). Harman is Samsung's wholly owned subsidiary, and so it falls within the SPLA's definition of Affiliate—"any" entity that "directly or indirectly, legally or beneficially, owns, is owned by, is under common ownership with or is under direct or indirect control" of a party or its parent company, Appx695 (¶ 3)—and is protected by the release, Appx699 (¶ 7(b)) (release applies to Samsung "and each of [its] Affiliates").

The only question, then, is whether the SPLA's release bars the claims that Cellport asserts against Harman. The SPLA's text again guides the way. Under it, Cellport "releases . . . any and all claims, . . . which were made or could have been made or may be made in the future by Cellport relating to the Licensed Patents." Appx699 (¶ 7(b)). The release's temporal reach is broad, discharging Harman from liability both retrospectively and prospectively. As this Court has recognized, "[t]he phrase 'may have' is necessarily future-oriented." *Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1371 (Fed. Cir. 1999). In the settlement-agreement context, "it implies a future possibility of [the plaintiff] having a claim." *Id.* And it protects Samsung and its affiliates—including Harman—from claims that could have been brought at the time the SPLA was executed as well as any claims that Cellport might have in the future.

The release's substantive scope—involving all claims "relating to the Licensed Patents"—is equally broad. Appx699 (¶ 7(b)). "Licensed Patents" is a

defined term in the SPLA and "refer[s]" to "First Licensed Patents and Second Licensed Patents"—that is, all patents owned by Cellport. Appx695 (¶ 2). "Relating to," meanwhile, is not defined by the agreement, so the Court applies the "plain" meaning of that phrase. *Klun v. Klun*, 442 P.3d 88, 92 (Colo. 2019).

Colorado courts have interpreted "relating to" as "being broad rather than restrictive." *City & Cnty. of Denver v. District Ct. In & For City & Cnty. of Denver*, 939 P.2d 1353, 1366 (Colo. 1997). It means "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (quoting Black's Law Dictionary 1158 (5th ed. 1979)); *Relate*, Black's Law Dictionary (12th ed. 2024) (defining "relate" as "[t]o have some connection to; to stand in relation to"); *see also Denver*, 939 P.2d at 1366 (explaining that the phrase "relating to" means "having a relationship or connected by an established or discoverable relation") (quoting Webster's Third New International Dictionary 1916 (3d ed. 1986)). The claims released by the SPLA are therefore "any" that "stand in some relation" to or "have bearing [on] or concern" the Licensed Patents.

Putting it all together, as the district court concluded, "all of Cellport's claims relate to the Licensed Patents and were thus released." Appx37. Cellport's state-law claims stem from Harman's alleged breach of the C-HLA—an agreement that granted HBAS Germany a "license under [certain] Licensed Patents" in exchange

for royalties. Appx169 (¶ 2.1). Cellport alleges that Harman breached the C-HLA by creating products that practiced the licensed patents without paying the required royalties.[5] But every "Licensed Patent" identified in the C-HLA is a Second Licensed Patent under the SPLA. *Compare* Appx184 (C-HLA patent list), *with* Appx706 (list of Second Licensed Patents in SPLA); *see also* Appx35. Cellport's claims "concern" the proper use of the Licensed Patents, so they necessarily "relat[e] to the Licensed Patents" and fall within the scope of the SPLA's release. Appx699 (¶ 7(b)).

The same is true of Cellport's patent-infringement claims. Cellport alleges that Harman infringed four patents, each of which is a Second Licensed Patent under the SPLA. *Compare* Appx121, 128, 147, 154, 161 (listing patents Cellport claims Harman infringed), *with* Appx706 (list of Second Licensed Patents in SPLA). Cellport's patent-infringement claims therefore fall comfortably within the release's

---

[5] *See* Appx81-88 (Cellport's complaint describing how the technology at the center of the C-HLA claims "utilize[s] technology covered by one or more of the claims included in the Licensed Patents"); *see also* Appx115 (¶ 239) (asserting a breach of the C-HLA because "Cellport has not been compensated by Harman for each Licensed Product"); Appx119 (¶ 261) (alleging that Harman breached its duty of good faith and fair dealing under the C-HLA by "failing to pay the royalties specified in the [C-HLA] for all Licensed Products practicing the Licensed Patents"); Appx120 (¶ 268) (alleging that Harman International interfered with the C-HLA by "induc[ing] HBAS GmbH not to perform its contractual obligation"); Appx121 (¶ 272) (asserting that Harman has been unjustly enriched by the "conversion of Cellport's Licensed Patents and Cellport Intellectual Property for the benefit of Harman").

coverage of claims "relating to the Licensed Patents." Appx699 (¶ 7(b)). As Cellport itself recognizes, a claim "relates to" a patent if it is a claim "for infringement of the patent." Opening Br. 25.

