**2026-1725**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

**CELLPORT SYSTEMS INC., CYBERCAR, INC.,**

*Plaintiffs–Appellants,*

v.

**HARMAN INTERNATIONAL INDUSTRIES INC., HARMAN BECKER AUTOMOTIVE SYSTEMS GMBH,**

*Defendants–Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS IN CASE NO. 4:22-CV-00808-SDJ, JUDGE SEAN D. JORDAN

## APPELLANTS' REPLY BRIEF


Michael J. Lennon
Pablo D. Hendler
POTOMAC LAW GROUP, PLLC
1177 Avenue of the Americas, 5th Floor
New York, NY 10036
(646) 519-7477
mlennonpotomaclaw.com
phendler@potomaclaw.com


August 25 , 2026


*Attorneys for Plaintiffs-Appellants Cellport Systems Inc., CyberCar, Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii
INTRODUCTION ........ 1
ARGUMENT ........ 2
A. The District Court's Interpretation of the SPLA Release Is a Manifest Error of Law ........ 2
1. Appellees Continue to Ignore the SPLA's Literal Restrictions and Limitations of Their Post-Settlement Rights ........ 2
B. The SPLA Release Was Unenforceable in The District Court ........ 14
1. Appellees Have Selectively and Inconsistently Applied the SPLA Definition of "Affiliates" to Its Terms ........ 14
C. HBAS GmbH Is Subject to Personal Jurisdiction ........ 20
1. The C-HLA's Forum Election Clause Does Not Vest Jurisdiction Exclusively in the Colorado Courts ........ 20
2. HBAS GmbH Agreed to Waive Personal Jurisdiction in the C-HLA ........ 22
3. HBAS GmbH Has the "Minimum Contacts" with Texas for Specific Jurisdiction and Cellport's Claims Relate to Conduct Occurring in Texas ........ 24
CONCLUSION ........ 28
CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS ... 30

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646 (5th Cir. 2004) .............28

*Allen v. Pacheco*, 71 P.3d 375 (Colo. 2003) .............16

*Allstate Ins. Co. v. Huizar*, 52 P.3d 816 (Colo. 2002) .............7

*Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208 (5th Cir. 2000) .............28

*American Patents LLC v. D-Link Corporation*, Civil Action No. 4:19-cv-764, 2020 WL 3972740 (E.D. Tex. July 14, 2020) .............26

*Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 127 F. App'x 493, (Fed. Cir. 2005) .............9

*Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367 (Fed. Cir. 1999) .............9, 11, 13

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012 (Fed.Cir. 2009) .............28

*Automated Merchandising Systems, Inc. v. Lee*, 782 F.3d 1376 (Fed. Cir. 2015) .............24

*Ball v. Johanns*, Civ. No. S-07-1190 LKKDAD, 2007 WL 3124962 (E.D. Cal. Oct. 24, 2007) .............12

*Baseload Energy v. Roberts,* 619 F.3d 1357 (Fed. Cir. 2010) .............7

*Biedermann Techs. GmbH & Co. KG v. K2M, Inc.*, 528 F. Supp. 3d 407 (E.D. Va. 2021) .............19

*Blitzsafe Texas, LLC v. Bayerische Motoren Werke AG et al,* No. 2:2017-cv-00418-JRG, 2019 WL 2210686 (E.D. Tex. May 22, 2019) .............25

*Blitzsafe Texas, LLC v. Bayerische Motoren Werke AG*, No. 2:17-CV-00418-JRG, 2018 WL 4849345 (E.D. Tex. September 6, 2018) .............26

*Cain v. Price*, 415 P.3d 25 (Nev. 2018) .............19

*Concealfab Corp. v. Sabre Indus., Inc.*, Civil Action No. 15-cv-01793-CMA-KLM, 2019 WL 3282966 (D. Colo. July 22, 2019) .............3

*Coulter v. Sears, Roebuck & Co*., 426 F.2d 1315 (5th Cir. 1970) .............25

*DigiTech Image Techs. LLC v. LG Elecs., Inc.*, Civ. No. 15-34-SLR, 2015 WL 6697263 (D. Del. Nov. 3, 2015) .............9, 12

*Diversified Dynamics Corp. v. Wagner Spray Tech Corp.*, 106 Fed. App'x 29 (Fed. Cir. 2004) ....................16

*Duplan Corp. v. Deering Milliken, Inc.*, 444 F. Supp. 6481 (D.S.C. 1977) ....................7

*E-470 Pub. Highway Auth. v. Jagow*, 30 P.3d 798 (Colo. App. 2001) ....................3

*Eli Lilly & Co. v. Emisphere Technologies, Inc.*, 408 F. Supp. 2d 668 (S.D. Ind. 2006) ....................7

Endo Pharmaceuticals, Inc. v. Actavis, Inc., 746 F.3d 1371 (Fed. Cir. 2014) ....................14

*Ericsson Inc. v. TCL Communication Technology Holdings Limited*, 955 F.3d (Fed. Cir. 2020) ....................24

*Fuel Automation Station, LLC v. Energera Inc.*, 119 F.4th 1214 (10th Cir. 2024) ....................3

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) ....................26

*Grishman v. Clark*, No. 22-11009-RGS, 2023 WL 3742814 (D. Mass. May 31, 2023) ....................21

*Howmedica Osteonics v. Wright Med. Tech*, 540 F.3d 1337 (Fed. Cir. 2008) ....................7

*Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523 (2017) ....................6

*In re N.A. Rugby Union v. U.S. Rugby Football Union*, 442 P.3d 859 (Colo. 2019) ....................15, 19

*In re Prof'l Satellite & Commc'n, LLC*, Case No.: 3:17-cv-00033-BEN-BLM, 2017 WL 4286995 (S.D. Cal. Sep. 27, 2017) ....................10

*In re Toyota Hybrid Brake Litig.*, 2021 WL 2805455 (E.D. Tex. Jul. 6, 2021) ....................25

*In re Village at Lakeridge, LLC*, 814 F.3d 993 (9th Cir. 2016) ....................10

*Jacobs v. Nintendo of America, Inc.*, 370 F.3d 1097 (Fed. Cir. 2004) ....................11

*Kenall Mfg. Co. v. Cooper Lighting, LLC*, 338 F. Supp. 3d 841 (N.D. Ill. 2018) ....................6

*Lee v. Grandcor Medical Systems, Inc.,* 702 F. Supp. 252 (D. Colo. 1988) ....................16