The SPLA's structure and purpose confirm that reading. The SPLA was designed, in part, to "avoid further litigation" and resolve "any and all past, present, and future actions." Appx694. To accomplish that objective, the SPLA employed overlapping protections: It granted Samsung and its affiliates patent licenses; gave Samsung and its affiliates two separate covenants not to sue; and released present and future claims against Samsung and its affiliates relating to the Licensed Patents. Appx694-700. A broad release is therefore not surprising; it is one of several complementary mechanisms the parties adopted to try to prevent future disputes involving the Licensed Patents. Finding Cellport's claims against Harman released is consistent with the SPLA's global-peace approach for which Cellport was compensated by Samsung.

### B. Cellport's contrary arguments cannot overcome the text, structure, and purpose of the SPLA's release.

Cellport struggles mightily against the district court's straightforward interpretation of the SPLA's release. *See* Opening Br. 23-35. To be clear, Cellport does not provide an alternative or, in its view, *better* reading of the release. It simply insists that the district court's reading is "overly broad, and erroneous" because it

"focused on interpreting only the words 'relating to' " and did not consider the agreement's "license and other terms." Opening Br. 23-24.

Cellport's objections stumble from the start because the district court interpreted each and every part of the SPLA's release, not just the words "relating to." *See* Appx32-37. Cellport's primary objection appears to be that the release is broader than the license. *See* Opening Br. 30. So Cellport attempts to make the release coterminous with the license, arguing that "the structure of the SPLA confirms that the SPLA was not intended to release 'any and all' claims relating to the SPLA's Licensed Patents." Opening Br. 34-35.

The problem is that the release says the exact opposite: It "releases . . . *any and all claims*, . . . which were made or could have been made or may be made in the future by Cellport *relating to the Licensed Patents*." Appx699 (¶ 7(b)) (emphasis added). Cellport's interpretation therefore does not look to the SPLA's structure to understand the agreement's language in context; it tries to write a release different from the one Samsung and Cellport agreed to. Colorado courts, like all others, will not "rewrite the provisions of an unambiguous document," *USI Props. E., Inc. v. Simpson*, 938 P.2d 168, 173 (Colo. 1997), or "enforce a different contract than the one the parties negotiated," *SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, 841 F.3d 827, 838 (10th Cir. 2016) (applying Colorado law); *see also Fox v. I 10, Ltd.*, 957

P.2d 1018, 1022 (Colo. 1998) ("The court's duty is to interpret and enforce contracts as written between the parties, not to rewrite or restructure them.").

*Graham v. Igou*, 505 P.2d 19 (Colo. App. 1973) rejected a structural argument similar to Cellport's. The parties in *Graham* entered into an agreement for the sale of a wrought-iron business. *Id.* at 20. In one clause, the parties agreed that the sellers were "to retain five percent (5%) of [the] business and shall be paid 5% [f]rom the gross collections from sale[s] . . . every other month." *Id.* In a different clause, the parties separately agreed that the sellers would accept "the sum of $5,000" for "their 5% Retaining interest in [the] business." *Id.* The buyer asked the court to read the two clauses together, arguing that, because the contract was for the sale of the business, the "5% Paid on the gross sales should be credited to the $5,000 purchase price" of the seller's retaining interest. *Id.* at 21.

The Colorado Court of Appeals rejected the buyer's strained construction. *Id.* It observed that "the clauses, written in plain language without ambiguity, are separate and independent provisions"—the seller was to receive 5% of the gross sales *and* $5,000. *Id.* The court therefore refused to "rewrite the contract" to read the 5% gross sales as a credit against the $5,000. *Id.*

The same is true here. The SPLA's license and release are "written in plain language without ambiguity" and "are separate and independent provisions." *Id.* In one provision, Cellport licensed its patents to Samsung and its affiliates to create

certain licensed products. Appx698 (¶ 6). In a distinct provision, Cellport released "any claims" that "relat[e] to" Cellport's listed Licensed Patents, whether or not the claims relate to licensed products. Appx699 (¶ 7(b)). There is no reason to read the license's limitations onto the release, and nothing in the release limits the release to licensed products, patent-infringement claims, or "mobile phones that infringe, or may infringe, the SPLA's Licensed Patents." *Contra* Opening Br. 24, 25, 29. This Court cannot "add provisions to extend coverage beyond that contracted for, nor delete them." *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003).