*Luv N' Care v. Insta–Mix, Inc.*, 438 F.3d 465 (5th Cir. 2006) ....................25

*Macom Tech. Solutions Holdings, Inc. v. Infineon Techs. AG*, 881 F.3d 1323 (Fed. Cir. 2018) ....................6

*Magnivision, Inc. v. Bonneau Co.*, 250 F.3d 758, 2000 WL 772323 (Fed. Cir. 2000) ....................15

*McAbee Construction, Inc. v. United States*, 97 F.3d 1431 (Fed.Cir.1996) ....................3

*Molon Motor & Coil Corp. v. Nidec Motor Corp.*, 946 F.3d 1354 (Fed. Cir. 2020)........8

*Pepcol v. Denver Union Corporation*, 687 P.2d 1310 (Colo. 1984)........3

*Roberts v. Adams*, 47 P.3d 690 (Colo.App.2001)........3

*Stillwater Mining Co. v. Power Mount Inc.*, Civil Action No. 14-cv-2475-WYD-KMT, 2017 WL 1356089 (D. Colo. Apr. 13, 2017)........18, 19

*Stone Forest Industries, Inc. v. U.S.*, 973 F.2d 1548 (Fed. Cir. 1992)........7, 19

*Unova, Inc. v. Acer Inc.*, 363 F.3d 1278 (Fed. Cir. 2004)........17

*Valve Corporation v. Rothschild*, No. 23-cv-1016, 2024 WL 2133951 (W.D. Wash. May 10, 2024)........21

*Vita-Herb Nutriceuticals Inc. v. Probiohealth LLC*, Case No.: SACV 11-1463 DOC(MLGx), 2012 WL 3903454 (C.D. Cal. Sep. 6, 2012)........12

**<u>STATUTES</u>**

28 U.S.C. § 85........20

**<u>RULES</u>**

Local Rule CV-7(f)........22

## INTRODUCTION

1. Appellees continue to ignore the requirements of Colorado law, as well as this Court's precedent, in a transparent effort to rewrite the terms of an unrelated agreement that neither of the Appellees is a party to, through a selective interpretation of those terms, and which Samsung itself has never come forward to confirm. Appellees' arguments should be flatly rejected. The district court's interpretation of the SPLA release is a manifest error of law.

2. Appellees continue to selectively, and inconsistently, apply the SPLA's definition of "Affiliates" to the SPLA's terms, depending on the interpretation of the SPLA they are advocating. Samsung received precisely what its in-house IP litigation counsel bargained for and explicitly agreed to for itself and its Affiliates: a restricted product- and use-specific license and Cellport's conditional promise not to sue for future infringement of the SPLA's Second Licensed Patents by Samsung Licensed Products. The products of Appellees, as later-acquired Affiliates, are not licensed, Appellees violated the SPLA license terms and Samsung representation, and defendants were precluded from asserting the release in the district court as a defense to plaintiffs' Complaint.

3. HBAS GmbH is subject to personal jurisdiction in the district court. The C-HLA does not limit the forum in which Cellport may litigate claims exclusively to Colorado courts, unlike HBAS GmbH, which *must* file any lawsuits

there. Consistent with those terms, HBAS GmbH explicitly waived objections to the venue and jurisdiction of the "U.S. District Courts" in the C-HLA, and that waiver is properly before this Court. Moreover, Cellport's factual pleadings and other evidence of Appellees' use of Harman and customer distribution networks to place products into the stream of United States commerce was more than sufficient to meet its burden of establishing a prima facie case of personal jurisdiction in the district court.

## ARGUMENT

### A. The District Court's Interpretation of the SPLA Release Is a Manifest Error of Law

#### 1. Appellees Continue to Ignore the SPLA's Literal Restrictions and Limitations of Their Post-Settlement Rights

Appellees' response brief pays mere lip service to the requirements of contract interpretation under Colorado law. Although Appellees purport to address the meaning of the SPLA's other terms in the context of its release, *see* Appellees' Response Brief ("Resp. Br.") at 21-22 ("Together, the three interrelated provisions—the license, the releases, and the covenants not to sue—served the agreement's objective of preventing "any and all past, present, and future actions" between Samsung and its affiliates on the one hand and Cellport on the other."), the brief's arguments nevertheless ignore Colorado's mandate that a court interpreting a contract must consider not only all the terms of an agreement, but is also required to

harmonize them, avoiding interpretations which are illogical and inconsistent. A contract is to be "interpreted in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless." *Pepcol v. Denver Union Corporation*, 687 P.2d 1310, 1313-14 (Colo. 1984). *See also, e.g., Fuel Automation Station, LLC v. Energera Inc.*, 119 F.4th 1214 (10th Cir. 2024) ("We begin in this case by harmonizing the relevant Agreement provisions.")*; Concealfab Corp. v. Sabre Indus., Inc.*, Civil Action No. 15-cv-01793-CMA-KLM, 2019 WL 3282966, *11 (D. Colo. July 22, 2019) ("A court must determine the meaning of a contract 'by examination of the entire instrument, and not by viewing clauses or phrases in isolation' . . . ."); *E-470 Pub. Highway Auth. v. Jagow*, 30 P.3d 798, 801 (Colo. App. 2001), *aff'd*, 49 P.3d 1151 (Colo. 2002) ("'[A] more specific provision controls the effect of general provisions' . . . ."); *Roberts v. Adams*, 47 P.3d 690, 694 (Colo.App.2001) ("[Courts] should seek to give effect to all provisions so that none will be rendered meaningless."). The precedent of this Court requires nothing less. *See McAbee Construction, Inc. v. United States*, 97 F.3d 1431, 1435 (Fed.Cir.1996) ("We must interpret the contract in a manner that gives meaning to all of its provisions and makes sense.").