There is nothing unusual about the release being broader than the license. This Court, for instance, has rejected an argument that a district court's construction of an agreement rendered "the release provision superfluous" because "the release is broader than the license and does other work in the agreement." *Oyster Optics, LLC v. Infinera Corp.*, 843 F. App'x 298, 302-303 (Fed. Cir. 2021). A broad release is precisely what one would expect in an agreement designed to resolve "any and all past, present, and future actions" involving Samsung, its affiliates, and Cellport's licensed patents. Appx694. As the district court observed, Cellport's current suit "is a prime example of why Samsung may have wanted to include a forward-looking release in addition to obtaining a license. Whereas the release bars suit, a mere license would have required the Court to undertake an intensive factual analysis into

the allegedly infringing items and the circumstances of their creation." Appx38. So the district court's construction of the SPLA is not just consistent with the agreement's text, but also the parties' business objectives in entering into it.

None of Cellport's cited authorities demand a different result. Cellport's cases simply reiterate the unremarkable proposition that courts must interpret contracts as a whole,[6] and, when appropriate, give effect to specific provisions over more-general ones.[7] None stand for the broader proposition that a court may rewrite an unambiguous provision to harmonize it with a different provision performing different work in the same agreement.

With respect to its C-HLA claims, Cellport contends that "[c]laims or actions that are contract related do not 'relate to' patents"; in Cellport's telling, only claims for patent infringement do. Opening Br. 25. Cellport does not cite any support for that proposition in the language of the contract. Nor does Cellport offer a cohesive definition of "relating to" that supports its cramped rule. Cellport instead seeks support in a hodgepodge of cases involving different contracts and different legal issues. *See* Opening Br. 25-26.

---

[6] *See Roberts*, 47 P.3d at 694; *Sulca v. Allstate Ins. Co.*, 77 P.3d 897, 899 (Colo. App. 2003); *Pepcol*, 687 P.2d at 1313-14.

[7] *E-470 Pub. Highway Auth. v. Jagow*, 30 P.3d 798, 801 (Colo. App. 2001), *aff'd*, 49 P.3d 1151 (Colo. 2002).

All of Cellport's cases are readily distinguishable. Some did not consider contract claims at all. *See, e.g.*, *Diversified Dynamics Corp. v. Wagner Spray Tech Corp.*, 106 F. App'x 29 (Fed. Cir. 2004) (considering whether a release bars a patent-infringement claim, not a contract claim); *Cook Inc. v. Endologix, Inc.*, No. 1:09-CV-01248, 2012 WL 2682749, at *1 (S.D. Ind. July 6, 2012) (considering whether a release clause in a settlement agreement ending a "lawsuit relating to non-compete agreements" barred a "second lawsuit that relates to patent infringement"). Others involved a fact-intensive inquiry about whether a particular contract claim under a particular contract was barred by a release. *See, e.g.*, *Digitech Image Techs. LLC v. LG Elecs., Inc.*, No. 1:15-CV-00034, 2015 WL 6697263, at *4 (D. Del. Nov. 3, 2015) (looking at extrinsic evidence to interpret a contract). Still others did not mention—let alone interpret—the phrase "relating to." *See, e.g.*, *Cellport Sys., Inc. v. Peiker Acustic GmbH & Co. KG*, 762 F.3d 1016, 1023 (10th Cir. 2014) (analyzing whether a defendant needs to infringe a patent to breach a patent-licensing agreement); *In re Qualcomm Litig.*, No. 3:17-CV-00108, 2018 WL 6062352, at *6 (S.D. Cal. Nov. 20, 2018) (same). And none justify jettisoning the plain meaning of the SPLA's release—a release that bars claims "relating to" patents, not just patent-infringement claims.

Cellport nonetheless insists that its C-HLA claims are pure contract claims that have nothing to do with the Licensed Patents. Opening Br. 26-28. But the C-

HLA is a patent-license agreement: It granted HBAS Germany a license to practice specified patents in exchange for royalties. Appx169-170 (¶ 2.1). And Cellport's C-HLA claims rest on the allegation that Harman practiced those licensed patents without paying the royalties the agreement required. *See* Appx115 (¶ 239); Appx119 (¶ 261); Appx120 (¶ 268); Appx120-121 (¶ 272). Because every patent licensed under the C-HLA is also a Second Licensed Patent under the SPLA, Cellport's claims necessarily "relat[e] to the Licensed Patents" in the SPLA. Calling those claims breach-of-contract claims does not take them beyond the release; it simply describes the legal theory on which Cellport seeks recovery.