To consider the SPLA terms beyond the release is to understand why Appellees, and the district court, dismissed them out of hand: their restrictions and limitations carve out specific post-settlement rights granted to Samsung and its

Affiliates and reserve all other rights to Cellport. Appellees' interpretation of the SPLA's release, and that of the district court, renders those carve-outs meaningless. As examples:

- The SPLA license terms expressly limit the rights of HBAS GmbH and HII Inc. to specific "Samsung" products and uses; "Affiliate" products (existing or future) are excluded and not licensed. Appx693, ¶ 6(b) (" . . . made, branded, sold, or distributed by or for Samsung ("Second Licensed Products"));
- The license terms protect HBAS GmbH and HII Inc. only from post-settlement claims that relate specifically to the SPLA's "Licensed Products." Appx693, ¶ 6(c) (". . . Cellport will not hereafter bring or maintain claims . . . to the extent such carrier's, importer's, retailer's, distributor's, or end user's activities relate to the Licensed Products . . . Cellport will not list, name, or otherwise identify any of the Licensed Products as an accused product . . . Cellport will expressly disclaim and exclude, in writing, any and all Licensed Products . . . .");
- The covenant terms also protect HBAS GmbH and HII Inc. only from post-settlement claims that relate specifically to the SPLA's "Licensed Products." Appx693, ¶ 8 ("Subject to the payment provided under Section 5, Cellport . . . additionally covenants that it shall not . . . , sue, maintain suit, . . . to the

extent such carrier's, importer's, retailer's, distributor's, or end user's activities relate to the Licensed Products . . . .");

- Cellport's representation confirms non-infringement of the Second Licensed Patents only for existing and pre-settlement Samsung and Affiliate products. Appx693, ¶ 19 (" . . . products made, sold, used and/or imported by Samsung and its Affiliates, as they are presently (and have heretofore been) configured, do not infringe any of the Second Licensed Patents," provided "Samsung and its Affiliates "do not make or sell electronic control units for automotive telematics systems.").

Other SPLA terms also confirm the agreement's intent to restrict the post-settlement rights of Samsung and its Affiliates to the SPLA's Licensed Products and reserve all other rights to Cellport. As examples:

- The SPLA's payment terms explicitly acknowledge the possibility of post-settlement infringement and other disputes relating to the Licensed Patents. Appx693, ¶ 5(f) (". . . a *subsequent* finding of invalidity, unenforceability, or non-infringement of any of the First Licensed Patents or Second Licensed Patents." (emphasis added));
- The SPLA explicitly states that its terms apply to post-settlement rights of "future" interest holders and assignees. Appx693, ¶ 9 ("This Agreement shall be binding upon . . . any and all other present or future successor(s), assign(s),

interest holder(s), licensee(s) or owner(s) of The Licensed Patents.");

- The SPLA's Assignment terms restrict the rights of Samsung that can be transferred post-settlement. Appx693, ¶ 10 (". . . the rights and licenses granted to Samsung and its Affiliates under this Agreement shall only extend to, apply to, cover and continue for the benefit of the Third Party Acquirer and its Affiliates for any products and services which Samsung and its Affiliates substantially developed, offered and/or sold *immediately before such acquisition* . . . ." (emphasis added)).

The SPLA does not grant either Samsung or its Affiliates unlimited protection from post-settlement liability of any kind. Cellport only authorized specific Samsung "mobile phone handsets" and "handheld mobile terminals" to be made or sold by Samsung or Samsung Affiliates. The SPLA explicitly reserves to Cellport potential breach of contract and infringement claims by products of Samsung and its Affiliates other than its Licensed Products. *See, e.g.*, *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523, 1533-35 (2017) ("[T]he patentee could sue both the licensee and the purchaser—who knew about the breach—for infringement."); *Macom Tech. Solutions Holdings, Inc. v. Infineon Techs. AG*, 881 F.3d 1323, 1328-30 (Fed. Cir. 2018) ("[W]e do not suggest that MACOM is free to operate outside the Field of Use."); *Kenall Mfg. Co. v. Cooper Lighting, LLC*, 338 F. Supp. 3d 841, 846, 848-851 (N.D. Ill. 2018) ("If the licensee makes sales that exceed those

limitations, those sales are outside the scope of the license and therefore unauthorized . . . ."); *Eli Lilly & Co. v. Emisphere Technologies, Inc.*, 408 F. Supp. 2d 668, 690-91 (S.D. Ind. 2006) ("When Lilly ventured beyond those limits with its secret research projects, it did not risk only a claim of patent infringement. It also breached the contract that gave it the limited license in the first place."); *Duplan Corp. v. Deering Milliken, Inc.*, 444 F. Supp. 648, 670-671 (D.S.C. 1977) ("Since [licensee's] right to manufacture and sell the machines was a contractually-limited one, the use rights were effectively reserved . . . .").

The fact that the SPLA's post-settlement license and other terms are not explicitly incorporated or referenced in its paragraph 7(b) release is irrelevant under Colorado law. *See, e.g., Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002) (the court must determine the meaning of a contract "by examination of the entire instrument, and not by viewing clauses or phrases in isolation."). The precedent of this court is the same. *See, e.g., Baseload Energy v. Roberts,* 619 F.3d 1357, 1363-64 (Fed. Cir. 2010) ("The license provision would be unnecessary if all infringement claims under the [patent] were released."); *Howmedica Osteonics v. Wright Med. Tech*, 540 F.3d 1337, 1350 (Fed. Cir. 2008); *Stone Forest Industries, Inc. v. U.S.*, 973 F.2d 1548, 1552 (Fed. Cir. 1992) ("There is a presumption that when parties enter into a contract, each and every term and condition is in consideration of all the others, unless otherwise stated.").

The sole premise of Appellees' arguments (and the district court's summary judgment ruling) that the SPLA's release of Samsung discharges *all* the claims alleged in Appellants' Complaint is that the patents referred to in the C-HLA are referred to in the SPLA. Resp. Br. at 46. ("But every "Licensed Patent" identified in the C-HLA is a Second Licensed Patent under the SPLA . . . Cellport's claims "concern" the proper use of the Licensed Patents, so they necessarily "relat[e] to the Licensed Patents" and fall within the scope of the SPLA's release."); Appx35-36 ("The Licensed Patents to which the C-HLA refers are listed in the SPLA and contemplated in the release . . . Thus, each of Cellport's state-law claims is grounded in Harman's purported breach of some duty related to the patents expressly covered in the SPLA's release."). The premise is fatally flawed, however, because the C-HLA and SPLA are unrelated agreements concerning different subject matter. Op. Br. at 27-30; Appx166 at 1, ¶¶ 1.6, 1.9,1.13, 1.15; Appx693 at 1, ¶6(b). *See Molon Motor & Coil Corp. v. Nidec Motor Corp.*, 946 F.3d 1354, 1361 (Fed. Cir. 2020) ("And we find no legal support for the sweeping proposition that an overlapping patent is sufficient to render two agreements the same subject matter.").