None of Cellport's cited cases (at 27) demand a different result. Those decisions simply recognize that the breach of a patent-license agreement gives rise to a breach-of-contract claim. *See Henry v. A.B. Dick Co.*, 224 U.S. 1, 14 (1912) (noting that when a license agreement is breached, "the patentee may waive the tort and sue upon the broken contract"), *overruled on other grounds by Motion Picture Pats. Co. v. Universal Film Mfg. Co.*, 243 U.S. 502 (1917); *Eli Lilly & Co. v. Emisphere Techs., Inc.*, 408 F. Supp. 2d 668, 690-691 (S.D. Ind. 2006) (same); *see also Kenall Mfg. Co. v. Cooper Lighting, LLC*, 338 F. Supp. 3d 841, 849 (N.D. Ill. 2018) (explaining that the "remedy for nonpayment [of royalties] is in a breach of contract action"). That does not mean the patent-license agreement does not relate to the licensed patents.

Cellport's arguments regarding its patent-infringement claims fare no better. Cellport largely reprises its disagreement with the plain language of the contract, again complaining that interpreting the SPLA's release according to its terms would render that agreement's license and covenants not to sue superfluous. Opening Br. 30, 34-35. But even if there is overlap in coverage among the SPLA's various protections, the Colorado courts have recognized in the analogous context of interpreting statutes that drafters "may take a 'belt-and-suspenders' approach to 'avoid unintended gaps.' " *In re K.M.S.*, 569 P.3d 1215, 1221 (Colo. 2025) (quoting *Pugin v. Garland*, 599 U.S. 600, 609, 610 n.3 (2023)); *see also SMB Advertising v. City of Boulder*, 591 P.3d 474, 479 (Colo. App. 2026) (adopting a statutory interpretation that "results in some redundancy," because "nothing prevents" drafters "from 'employ[ing] a belt and suspenders approach.' ") (quoting *Atlantic Richfield Co. v. Christian*, 590 U.S. 1, 14 n.5 (2020)) (alteration in original). Samsung was attempting to buy itself global peace from Cellport's suits; it therefore reasonably loaded the SPLA up with every form of protection it could think of, even if they are duplicative in some respects.

Out of support in the SPLA, Cellport turns to extrinsic evidence—2023 royalty payments under the C-HLA—that it contends supports its reading. Opening Br. 34. But where, as here, contractual language is unambiguous, the agreement "cannot be varied by extrinsic evidence." *Pepcol*, 687 P.2d at 1314. And the royalty

payments do not help Cellport anyway: That those royalty payments flew under the radar and payments continued—not only after the Samsung release, but also after the last C-HLA patent expired and the C-HLA terminated in 2020—is immaterial. *See* Appx177 (¶ 8.1).

Unsurprisingly, then, Cellport's cited cases (again) do not support its effort to rewrite the release. Many do not involve releases.[8] And those that do are either inapposite[9] or actually reinforce reading the SPLA as written.[10] None hold that a

---

[8] *See Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 127 F. App'x 493, 495-496 (Fed. Cir. 2005) (solely analyzing the license terms); *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 36-38 (Fed. Cir. 2024) (same); *Macom Tech. Sols. Holdings, Inc. v. Infineon Techs. AG*, 881 F.3d 1323, 1328-30 (Fed. Cir. 2018) (same); *Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 828 (Fed. Cir. 1991) (same); *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 581 U.S. 360, 375 (2017) (analyzing the interaction between patent licenses and patent exhaustion); *Duplan Corp. v. Deering Milliken, Inc.*, 444 F. Supp. 648, 669-671 (D.S.C. 1977) (same), *aff'd in part*, *rev'd in part*, 594 F.2d 979 (4th Cir. 1979).

[9] *See Baseload Energy, Inc. v. Roberts*, 619 F.3d 1357, 1362 (Fed. Cir. 2010) (holding, based on the specific facts before the Court that a waiver covering claims related to a prior contract dispute did not preclude later patent claims or defenses); *Unova, Inc. v. Acer Inc.*, 363 F.3d 1278, 1282 (Fed. Cir. 2004) (holding that present-tense waiver language protecting a company and its corporate parent did not apply to an entity that later became the company's parent and using the agreement's "structure" to confirm that interpretation); *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1350 (Fed. Cir. 2008) (using extrinsic evidence to determine the purpose and meaning of an ambiguous agreement).

[10] *See Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 344-345 (Fed. Cir. 1997) (rejecting argument that a license "co-ownership agreement must be construed to limit the right of either co-owner to license third parties" because a contrary construction "would undermine the basic purpose of the agreement"); *Augustine*

release covering "any and all claims" "relating to the Licensed Patents" should be narrowed to be coterminous with a separate license provision.