The release of Samsung is related and linked to the SPLA's "License" terms by the literal language of its Recitals. *See* Appx693 at 1 ("Cellport is willing to grant such a license and release . . . under the terms hereof"), and by its language referencing the "Licensed Patents." Appellees and the district court's summary

judgment order improperly fail to give any effect to either in their isolated and overreaching interpretation of the release. *See Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 127 F. App'x 493, 496 (Fed. Cir. 2005) (holding that the use of the past tense term "Licensed" in "Licensed Patents" strongly suggests already-acquired licensed rights; otherwise, the agreement "would have referred to the subject patents, either then-owned or future-acquired, generically as 'PATENTS.'"). *See also DigiTech Image Techs. LLC v. LG Elecs., Inc.*, Civ. No. 15-34-SLR, 2015 WL 6697263 (D. Del. Nov. 3, 2015) (holding that a release of claims "which arise from or relate to in any way the Patents" does not release contract-based claims.).

Confronted with the SPLA's Recitals and related literal carve-outs of Appellees' post-settlement rights, Appellees, again, selectively ignore, and rewrite its limitations, and argue that the language of the SPLA release means something different: "may have." Resp. Br. at 44 (". . . Cellport "releases . . . any and all claims, . . . which were made or could have been made or may be made in the future by Cellport relating to the Licensed Patents." . . . As this Court has recognized, "[t]he phrase 'may have' is necessarily future-oriented." (citing *Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1371 (Fed. Cir. 1999)). In the settlement-agreement context, "it implies a future possibility of [the plaintiff] having a claim." *Id.* And it protects Samsung and its affiliates—including Harman—from claims that could have been brought at the time the SPLA was executed as well as

any claims that Cellport *might have* in the future." (Emphasis added.)

But the SPLA release does not discharge claims that Cellport "may have" post-settlement; it not only literally limits the post-settlement claims to those relating to the license terms of the SPLA ("*Licensed* Patents"), but also, additionally, to those that are "later acquired." Appx693, ¶ 7(b) (emphasis added). The natural meaning of that language is narrower in scope than "may have," and limiting, excluding claims that arise solely post-settlement. *See In re Village at Lakeridge, LLC*, 814 F.3d 993, 999-1000 (9th Cir. 2016) (acquiring a claim by assignment); *In re Prof'l Satellite & Commc'n, LLC*, Case No.: 3:17-cv-00033-BEN-BLM, 2017 WL 4286995, *7 (S.D. Cal. Sep. 27, 2017) (". . . later acquired that claim through an assignment . . . "). The release's "later acquired" language was obviously included as part of the release because both Samnang and Cellport agreed to it and intended that it have a specific meaning and effect.

A limiting interpretation of the language is also consistent with the SPLA's post-settlement product- and use-specific limitations of the license granted under the Second Licensed Patents, its limitation of Cellport's paragraph 19 representation to only those Samsung products existing as of the SPLA.s effective date, and this Court's precedent that Appellees specifically rely on. Appx693, ¶ 6(b (". . . any mobile phone handset or other handheld mobile terminal . . ."); Appx693, ¶ 19 (". . . as they are presently (and have heretofore been) configured, do not infringe any of

the Second Licensed Patents . . . "). *See Augustine Med., Inc.*, 194 F.3d at 1370-71 ("We must determine whether the language as drafted by Augustine and Progressive functions as a bar to any future claims of Augustine for patent infringement occurring after the Settlement Agreement, related to those goods that were included in the Settlement Agreement."). If the release was intended to discharge all future Cellport claims both carve-outs would be unnecessary, and superfluous. *See, e.g., Jacobs v. Nintendo of America, Inc.*, 370 F.3d 1097, 1101 (Fed. Cir. 2004) ("If all that Jacobs intended to do through the settlement agreement was to free Analog of its liability for infringement, paragraph 5 of the agreement (the covenant not to sue) would have been fully sufficient to serve that purpose.").[1]

A narrower interpretation is additionally consistent with other language of the release that Appellees also ignore and confirms that the SPLA's release does not discharge all claims that Cellport "might have" in the future. The SPLA "Release" explicitly recites that both Cellport and Samsung waive the provisions of Section 1542 of the California Civil Code, *see* Appx693, ¶ 7(d), the scope of which has been

[1] Appellees' motion seeking an award of attorneys' fees, costs and expenses in the district court based on the entry of summary judgment, *see* Defendants' Motion for Attorneys' Fees, Doc. #50, also contradicts Appellants' arguments that the SPLA releases "any and all claims," *see* Resp. Br. at 44. In that motion Appellees are asserting claims for attorney fees and costs even though SPLA paragraph 7(a) releasing Samsung's claims is essentially identical to the SPLA's paragraph 7(b) release of Cellport's claims.

consistently interpreted by courts as limited to *existing* legal claims.[2] *See, e.g., DigiTech Image Techs. LLC*, 2015 WL 6697263 at *5; *Vita-Herb Nutriceuticals Inc. v. Probiohealth LLC*, Case No.: SACV 11-1463 DOC(MLGx), 2012 WL 3903454, *7 (C.D. Cal. Sep. 6, 2012); *Ball v. Johanns*, Civ. No. S-07-1190 LKKDAD, 2007 WL 3124962, *4 (E.D. Cal. Oct. 24, 2007) ("California Civil Code section 1542, referenced in the settlement agreement, relates only to those claims that 'exist ... at the time of executing the release.'").

Further consistent with the SPLA's carve-outs and confirming that the intent of the release does not discharge all future Cellport claims is the SPLA side letter, which explicitly states that "Cellport has no intention of asserting its [Second] Licensed Patents against Samsung, either directly or indirectly, for any products or services," *provided* "Samsung and its parent, sister, and child entities, do not practice the purported inventions described in any of Cellport's [Second] Licensed Patents .

---

[2] SPLA paragraph 7(d) of the release provides that "[w]ith respect to any and all claims released by this Agreement, . . . all Parties shall be deemed to have, and by operation of the execution of this Agreement shall have fully, finally, and forever expressly waived and relinquished, *to the fullest extent permitted by law*, any and all provisions, rights, and benefits of Section 1542 of the California Civil Code . . . , which provides:

> A general release does not extend to claims which the creditor does not know or suspect *to exist in his favor at the time of executing the release*, which if known by him must have materially affected his settlement with the debtor.

Emphasis added.