Cellport finally attempts an end-run around the release by arguing that Harman violated the SPLA and thus cannot benefit from it. Opening Br. 39-42. Cellport's argument rests on the agreement's recitation that "Samsung represents that Samsung and its Affiliates do not make or sell electronic control units for automotive telematic systems." Appx703 (¶ 19). As Cellport sees it, Samsung's present-tense representation was actually an "agreement" by Samsung that it and its affiliates would *never* "make or sell electronic control units for automotive telematics systems post-settlement." Opening Br. 40. And because Harman makes and sells those products today, Cellport contends that Harman is in breach of the SPLA and cannot benefit from its release. *Id.* at 39.

But courts applying Colorado law have refused to transform "a one-time representation" into a forward-looking promise. *Kaiser v. Bowlen*, 455 F.3d 1197, 1205 (10th Cir. 2006). In *Kaiser*, the parties contracted for the sale of the Denver Broncos. *Id.* at 1200. The buyer in one provision represented "that it *is acquiring*" the team "for its own account . . . and not as a nominee or agent." *Id.* at 1205. In another, the parties agreed that "representations and warranties w[ould] survive" for

*Med.*, 194 F.3d at 1370-73 (interpreting a release broadly based on "the clear language of the agreement").

one year after the agreement. *Id.* at 1206. The seller attempted to use the survival-of-warranties provision to transform the present-tense representation about the capacity in which the buyer was acting into a promise not to act as a nominee or agent for a year. *Id.* Applying Colorado law, the Tenth Circuit rejected that interpretation because the representation was "clearly written in the present tense"—"a representation about how a purchaser of an asset is conducting himself at closing logically could not apply at any time other than at the time of sale." *Id.*

So too here. The provision Samsung's representation is found in begins with a representation by Cellport that, at the time the SPLA was executed, Samsung and its affiliates' products, "as they are presently (and have heretofore been) configured," "do not infringe" any of Cellport's referenced patents. Appx703 (¶ 19) (emphasis added). Samsung, in turn, made a reciprocal, present-tense representation that "Samsung and its Affiliates do not make or sell electronic control units for automotive telematic systems." *Id*. The provision as a whole reaffirms what Cellport's favored snippet standing alone already says: The parties were representing the facts as they existed at the time of the closing, not binding themselves for all time. *See Kaiser*, 455 F.3d at 1205.

Cellport's contrary argument rests on the SPLA's definition of "Affiliates." The SPLA defines "Affiliates" as entities under common ownership or controlled by one of the parties "now or in the future." Appx695 (¶ 3). Through substitution, then,

Cellport contends that when Samsung represented in 2014 that it "and its Affiliates do not make or sell electronic control units for automotive telematic systems," Samsung was somehow representing that Samsung would never in the future have affiliates that make or sell control units for automotive telematic systems. Opening Br. 39-40.

To state Cellport's argument is to refute it. Colorado courts refuse to engage in "a hyper-technical reading of the language in a contract to defeat the intentions of the parties." *Ad Two, Inc. v. City & Cnty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 377 (Colo. 2000). Cellport's interlineating of the general definition of "Affiliates" into the particular present-tense representation would force the parties—both Cellport and Samsung—to warrant on pain of breach the actions of parties they had no control over and may not have even known about at the time the agreement was signed. Yet Colorado courts are "hesitant to imply any conditions or terms into a contract which result in a breach." *Bator v. Mines Dev., Inc.*, 513 P.2d 220, 225 (Colo. App. 1973). The Court should apply that principle here and reject Cellport's attempt to manufacture a breach of the SPLA.

## CONCLUSION

For the foregoing reasons, the Court should affirm.

Respectfully submitted,

/s/ Jessica L. Ellsworth
JESSICA L. ELLSWORTH
SEAN MAROTTA
STEVEN HIGGINS
HOGAN LOVELLS CADWALADER US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
jessica.ellsworth@hlc.com

*Counsel for Defendants-Appellees*

August 4, 2026

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing corrected brief with the United States Court of Appeals for the Federal Circuit through the CM/ECF system on August 7, 2026. All case participants are registered CM/ECF users, and the Notice of Docketing Activity generated by this filing constitutes service under Fed. Cir. R. 25(e)(1).

/s/ Jessica L. Ellsworth
Jessica L. Ellsworth

*Counsel for Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in Fed. Cir. R. 32(b)(1). Excluding the items exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2), this brief contains 10,374 words.

I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). This brief has been prepared using Microsoft Word for Office 365 in 14-point Times New Roman, a proportionally spaced font.

/s/ Jessica L. Ellsworth
Jessica L. Ellsworth

*Counsel for Defendants-Appellees*