. . .”). Appx1162; Appx693, ¶ 19 (“Samsung and its Affiliates do not make or sell electronic control units for automotive telematics systems.”). Samsung accepted the risk of future claims relating to the Second Licensed Patents, if Samsung, or its Affiliates, made or sold products outside the scope of the SPLA license, by its obvious agreement to the SPLA’s limited license and other terms. Appx693, ¶ 6(b) (“. . . mobile phone handset or other handheld mobile terminal, . . . primarily used to receive wireless voice and/or data communications . . . any service for use with the [licensed handset or other handheld terminal] . . . made, branded, sold, or distributed by or for Samsung.”); Appx693 at 1 (“Samsung Electronics Co., Ltd. . . . , and Samsung Telecommunications America, LLC, . . . (collectively, "Samsung") . . . .”); Appx693, ¶ 19 (“. . . as they are presently (and have heretofore been) configured . . . .”).

Samsung’s agreement to the SPLA’s post-settlement restrictions and side letter limitations is fatal to Appellees’ argument that Cellport’s district court claims were released. *See Augustine Med., Inc.,* 194 F.3d at 1373 (“Consistent also with judicial interpretations of general releases, it is the burden of the parties entering into a settlement agreement *to expressly reserve in the agreement* any rights that they wish to maintain beyond the date of the settlement of agreement.” (emphasis added)).

Appellees assertion, *see* Resp. Br. at 50, that “[t]here is no reason to read the license’s limitations onto the release” is a simple mischaracterization of the relevant

facts, and Colorado, and this Court's, contract interpretation law. Appellees are simply attempting to improperly enlarge the limited rights granted by the SPLA prior to their acquisition by Samsung by rewriting the settlement and license terms Cellport and Samsung agreed to. *See, e.g., Endo Pharmaceuticals, Inc. v. Actavis, Inc.*, 746 F.3d 1371, 1378-1379 (Fed. Cir. 2014) ("You get what you bargain for . . . Appellees will not now be heard to complain.").

### B. The SPLA Release Was Unenforceable in The District Court

#### 1. Appellees Have Selectively and Inconsistently Applied the SPLA Definition of "Affiliates" to Its Terms

In response to Appellant's evidence that Samsung, and Appellees, violated the SPLA's terms, Appellees argue, *see* Resp. Br. at 58, that applying the SPLA's definition of "Affiliate" to Samsung's representation of SPLA paragraph 19 and HBAS GmbH and HII Inc. is "a hyper-technical reading" of the language of that paragraph that implies conditions "to defeat the intentions of the parties" and an attempt "to manufacture a breach of the SPLA." *Compare*, in contrast, however, Appellees' entirely different argument when interpreting the SPLA release, e.g., Resp. Br. at 22 ("The definition is also not temporally limited: Entities that became Samsung or Cellport affiliates 'in the future' qualify as affiliates covered by the SPLA.") and at 44 ("Harman is Samsung's wholly owned subsidiary, and so it falls

within the SPLA's definition of Affiliate . . . .").[3] The SPLA's definition applies to all the SPLA terms of that agreement that incorporate the term "Affiliate," including its Samsung representation. Appx693, ¶ 19; Appx794 at 3, ¶¶ 7-9 ("The SPLA applies to future Affiliates by the definition in [SPLA] Paragraph 3, set forth above."); Appx33 at 14 ("And although Harman was acquired *after* the parties signed the SPLA, the agreement explicitly states that later-acquired corporations are "Affiliates" for purposes of the agreement. Thus, the SPLA applies to Harman." (emphasis in original)). The SPLA Recitals also confirm that intent. Appx693 at 1 (". . . actions of Samsung and its Affiliates (*defined below*) . . . ." (emphasis added)).

The Samsung representation explicitly incorporates its definition of Affiliates and accordingly that representation applies to HBAS GmbH and HII Inc. as of the date of their post-settlement acquisition by Samsung. *See, e.g., Magnivision, Inc. v. Bonneau Co*., 250 F.3d 758, 2000 WL 772323, *10 (Fed. Cir. 2000). And as third-party beneficiaries of the SPLA, *see* Appx693, ¶ 7(c) (". . . Samsung and its Affiliates certainly benefit from the provisions of this agreement . . . ."), Appellees are bound by all the terms of the SPLA just as Samsung is. *See In re N.A. Rugby Union v. U.S. Rugby Football Union*, 442 P.3d 859, 865-866 (Colo. 2019); *Lee v. Grandcor*

[3] Although Appellees assert otherwise, Cellport never argued to the district court that HBAS GmbH and HII Inc. are not "Affiliates" as defined in the SPLA. *See* Cellport Opposition to Defendants' Motion to Dismiss, Doc. #34, § III.A and Cellport Sur-reply Opposing Defendants' Motion to Dismiss, Doc. #39, § II.A.

*Medical Systems, Inc.,* 702 F. Supp. 252, 255 (D. Colo. 1988) ("A third party beneficiary must accept a contract's burdens along with its benefits."); *Allen v. Pacheco*, 71 P.3d 375, 379 (Colo. 2003) ("[A] nonparty may be bound by the terms of an agreement if the parties so intend . . . .").

Appellees argue that the SPLA's paragraph 19 reciprocal representations reaffirm that Cellport and Samsung "were representing the facts as they existed at the time of the closing, not binding themselves for all time." Resp. Br. at 50. Notably, however, unlike Cellport's SPLA representation, Samsung's reciprocal representation does not contain any language that temporally limits it to the date the SPLA was executed, as ruled by the district court. *Compare* Appx693, ¶ 19 and Appx40 ("Samsung merely confirmed that, *when the SPLA went into effect in 2013*, Samsung and its Affiliates did not make or sell such items." (emphasis added)). The court's construction of Samsung's representation improperly rewrites the SPLA's terms by reading a limitation into paragraph 19—"when the SPLA went into effect in 2013"—that is clearly not present. *See, e.g., Diversified Dynamics Corp. v. Wagner Spray Tech Corp.*, 106 Fed.App'x 29, 32-33 (Fed. Cir. 2004).

Appellees' arguments and the district court ruling also improperly ignore Cellport summary judgment evidence relevant to determining the extent to which the SPLA is intended to benefit Samsung future Affiliates. That evidence confirms that Cellport and Samsung agreed to explicitly clarify that intent through their

reciprocal representations and confirm that the SPLA's post-settlement license and release terms do not include the right of either Samsung or its Affiliates to "make or sell electronic control units for automotive telematics systems," the precise HBAS GmbH and HII Inc. products that are the subject of Appellants' district court Complaint as a result of Samsung's acquisition of HBAS GmbH and HII Inc. Appx748, ¶¶ A.1.a – A.1.l, e.g., ¶ A.1.e., ¶ A.1.f, ("Just wanted to get in touch here with you myself. Attached is a draft of the license agreement I believe would work for Samsung. Would this work for Cellport? . . . ."), ¶ A.1.j. (". . . Cellport is not sure it is aware of all Samsung's and its Affiliates' products, and is also unsure of all of Samsung's affiliates . . . Regarding the changes Samsung made to the [side letter], and also concerning Samsung's proposed paragraph 19 in the license agreement, Cellport is not fully aware of all of Samsung's or its Affiliates' products . . . ."), and ¶ A.1.k. ("Per our call, I'm attaching what I believe may be our final, which includes the representation Cellport is requesting at para. 19 . . . ."); Appx768, ¶ 16 (". . . the parties exchanged reciprocal representations regarding whether there existed any Samsung products at the time *which would infringe the Second Licensed Patents* but were not included in the definition of Second Licensed Products." (emphasis added)); Appx44, e.g., ¶¶ 82-122, 199, 210, 284, 324, 371, 399. *See Unova, Inc. v. Acer Inc.*, 363 F.3d 1278, 1281-1282 (Fed. Cir. 2004) (the circumstances and negotiations of the parties in making the contract are relevant to "determining the

meaning of a written contract allegedly made, in part, for the benefit of a third party."); *Stillwater Mining Co. v. Power Mount Inc.*, Civil Action No. 14-cv-2475-WYD-KMT, 2017 WL 1356089, *9 (D. Colo. Apr. 13, 2017) ("[T]he question of law presented is which party bore the risk of loss . . . .").

To specifically address Cellport's concerns about unknown Samsung Affiliates, existing and future, and their products, *see* Appx748, ¶¶ A.1.a – A.1.l, Cellport and Samsung acknowledged and agreed that the scope of the SPLA's release was, and would be, addressed by the already-included restrictions of the other SPLA terms, and specifically, their limitations to "Licensed Products." Appx693, ¶¶ 6(b), 19; Op. Br. at 12-17. Samsung's and Cellport's joint agreement to both is exactly why Colorado's contract interpretation law requires that all the terms of a contract must be read together in their entirety, not piecemeal, and harmonized.

Samsung breached its representation and the SPLA's release became unenforceable when Samsung acquired Appellees, and its SPLA representation became untrue. Samsung's acquisition of Appellees violated the SPLA license terms and its representation proviso. Op. Br. at 43-50. Appellees' arguments to the district court directly contradict the SPLA license terms and Samsung's representation that Samsung's counsel explicitly accepted.[4] The court should have ruled that the

[4] Samsung was aware from discussions with Appellees prior to the commencement of the district court litigation of Cellport's dispute with Harman, *see* Appx599 at 3, but has never confirmed its agreement with, or offered any evidence (as it obviously

SPLA's release of Samsung was, as a result, unenforceable by HBAS and HII Inc. Op. Br. at 43-50. S*ee also Stone Forest Industries, Inc.*973 F.2d at 1552 (Fed. Cir. 1992) ("[O]nly in exceptional circumstances will equity require the non-breaching party to continue to perform the remainder of the contract."); *Biedermann Techs. GmbH & Co. KG v. K2M, Inc.*, 528 F. Supp. 3d 407, 437-38 (E.D. Va. 2021) (holding defendant subsidiary contractually precluded from litigating "a promise that [defendant's] parent voluntarily agreed that it, and its subsidiaries, would honor during the life of the contract."); *Stillwater Mining Co.,* 2017 WL 1356089 at *14-15 (D. Colo. Apr. 13, 2017) ("Quasi-estoppel 'forbids a party from accepting the benefits of a transaction...and then subsequently taking an inconsistent position to avoid corresponding obligations or effects.'" (citations omitted)); *In re N.A. Rugby Union v. U.S. Rugby Football Union*, 442 P.3d at 866 ("[The] principle of equitable estoppel can bind a nonsignatory to an . . . agreement when the nonsignatory has knowingly exploited that agreement, as, for example, by claiming or accepting direct benefits of the agreement."); *Cain v. Price*, 415 P.3d 25, 29 (Nev. 2018) ("When parties exchange promises to perform, one party's material breach of its promise discharges the non-breaching party's duty to perform . . . If the non-breaching party's duty was to a third-party beneficiary, the same principle applies: the breaching

---

could as the other party to the SPLA negotiations and settlement) to support, Appellees' asserted interpretation of SPLA paragraph 19 and its other terms in the district court.

party's "failure of performance" discharges the beneficiary's right to enforce the contract . . . .").[5]

The district court's rulings that "Harman has not violated paragraph 19 of the SPLA" and that "Harman is not equitably estopped from relying on the SPLA," Appx20 at 21-22, are manifestly erroneous.

### C. HBAS GmbH Is Subject to Personal Jurisdiction

#### 1. The C-HLA's Forum Election Clause Does Not Vest Jurisdiction Exclusively in the Colorado Courts

First, contrary to Appellees' arguments, *see, e.g.,* Resp. Br. at 41, 43 n.4, the C-HLA does not vest personal jurisdiction and venue of all disputes "arising under" its terms *exclusively* in the Colorado courts. Rather, it vests personal jurisdiction and venue in all "U.S. District Courts." To make their argument, Appellees suggest that the reference to a plurality of U.S. District Courts is to the various federal courthouses in the District of Colorado. But "Colorado constitutes one judicial district" with multiple locations. 28 U.S.C. § 85.

Recognizing the fallacy of this argument, Appellees argue that the use of the plural "U.S. District Courts" is simply a "scrivener's error." But that still does not limit the "U.S. District Courts" at issue to the Colorado District Court.[6]

---

[5] Appellees' Motion for Attorneys' Fees, n.1 supra, is also a breach of Samsung's SPLA release of its Cellport claims and Samsung warranties. Appx693, ¶¶ 7(a), 13.

[6] *Compare* Appellees' characterization of the C-HLA's forum election provisions with their description of the SPLA's forum selection clause, Appx693, ¶ 15, which

The C-HLA permits Cellport to choose to litigate in multiple forums, not only Colorado. A Cellport lawsuit that is "based on or alleges activities of HBAS that are outside of the scope of" the C-HLA is not a lawsuit "arising under" that agreement, and, accordingly, also is not required by the C-HLA terms to be brought in Colorado. Appx166 at ¶ 10.3 (". . . provided further that Cellport may bring a lawsuit against HBAS in Germany, and also may bring an enforcement action of an injunction or judgment in any jurisdiction . . . For purposes of the foregoing, it shall not be considered a lawsuit arising under this Agreement if such lawsuit brought by Cellport is based on or alleges activities of HBAS that are outside of the scope of this Agreement."). *See, e.g., Valve Corporation v. Rothschild*, No. 23-cv-1016, 2024 WL 2133951, *2 (W.D. Wash. May 10, 2024); *Grishman v. Clark*, No. 22-11009-RGS, 2023 WL 3742814, *4 (D. Mass. May 31, 2023).

Appellees do not dispute that Cellport's district court Complaint alleges claims that both arise in connection with the C-HLA and are "outside" the scope of the agreement. *See* Appellants' Opening Brief ("Op. Br.") at 30-31.

---

provides that "[t]he Parties agree that the United States District Court for the District of Colorado shall be *the sole and exclusive jurisdiction* and venue for resolving any dispute arising out of this Agreement, and consent to personal jurisdiction in said Court, consent to *the sole and exclusive venue* in and of said Court, and waive all rights to challenge personal jurisdiction and/or the convenience of the venue." (Emphasis added.) *See also* Defendants' Mot. to Dismiss, Doc. #23 at 31 ("That Agreement provides that Colorado is the "sole" forum for resolving disputes under that agreement.").

Appellees' asserted interpretation ignores the literal language of the C-HLA, is inconsistent with that language and defies common sense. Nowhere in the C-HLA does it state that venue, including personal jurisdiction over HBAS GmbH, in all cases is vested *solely and exclusively* in the Colorado courts.

**2. HBAS GmbH Agreed to Waive Personal Jurisdiction in the C-HLA**

Consistent with the C-HLA's forum election provisions, HBAS GmbH agreed to "irrevocably submit to the jurisdiction (subject matter and personal) and venue of the U.S. District Courts" for "all actions, suits or proceedings arising in connection with" that agreement and to "waive any objection based on lack of subject matter or personal jurisdiction, or forum non-conveniens or any other objection to venue" (emphasis added) in those forums. Appx166, ¶ 10.3.

Appellees complain in their response, *see* Resp. Br. at 39, that Cellport "waited until its sur-reply on Harman's motion to dismiss to argue that HBAS Germany consented in the C-HLA to personal jurisdiction in the Eastern District of Texas" and that HBAS GmbH's agreement in the C-HLA waiving objections to the venue and personal jurisdiction of the "U.S. District Courts" is not properly before this Court. Not so.

First, the district court's local rules explicitly provide for the filing of a sur-reply in opposing a party's motion. *See* Local Rule CV-7(f) ("A sur-reply responding to issues raised in the reply may be served . . . . "). Appellees were on notice of that

local rule, but chose, for obvious reasons, to ignore the issue in both its original motion and reply in the district court. Defendants' Motion to Dismiss, Doc. #23 at 15 ("[T]he Cellport-Harman Agreement specifies the District of Colorado as the forum for litigating disputes 'arising under' the Agreement."); Defendants' Reply to Plaintiffs' Opposition, Doc. #38 at 10 ("HBAS Germany is not 'at home' in Texas for general jurisdiction and has not directed activities to Texas that Plaintiffs' claims 'arise out of' for specific jurisdiction.").

Appellants explicitly raised the issue with the district court. Plaintiffs' Surreply to Defendants' Motion to Dismiss, Doc. #39 at 5 ("The C-HLA does not require this lawsuit to be litigated in Colorado; HBAS agreed in the License Agreement to venue in any U.S. district court for such claims and waived the venue objections Defendants are now asserting."), at 13 ("[I]n the Harman License Agreement, HBAS also explicitly agreed to the 'jurisdiction (subject matter and personal) . . . of the U.S. District Courts' (not just the jurisdiction of the District of Colorado), and waived any objection to jurisdiction of 'the U.S. District Courts' based on 'lack of subject matter or personal jurisdiction.'"), and at 13-14 ("And Cellport as well as HBAS waived all objections to the permitted venues, including objections to venue based on 'forum non-conveniens.'").

And the district court considered all the briefing prior to entering its order granting summary judgment. Appx2 at 1 ("Having considered the motion and the

briefing, the supplemental evidence, and the applicable law, the Court concludes that (1) it lacks personal jurisdiction over [HBAS GmbH] and (2) [HII Inc.] is entitled to summary judgment because the SPLA bars Plaintiffs' claims.").

Appellees' arguments that this issue is improperly before this Court are without merit. *See, e.g., Ericsson Inc. v. TCL Communication Technology Holdings Limited*, 955 F.3d 1317, 1322 (Fed. Cir. 2020); *Automated Merchandising Systems, Inc. v. Lee*, 782 F.3d 1376, 1380 (Fed. Cir. 2015).

### 3. HBAS GmbH Has the "Minimum Contacts" with Texas for Specific Jurisdiction and Cellport's Claims Relate to Conduct Occurring in Texas

Appellees admit HBAS GmbH has contacts with the state of Texas, but argue those contacts are "isolated" and "unrelated to the accused products." Resp. Br. at 14-15. Appellees also argue, incorrectly, that the conduct of HBAS GmbH's Texas-based Harman and Samsung affiliates—HII Inc. and Harman Automotive El Paso – JZ and SEA Inc.—cannot be imputed to HBAS GmbH because all are "separate corporate entities." *Id*.

HBAS GmbH's contacts with Texas do not need to be direct for personal jurisdiction to exist. Its actions placing HBAS GmbH products into the stream of commerce through its network of corporate affiliates and its customers' distribution networks are sufficient to meet the "minimum contacts" required for specific jurisdiction of the district court. *See, e.g., In re Toyota Hybrid Brake Litig.*, 2021

WL 2805455, *6 (E.D. Tex. Jul. 6, 2021); *Blitzsafe Texas, LLC v. Bayerische Motoren Werke AG et al,* No. 2:2017-cv-00418-JRG, 2019 WL 2210686, *1 (E.D. Tex. May 22, 2019). *See also Luv N' Care v. Insta–Mix, Inc*., 438 F.3d 465, 470 (5th Cir. 2006); *Coulter v. Sears, Roebuck & Co*., 426 F.2d 1315, 1317–18 (5th Cir. 1970).

HBAS GmbH is a Tier 1 automotive component supplier. Through Harman's corporate structure, HBAS GMBH, with its network of affiliates, distributes Harman-branded telematics control units, head units, and other automotive control systems to automotive OEMs, including BMW, for assembly with other vehicle components in U.S.-bound vehicles, and, further, through its customers' distribution networks, downstream purchase throughout the United States, including Texas. Appx44, ¶¶ 5, 31, 82-120; Appx716-743 (Mot. to Dismiss Opp. Exs. 3-5); Appx748 at ¶¶ B.1.a – B.1.m., e.g., ¶ B.1.g., Ewing Decl. Exhibit 27, pp. 1-2 ("BMW announced that 2021's BMW iNEXT will be the first car in the world to be equipped with 5G technology from Samsung and HARMAN . . . ."); Appx1019, ¶¶ 23-36; Appx1164-1230 (Ewing Decl. Exs. 21-34).

Securing the right of HBAS GmbH to distribute the C-HLA's Licensed Products through those networks throughout the United States was in fact the very purpose of that agreement. Appx166, e.g., ¶ 1.11 ("'Licensed Territory' means worldwide."), ¶ 2.1 (". . . to design, manufacture or cause to be manufactured, use and to sell, distribute and deliver, Licensed Products in the Licensed Territory . . .

."), ¶ 2.3 (". . . for subsequent distribution by HBAS or its Affiliates as permitted by this Agreement . . . .").

HBAS GmbH's dismissal of its management of FCC U.S. certification of its products as irrelevant, Resp. Br. at 34, misses the point. The fact that its communications are with a federal agency outside Texas is irrelevant to the issue of whether HBAS GmbH delivered accused products into the stream of commerce *with the expectation* that it would ultimately be purchased or used by consumers in Texas. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 926 (2011) ("Flow of a manufacturer's products into the forum, we have explained, may bolster an affiliation germane to specific jurisdiction."); *American Patents LLC v. D-Link Corporation*, Civil Action No. 4:19-cv-764, 2020 WL 3972740, *4 (E.D. Tex. July 14, 2020) ("[Plaintiff] provides documents that [defendant] submitted to the Federal Communications Commission ("FCC") to obtain product approvals that expressly identify [defendant] as the manufacturer of certain accused products."); *Blitzsafe Texas, LLC v. Bayerische Motoren Werke AG*, No. 2:17-CV-00418-JRG, 2018 WL 4849345, *2-3 (E.D. Tex. September 6, 2018).

Contrary to Appellees' arguments, Cellport's claims in this action also directly arise from, and relate to, conduct of HBAS GmbH and its affiliates, and HBAS GmbH and Harman affiliate customers, that occurred in Texas. All the Counts of Cellport's Complaint allege conduct of HBAS GmbH and its "affiliates," including

Texas-based HII Inc., that has breached terms of the C-HLA and infringed the asserted patents. Appx44, Counts One through Nine, e.g., ¶ 7 ("HII Inc. also maintains a regional corporate office in the Eastern District of Texas . . . ."), ¶ 31 ("Since SEC Ltd.'s acquisition of HII Inc., Samsung and Harman have collaborated to manufacture, promote and sell Harman secure in-vehicle automotive communications, telematics, and infotainment systems, software and services to Harman's automotive industry OEM customers and their suppliers, and other telematics systems and service providers and users . . . ."), ¶ 244 ("HBAS GmbH and/or HII Inc. failed, and repeatedly failed, to provide complete and accurate, certified royalty statements for all Licensed Products . . . ."), ¶ 247 ("HBAS GmbH and/or HII Inc. failed, and repeatedly failed, to permit access to Harman accounting and other records relating to the sale, distribution and delivery of all Licensed Products . . . ."), ¶ 268 ("Defendant HII Inc. intentionally and improperly, and repeatedly, induced HBAS GmbH not to perform its contractual obligations to Cellport under the License Agreement . . . ."), ¶ 368 (". . . HII Inc. and HBAS GmbH directly infringed . . . ."), ¶ 374 (". . . HII Inc. and HBAS GmbH indirectly infringed . . . .").

Moreover, Cellport's burden in opposing Appellees' Rule 12 motion was only to present sufficient facts supporting a prima facie case of personal jurisdiction over HBAS GmbH. *See, e.g., Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646,

650 (5th Cir. 2004); *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). *See also Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009). Cellport met that burden. *See* Cellport Opposition to Defendants' Motion to Dismiss, Doc. #34, §§ III.D, III.E; Cellport Sur-reply Opposing Defendants' Motion to Dismiss, Doc. #39, § II.D, II.E.[7]

## CONCLUSION

The district court's dismissal of the claims of Plaintiffs' Complaint asserted against defendant HBAS GmbH for lack of personal jurisdiction should be reversed.

The district court's dismissal of the claims of Plaintiffs' Complaint asserted against defendant HII Inc. as barred by the release of SPLA paragraph 7(b) should also be reversed.

Dated: August 25, 2026 Respectfully submitted,

*/s/ Michael J Lennon*

Michael J. Lennon
Pablo D. Hendler
POTOMAC LAW GROUP, PLLC
1177 Avenue of the Americas, 5th Floor
New York, NY 10036

[7] The district court's order converting Appellees' Rule 12 motion to summary judgment did not provide Appellants the opportunity to submit additional evidence on the issue of the court's personal jurisdiction over HBAS GmbH. The order limited its scope explicitly to "the SPLA's applicability and enforceability," and stated that after its summary judgment ruling, Appellees "may refile a motion to dismiss on non-SPLA grounds and may move to transfer." Appx15 at 5.

(646) 519-7477
mlennonpotomaclaw.com
phendler@potomaclaw.com

*Attorneys for Plaintiffs-Appellants Cellport Systems Inc., CyberCar, Inc*.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

1. This brief complies with the type volume limitation of Federal Rule of Appellate Procedure 32(a) or Federal Circuit Rule 28.1. This brief contains 6,937 words excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Circuit Rule 28.1 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14 point font.

Dated: August 25, 2026

*/s/ Michael J. Lennon*
Michael J. Lennon